**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **GANART TECHNOLOGIES, INC.** | § | |
| | § | **CIVIL ACTION NO.** |
| **VS.** | § | **3:14-CV-00616-BF** |
| | § | |
| **TURNKEY KIOSKS, LLC** | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS APPLICATION
<u>FOR TEMPORARY INJUNCTION</u>**

**JONATHAN C. LaMENDOLA**
Texas Bar No. 00792637
email: jlamendola@cobbmartinez.com
**DAVID R. WOODWARD**
Texas Bar No. 21975650
email: dwoodward@cobbmartinez.com
**COBB MARTINEZ WOODWARD P**LLC
1700 Pacific Avenue, Suite 3100
Dallas, Texas  75201
(214) 220-5204
(214) 220-5254 (Fax)

**ATTORNEYS FOR PLAINTIFF GANART
TECHNOLOGIES, INC.**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ ii

FACTS ................................................................................................................................. 1

LEGAL AUTHORITIES AND ARGUMENT .................................................................... 6

REQUEST FOR RELIEF .................................................................................................. 10

CERTIFICATE OF SERVICE .......................................................................................... 11

CERTIFICATE OF CONFERENCE ................................................................................. 12

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Butnaru v. Ford Motor Co.*,
  84 S.W.3d 198 (Tex. 2002)..................................................................................................7

*Casarez v. Val Verde County*,
  957 F. Supp. 847 (W.D. Tex. 1997)....................................................................................8

*Dallas General Drivers, Warehousemen and Helpers v. Wamix, Inc.*,
  295 S.W.2d 873 (Tex. 1956)...............................................................................................9

*FMC Corp. v. Varco Int'l, Ins.*,
  677 F.2d 500, 503 (5th Cir. 1982) ......................................................................................8

*Fox v. Tropical Warehouses, Inc.*,
  121 S.W.2d 853 (Tex. App.—Fort Worth 2003, no. pet)...................................................7

*Guy Carpenter & Co., Inc. v. Provenzale*,
  334 F.3d 459 (5th Cir. 2003) ..............................................................................................8

*IAC Ltd. v. Bell Helicopter Textron, Inc.*,
  160 S.W.3d 191 (Tex. App.—Fort Worth 2005, no pet)....................................................8

*Miller Paper Co. v. Roberts Paper Co.*,
  901 S.W.2d 593 (Tex. App.—Amarillo 1995, no writ)......................................................8

*Phillips v. Frey*,
  20 F.3d 623, 627 (5th Cir. 1994) ........................................................................................8

*State v. Morales*,
  869 S.W.2d 941 (Tex. 1994)...............................................................................................9

*Sun Oil Co. v. Whitaker*,
  424 S.W.2d 216 (Tex. 1968)...............................................................................................7

*Tex. Midstream Gas Servs., LLC. v. City of Grand Prairie*,
  608 F.3d 200 (5th Cir. 2010) ..............................................................................................7

*Tex. Indus. Gas v. Phoenix Metallurgical Corp.*,
  828 S.W.2d 529, 533, (Tex. App. Houston [1st Dist.] 1992, no writ) ...............................9

*Walling v. Metcalfe*,
  863 S.W.2d 56 (Tex. 1993).................................................................................................7

*Williams Compressor Eng'g Corp.*,
  704 S.W.2d 469, 471 (Tex. App. Houston [14th District] 1986 writ ref'd n.r.e.) ..............8

*Winter v. Natural Res. Def. Council*,
  129 S. Ct. 365, 374, (2008) ..................................................................................................7

## **STATUTES**

TEX. CIV. PRAC. & REM. CODE ANN. § 65.011 ................................................................................7

TEX. CIV. PRAC. & REM. CODE ANN. § 134A.001 ..........................................................................6

TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002(6) ......................................................................6

TEX. CIV. PRAC. & REM. CODE ANN. § 134A.003(a) ..................................................................6, 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **GANART TECHNOLOGIES, INC.** | § | |
| | § | **CIVIL ACTION NO.** |
| VS. | § | **3:14-CV-00616-BF** |
| | § | |
| **TURNKEY KIOSKS, LLC** | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS APPLICATION
<u>FOR TEMPORARY INJUNCTION</u>**

Pursuant to the Court's Order of May 6, 2014, Ganart Technologies, Inc. ("Ganart") files this Brief in Support of its Application for a Temporary Injunction. This Brief is supported by the Affidavit of Wayne McHugh and the Non-Disclosure Agreement contained in the Appendix filed with this Brief.

<u>**FACTS**</u>

1. Ganart is a local technology company specializing in self-service technology solutions for financial services primarily for the unbanked and the under-banked. [App. p. 1 ¶ 2].

2. Ganart developed and owns Workplace Solution$^{TM}$, an automated wage handling and currency dispensing system that provides companies with a secure, in-house, and automated option for providing employees immediate access to earned wages when needed before the next scheduled pay period. Kiosks provide a physical interface with Workplace Solution$^{TM}$ through the use of Ganart's proprietary and patented software and hardware. Ganart's patented software platform is known as Transaction-as-a-Service or TaaS®. It works in conjunction with a palm vein scanner assembly developed by Ganart and a palm secure cube by Fujitsu (the "Assembly"). The two capture a biometric image which supports Ganart's Know-Your Customers (KYC) and Anti-Money Laundering (AML) compliant Self-Service Registration at Kiosk System. [App. p. 1 ¶ 3].

3.  Ganart spent more than two years and hundreds of thousands of dollars researching and developing Self-Service Registration at Kiosk system in order to perfect the capture of biometric images in support of Ganart's Self-Service Registration and biometric user authentication functions at kiosks. This patent pending process is proprietary to Ganart and has been in commercial use by Ganart and Ganart's customers since July 2010. This proprietary process is not shared with others absent a Non-Disclosure Agreement ("NDA"). All non-public information is protected and secured in a Tier III data center located in Dallas, Texas. [App. p. 1 ¶ 4].

4.  On December 6, 2011 Ganart and TurnKey Solutions, LLC ("TurnKey") entered into an NDA as a prerequisite to Ganart working with TurnKey to develop a customized TurnKey kiosk that would interface with Ganart's proprietary software and hardware designs and operate Workplace Solution$^{TM}$.  [App. pp. 1-2 ¶ 5].

5.  By executing the NDA, TurnKey agreed:

> Receiving Party [TurnKey] will not copy and distribute, furnish or otherwise disclose any Confidential Information of Disclosing Party [Ganart] to any third party, without the specific written permission of Disclosing Party.  As a condition of granting such permission, Disclosing Party may require Receiving Party to execute an agreement with the third party in substantially the same form as this Agreement. [App. p. 5 § 3.2].

> Receiving Party shall not decompile, disassemble, decode, reproduce, redesign, reverse engineer, reverse design, duplicate in whole or part, replicate, develop derivatives of or copy the design of any software, algorithm, source code, schematics, diagrams, technical documentation, or related products provided by Disclosing Party or to which Receiving Party has access to. [App. p. 6 § 3.4].

6.  Kiosk development and testing ensued in 2012 after Ganart provided TurnKey with confidential information and designs, including three Ganart Assemblies, which were to be installed in production ready kiosks manufactured for Ganart by TurnKey. [App. p. 2 ¶ 6].

7. On March 8, 2013 Ganart provided TurnKey a hard drive loaded with Ganart's proprietary software, including Self-Service Registration at Kiosk technology and process, which was installed, along with a Ganart Assembly, in a demo kiosk placed at TurnKey's corporate offices. The demo kiosk was to be solely used for demonstrations to potential Ganart Workplace Solution<sup>TM</sup> customers. [App. p. 2 ¶ 7].

8. On August 20, 2013 Ganart received several system-generated terminal management alerts from the TurnKey demo kiosk indicating TurnKey had unplugged and/or removed several devices from the demo kiosk. [App. p. 2 ¶ 9].

9. On September 4, 2013 TurnKey requested changes to Ganart software (from two cassette dispenser to one cassette version) as they had a customer visiting TurnKey on September 5, 2013. [App. p. 2 ¶ 10].

10. On September 5, 2013:

> At 10:57 a.m. TurnKey sent an emergency email to Ganart indicating their demo kiosk loaded with Ganart's software was not responding.
>
> At 3:27 p.m. TurnKey made another emergency request to enable Ganart's Self-Service Registration at Kiosk on TurnKey's demo kiosk for a customer demonstration.
>
> At 4:53 p.m. TurnKey sent a confirmation email to Ganart that Ganart's Self-Service Registration at Kiosk worked great and Ganart can restore the previous services on TurnKey's demo kiosk.

[App. p. 2 ¶ 11].

11. On September 6, 2013 5:01 p.m. TurnKey sent another email to Ganart indicating Ganart's Self-Service Registration at Kiosk worked great. [App. p. 2 ¶ 12].

12. On September 12, 2013 TurnKey requested Ganart ship the TurnKey kiosk in Ganart lab to TurnKey with the explanation that TurnKey had an opportunity to sell it to a

Doc. #119627

customer. [App. p. 2 ¶ 13].

13. On September 20, 2013 10:53 a.m. TurnKey made an emergency request to enable Ganart's Self-Service Registration at Kiosk service on TurnKey's demo kiosk for a customer demonstration later that day. [App. p. 2 ¶ 14].

14. On or about September 23, 2013 TurnKey picked up its kiosk in Ganart lab. [App. p. 2 ¶ 15].

15. On October 23, 2013 TurnKey contacted Ganart regarding a nonfunctioning identification scanner on TurnKey's demo kiosk. The ID scanner stopped functioning because TurnKey had removed it, plugged in another device and then attempted to reconnect the ID scanner. [App. p. 3 ¶ 16].

16. Five days later, on October 28, 2013 Ganart learned that TurnKey had sold Robocoin Technologies ("Robocoin") a kiosk which was deployed in Vancouver, Canada. Robocoin is a company that exchanges Bitcoins for cash. Prior to Robocoin's relationship with TurnKey, the process by which Robocoin accomplished the exchange was done with a cell phone and QR Code. This process can be seen at:

http://www.bing.com/videos/search?q=Youtube+robocoin&FORM=VIRE1#view=detail&mid=DAF1C467768D69BD95B8DAF1C467768D69BD95B8

[App. p. 3 ¶ 17].

17. The kiosk deployed by Robocoin in Canada incorporated Ganart's proprietary Assembly and appears to duplicate Ganart's Self-Service Registration at Kiosk system. It can be seen at:

http://www.bing.com/videos/search?q=youtube+robocoin&FORM=VIRE3#view=detail&mid=C1DA06D849E6DA9E8D5EC1DA06D849E6DA9E8D5E

http://www.wired.com/wp-content/uploads/blogs/wiredenterprise/wp-content/uploads/2013/10/bitcoin2-1.jpg

[App. p. 3 ¶ 18].

18.     The kiosk deployed by Robocoin appears to be the same model manufactured for Ganart and the palm vein scanner TurnKey installed on it was the same one designed by Ganart. [App. p. 3 ¶ 19]. TurnKey admits in its Answer it used some of the same components in the palm vein scanner assembly as the Ganart kiosk.  [*See* Defendant's Answer ¶ 24].

19.     When confronted by Ganart, TurnKey's representative first denied the accusation that TurnKey had violated the NDA, stating that Robocoin had come to TurnKey with the same exact hardware components provided by Ganart which TurnKey built into the kiosk it sold to Robocoin.  TurnKey's Director of Operations, subsequently admitted using Ganart's palm vein scanner assembly in the Robocoin kiosk deployed in Vancouver, Canada.  [App. p. 3 ¶ 20].

20.     On October 29, 2013 Ganart sent a notice to TurnKey demanding return and destruction of Ganart's confidential information, including palm vein scanner assemblies, and prohibiting TurnKey from using Ganart's confidential information for any purpose whatsoever. In response to Ganart's demand for return of Ganart's other two (2) palm vein scanner assemblies TurnKey returned only one; which was returned in a disassembled state, in violation of the mutual NDA between Ganart and TurnKey (as reproduced in paragraph 5 of this document).  [App. p. 3 ¶ 21].

21.     On November 11, 2013 Ganart sent a notice to TurnKey of termination of mutual NDA with TurnKey with effective date of December 11, 2013.  [App. p. 3 ¶ 22].

22.     On February 25, 2014 Ganart learned that Robocoin deployed a TurnKey-built kiosk in Austin, Texas with palm vein scanner assisted self-service registration, which appears to duplicate Ganart's Self-Service Registration at Kiosk process.  [App. p. 3 ¶ 23].

23.     Ganart has subsequently learned that Robocoin has deployed additional kiosks in the United States (at least three more in Texas), Canada, and several other countries all with

palm vein scanner assisted self-service registration, which appears to duplicate Ganart's Self-Service Registration at Kiosk process. [App. p. 3 ¶ 24].

## LEGAL AUTHORITIES AND ARGUMENT

24. Texas recently adopted the Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE ANN.§ 134A.001 et. seq. Under the Act, a trade secret is defined as:

> information, including a formula, pattern, compilation, program, device, method, technique, process, financial data or list of actual or potential customers or suppliers, that:
>
> (A) derives independent economic value, actual or potential, from not being, generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002(6). The act specifically authorizes injunctive relief for misappropriation of trade secrets. TEX. CIV. PRAC. & REM. CODE ANN. § 134A.003(a).

25. Ganart's proprietary and patented software and hardware constitute trade secrets as defined by the statute. They are integral to Ganart's Workplace Solution™ and have other applications in the banking and retail sectors, which have significant value to the company. These trade secrets, including Ganart's Self-Service Registration at Kiosk process, have proprietary user registration, authentication, verification, anti-money laundering compliance processes, and are not available to third parties absent a non-disclosure agreement with Ganart. These Self-Service Registration at Kiosk processes are the result of hundreds of thousands of dollars and more than two years of research and development by Ganart. Allowing third parties unauthorized use of Ganart's proprietary and patented software and hardware would enable them to bypass the significant investment of time and resources necessary to develop the processes that make Ganart's proprietary system valuable.

26.     Ganart's request for a Temporary Injunction is authorized under state law, specifically TEX. CIV. PRAC. & REM. CODE § 65.0011 and 134A.003(a), because Ganart is entitled to the relief demanded, and unless an injunction is granted, Ganart will continue to suffer irreparable harm because TurnKey has copied and distributed Ganart's proprietary Self-Service Registration at Kiosk technology and processes and Ganart's palm vein scanner assembly without authorization by Ganart.

27.     To obtain a temporary injunction under Texas law, an applicant must plead and prove three elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim.  *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 65.011.  The federal courts have adopted similar requirements.  The movant must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.  *Tex. Midstream Gas Servs., LLC. v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010) (citing *Winter v. Natural Res. Def. Council*, 129 S. Ct. 365, 374, (2008)).

28.     Ganart has plead a cause of action against TurnKey for violation of the Texas Uniform Trade Secrets Act, as well as breach of contract.  *See* Ganart's First Amended Original Petition.

29.     Ganart has a probable right to the relief sought.  To prevail on a request for a temporary injunction, the movant must demonstrate a probable right to recover at the trial on the merits and probable injury in the interim.  *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993); *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968).  This is accomplished by alleging a cause of action and presenting evidence that tends to support it.  *Fox v. Tropical Warehouses,*

*Inc.*, 121 S.W.2d 853, 857 (Tex. App.—Fort Worth 2003, no. pet). Ganart has done so. The movant is not required to prove its case with absolute certainty; the evidence need only reasonably support the movant's complaints. *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 598 (Tex. App.—Amarillo 1995, no writ). A reasonable probability of success, not an overwhelming likelihood, is all that needs to be shown for preliminary injunctive relief. *Casarez v. Val Verde County*, 957 F. Supp. 847, 858 (W.D. Tex. 1997).

30. The Fifth Circuit has listed the requisites to prevail on a claim for misappropriation of trade secrets. A Plaintiffs "must show: (1) the existence of a trade secret; (2) a breach of a confidential relationship or improper discovery of the trade secret; and (3) use of the trade secret without authorization." *Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 467 (5th Cir. 2003) (citing *Phillips v. Frey*, 20 F.3d 623, 627 (5th Cir. 1994). The Affidavit filed in support of Ganart's Application for a Temporary Injunction and Turnkey's Answer are sufficient to satisfy the requirements to prevail on Ganart's claim for misappropriation of a trade secret. They establish the existence of a trade secret, namely Ganart's Workplace Solution$^{TM}$, Transaction-as-a-Service, and Self-Service Registration at Kiosk processes. More importantly, they establish that TurnKey violated the NDA and used Ganart's trade secrets without Ganart's permission.

31. Harm may be presumed under Texas law when a defendant possesses trade secrets and is in a position to use it. *IAC Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 200 (Tex. App.—Fort Worth 2005, no pet). Moreover, the threatened disclosure of trade secrets constitutes irreparable harm as a matter of law. *Id. See also*, *Williams Compressor Eng'g Corp.*, 704 S.W.2d 469, 471 (Tex. App. Houston [14th District] 1986 writ ref'd n.r.e.) (citing *FMC Corp. v. Varco Int'l, Ins.*, 677 F.2d 500, 503 (5th Cir. 1982). Upon information and belief,

TurnKey has violated the terms of the parties' Non-Disclosure Agreement by demonstrating and providing Robocoin the entire Self-Service Registration at Kiosk technology and processes. TurnKey installed Ganart's palm vein scanner assembly on the first kiosk it sold to Robocoin, which was installed in Vancouver, Canada.

32.   TurnKey's conduct constitutes imminent harm, irreparable injury, and Ganart is without an adequate legal remedy. Probable imminent injury requires proof of an actual threatened injury, not a speculative or purely conjectural one. *Dallas General Drivers, Warehousemen and Helpers v. Wamix, Inc.*, 295 S.W.2d 873, 879 (Tex. 1956). TurnKey has injured Ganart by disclosing Ganart's proprietary Self-Service Registration at Kiosk processes and palm vein scanner assembly to Robocoin in violation of the NDA. Imminent harm is established by showing that the defendant will engage in the activity sought to be enjoined. *State v. Morales,* 869 S.W.2d 941, 946 (Tex. 1994). TurnKey has already disclosed the information and will continue to do so unless enjoined.

33.   An irreparable injury is defined as an injury for which compensation cannot be made, or for which compensation cannot be measured by any certain pecuniary standard. *Tex. Indus. Gas v. Phoenix Metallurgical Corp.*, 828 S.W.2d 529, 533, (Tex. App. Houston [1st Dist.] 1992, no writ). TurnKey's misappropriation of Ganart's trade secrets diminishes the value of Ganart's research and development in ways that cannot be calculated. Furthermore, TurnKey's conduct, in violation of their Non-Disclosure Agreement has placed Ganart's intellectual property in the hands of third parties over which Ganart has no control.

34.   The equities favor Ganart. Ganart took reasonable steps to protect its trade secrets. TurnKey already agreed not to use Ganart's property and has no right to do so. TurnKey has admitted its wrongdoing in its Answer.

35. Granting a Temporary Injunction will serve the public's interest as there is a strong public policy in the consistent and predictable enforcement of contractual and property rights.

36. Ganart is willing to post a bond in an amount to be determined by the Court.

## REQUEST FOR RELIEF

37. Ganart requests the Court issue a Temporary Injunction prohibiting TurnKey from copying, distributing, furnishing or otherwise disclosing any confidential information, software or hardware to any third party.

38. Ganart requests the Court issue a Temporary Injunction prohibiting TurnKey from using, selling, distributing, or manufacturing any device or process which was generated as a result of decompiling, disassembling, decoding, reproducing, redesigning, reverse engineering, reverse designing, duplicating (in whole or in part), developing derivatives, or copying the original, software or hardware provided to TurnKey by Ganart.

39. Ganart requests the Court issue a Temporary Injunction requiring TurnKey to return the remaining palm vein scanner Assembly in its possession.

40. Ganart requests the Court issue a Temporary Injunction requiring TurnKey to recall any kiosk which incorporates any Ganart Confidential Information or incorporates any software or hardware Turnkey generated as a result of decompiling, disassembling, decoding, reproducing, redesigning, reverse engineering, reverse designing, duplicating (in whole or in part), developing derivatives, or copying the original, software or hardware provided to TurnKey by Ganart.

41. Ganart requests any other relief to which it may be entitled to at law or equity.

        **Respectfully submitted,**

        **COBB MARTINEZ WOODWARD PLLC**
        1700 Pacific Avenue, Suite 3100
        Dallas, Texas  75201
        (214) 220-5204
        (214) 220-5254 (Fax)

        By: */s/ Jonathan C. LaMendola*
            **JONATHAN C. LaMENDOLA**
            Texas Bar No. 00792637
            email: jlamendola@cobbmartinez.com
            **DAVID R. WOODWARD**
            Texas Bar No. 21975650
            email: dwoodward@cobbmartinez.com

        **ATTORNEYS FOR PLAINTIFF GANART TECHNOLOGIES, INC.**

## CERTIFICATE OF SERVICE

     I hereby certify that on May 20, 2014, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this notice as service of this document by electronic means: David W. Williams and Joshua W. Carden.

        */s/ Jonathan C. LaMendola*
        **JONATHAN C. LaMENDOLA**

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiff and counsel for Defendant have personally conducted a conference at which there was a substantive discussion of every item presented to the Court in the Application for Temporary Injunction and despite best efforts the counsel have not been able to resolve those matters presented.

Certified to the 19th day of May, 2014 by Jonathan LaMendola.