IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| GANART TECHNOLOGIES, INC. | § | |
| | § | CIVIL ACTION NO. |
| VS. | § | 3:14-CV-00616-BF |
| | § | |
| TURNKEY KIOSKS, LLC AND | § | |
| ROBOCOIN TECHNOLOGIES, LLC | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT, REQUEST FOR TEMPORARY INJUNCTION AND REQUEST FOR PERMANENT INJUNCTION**

**TO THE HONORABLE COURT:**

**COMES NOW,** Plaintiff Ganart Technologies, Inc. ("Ganart"), and brings this action against Defendants TurnKey Kiosks, LLC ("TurnKey") and Robocoin Technologies ("Robocoin") for injunctive relief and damages, as follows:

## I.   NATURE OF THE ACTION

1.   Ganart seeks injunction relief and monetary damages against Defendants based on its unauthorized use of Ganart's confidential and proprietary information and trade secrets in violation of the Texas Uniform Trade Secrets Act and a Non-Disclosure Agreement TurnKey entered into with Ganart.

## II.   PARTIES

2.   Plaintiff Ganart Technologies, Inc. is a Delaware Corporation with its principal place of business located at 1700 Columbian Club Drive, Carrollton, Texas 75006.

3.   Defendant TurnKey Kiosks, LLC is an Arizona Limited Liability Company located at 8957 West Windsor Drive #118, Peoria, Arizona 85381. It was served with process through the Texas Secretary of State and has entered an appearance through counsel.

4. Robocoin Technologies, LLC is a Nevada Limited Liability company doing business in the State of Texas. It may be served through its registered agent, Jeffrey Burr Ltd., 2600 Passeo Verde Parkway, Suite 200, Henderson, NV 89074.

### III. PERSONAL JURISDICTION

5. The Court has jurisdiction over TurnKey because it entered into the Non-Disclosure Agreement with Ganart which is the basis of this lawsuit. In entering into the contractual agreement at which forms the basis of this lawsuit, TurnKey purposefully established minimum contacts with Texas such that the exercise of jurisdiction comports with fair play and substantial justice. TurnKey purposely availed itself of the benefits and protections of Texas by conducting business with a company with its principal place of business in Texas and by entering into a contract which is governed by Texas law.

6. The Court has jurisdiction over Robocoin under the Texas Long Arm Statute. Robocoin has conducted continuous and systematic business and committed torts in Texas subjecting it to general jurisdiction. Furthermore, as described herein, Robocoin kiosks have been deployed in Austin and Irving, Texas. These specific contacts with Texas give rise to Ganart's causes of action.

### IV. SUBJECT MATTER JURISDICTION AND VENUE

7. This action was originally filed in State Court. It was removed to Federal Court by TurnKey. The Court has subject matter jurisdiction pursuant to 28 USC § 1332 because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.  The State Court action was filed in Dallas County. The Dallas Division of the Northern District of Texas is the proper venue for the removed action. See 28 USC §§ 124(b)(2), 1391.

## V.  FACTS GIVING RISE TO THIS ACTION

9.  Ganart and TurnKey executed a Non-Disclosure and Confidentiality Agreement ("NDA") on December 6, 2011 to explore potential business opportunities. A true and correct copy of the NDA is attached hereto as Exhibit A. Pursuant to the NDA, Ganart subsequently shared confidential information with TurnKey, including Ganart's proprietary Self-Service Registration at Kiosk software and process flow on a hard drive supplied to TurnKey, Ganart's proprietary palm vein scanner assembly ("the Assembly") and CAD design files, financial analysis and data, pricing, and device designs.

10.  The confidential information and material provided to TurnKey was in connection with the development of a kiosk model for Ganart's Workplace Solution using Ganart's proprietary software platform (TaaS®), Ganart's Know-Your-Customer (KYC) and Anti-Money Laundering (AML) compliant Self-Service Registration at Kiosk ("Self-Service Registration at Kiosk") process and software, and proprietary hardware designs. Ganart provided TurnKey a hard drive with Ganart's kiosk software platform and process flow, including Self-Service Registration at Kiosk software, and a list of approved devices and proprietary hardware designs needed for the kiosk. Ganart also provided TurnKey a palm secure cube by Fujitsu, along with the Assembly . The Self-Service Registration at Kiosk process and software and the Assembly were the result of over two years of research and development by Ganart to perfect the capture of biometric images in support of Ganart's Know-Your-Customer (KYC) and Anti-Money

Laundering (AML) compliant Self-Service Registration at Kiosk and biometric user authentication at kiosk which has been in commercial use since August 2011.

11. TurnKey sent their test kiosk to Ganart on November 3, 2012 to be put in Ganart lab for testing and device certification purposes ("Lab Kiosk"). The Lab Kiosk as shipped by TurnKey did not include the Assembly. Ganart successfully tested the Lab Kiosk to run on Ganart software.

12. The parties mutually agreed that TurnKey would send a production-ready kiosk to Ganart fitted with all devices, including the Assembly, for real production environment ("YourATM Kiosk"). Ganart shipped a unit of the Assembly to TurnKey in November 14, 2012 ("Assembly 1") to be installed in the YourATM Kiosk.

13. TurnKey executives (Gary Strachan, Kelly Strachan, Margaret Strachan, and Casey Strachan) visited the corporate office of Ganart on December 7, 2012 to discuss the parties' business relationship.

14. On January 7, 2013 Casey Strachan made a request for two units of the Assembly stating that TurnKey had two palm vein scanner devices with them available that they would like to fit into two Assembly units. TurnKey requested a kiosk with Ganart-approved devices and the Assembly, running on Ganart software platform to be installed in their corporate office in Peoria, Arizona as a demo unit for prospective customers for Ganart's Workplace Solution ("Demo Kiosk"). The parties agreed that Ganart would send two units of the Assembly to TurnKey with the mutual understanding that one unit of the Assembly would be installed in the Demo Kiosk ("Assembly 2") to be deployed in TurnKey's corporate office, and the other one would be held by TurnKey pending request by Ganart for another kiosk ("Assembly 3"). Ganart sent two units of the Assembly to TurnKey that day.

15.  TurnKey completed the YourATM Kiosk fitted with the Assembly 1 and shipped it to Ganart on January 24, 2013 which was deployed by Ganart in the Humanetics factory location in Carrollton, Texas.

16.  TurnKey visited Ganart's office in Texas on Jan 29, 2014 to (i) retrofit the YourATM Kiosk with a second cash dispenser cassette, and (ii) retrofit the Demo Kiosk with a new front access door. During this visit, Ganart provided TurnKey with another unit of Assembly (" Lab Assembly") which was installed in the Lab Kiosk by TurnKey. The Lab Assembly was in addition to the three Assembly units previously shipped to TurnKey in Arizona.

17.  Ganart sent a hard drive to TurnKey loaded with Ganart's proprietary software, which was received by TurnKey on March 8, 2013. TurnKey used the hard drive and Assembly 2 for the Demo Kiosk that was placed in their corporate office. The Demo Kiosk was operational on April 1, 2013.

18.  On August 20, 2013 Ganart received several alerts from TurnKey's demo unit. Upon inquiry, Ganart was informed that TurnKey removed and/or disconnected several devices from the Demo Kiosk, which triggered the alerts.

19.  On September 4, 2013 Casey Strachan requested to make some changes to the software module (from two cassette dispenser to one cassette version) as TurnKey had a customer visiting their shop on September 5, 2013 and TurnKey wanted to do a demo of Ganart services on the Demo Kiosk.

20.  On September 5, 2013, Ganart received emergency call from TurnKey that their Demo Kiosk was not responding. TurnKey also made an emergency request to enable Self-Service Registration at Kiosk service on the Demo Kiosk for a customer demo. Ganart responded

to the requests. TurnKey sent a confirmation email to Ganart that the Demo Kiosk was working and the Self-Service Registration at Kiosk service worked very well. TurnKey also requested Ganart to restore the previous services on the Demo Kiosk. On September 6, 2013 TurnKey sent another email that Self-Service Registration at Kiosk service worked great during customer demo.

21. On September 12, 2013 Gary Strachan made a request to ship the Lab Kiosk in Ganart lab back to TurnKey with the explanation that they had an opportunity to sell it to a customer. Ganart erased its software from the hard drive and removed its own devices, including Lab Assembly, from the Lab Kiosk prior to shipment.

22. On September 20, 2013 TurnKey made an emergency request to enable Self-Service Registration at Kiosk service again on their Demo Kiosk for a customer demo later that day. Ganart responded to the request by enabling the Self-Service Registration at Kiosk service for that customer demo.

23. Assembly 1 was removed by Ganart prior to shipping the YourATM Kiosk to TurnKey the week of November 23, 2013. Assembly 2 was returned by TurnKey to Ganart in November 2013 in a disassembled state. TurnKey is currently in possession of Assembly 3.

24. Based on information and belief, TurnKey gave one or more demonstrations of Ganart's proprietary Know Your Customer and Anti-Money Laundering compliant Self Service Registration at Kiosk to Robocoin in September, 2013, in violation of the NDA.

25. In October, 2013 TurnKey provided Robocoin with a Kiosk that incorporated Ganart's proprietary Assembly.

26. Prior to the demonstration(s), Robocoin's process for customer registration and bitcoin transfer used cell phones and QR Codes. It did not incorporate any biometric

identification. Furthermore, the authentication process was substantially different from Ganart's authentication process. Following the demonstration(s), as evidenced by video of the TurnKey-supplied Robocoin kiosk, deployed in Vancouver, Canada, on or about October 28, 2013, the process had substantially changed and was identical in features and process steps to Ganart's process. Upon information and belief, TurnKey also provided Robocoin with Ganart's software-based customer registration and authentication process.

27.     During the week of September 23, 2013 TurnKey had the Ganart Lab Kiosk picked up from Ganart premises by UPS.

28.     On October 23, 2013 TurnKey sent an email that the Snapshell (ID scanner) device on their Demo Kiosk was not working. Upon information and belief, TurnKey unplugged the Snapshell device from the Demo Kiosk, plugged in another device, and then when they re-plugged the Snapshell device, it stopped working.

29.     On or about October 28, 2013 Ganart learned from media reports that Robocoin installed a kiosk (supplied by TurnKey) in Vancouver, Canada. The kiosk installed by Robocoin is the same model manufactured by TurnKey for Ganart. Photographs of the kiosk accompanying the news reports reveal that the palm vein scanner assembly installed on the Robocoin kiosk is the same as the Assembly designed by Ganart. Also, the software-based customer registration process used on Robocoin kiosk appears to be a replica of Ganart's Self-Service Registration at Kiosk. When confronted with this information, TurnKey admitted that the palm vein scanner Assembly installed on the Robocoin kiosk had the same components provided by Ganart and same design of the Assembly provided to TurnKey by Ganart.

30.     TurnKey has:

    a.     Violated the terms of the NDA with Ganart by providing Robocoin Technologies the Assembly, which is proprietary to Ganart.

    b.    Violated the terms of the NDA with Ganart by demonstrating Ganart's proprietary Self-Service Registration at Kiosk process to Robocoin who was not a potential customer of Ganart's Workplace Solution and was not a common customer of Ganart and TurnKey. Robocoin admitted that TurnKey demonstrated Self-Service Registration at Kiosk.

    c.    Infringed upon the intellectual property of Ganart by providing Robocoin Technologies the entire Self-Service Registration at Kiosk process, which is proprietary to Ganart.

31.    Robocoin has:

    a.    Infringed upon the intellectual property of Ganart by misappropriating Ganart's Self-Service Registration at Kiosk process, which is proprietary to Ganart.

## VI. CAUSES OF ACTION

### COUNT I

### <u>VIOLATION OF THE TEXAS UNIFORM TRADE SECRETS ACT</u>

32.    Ganart repeats and incorporates by reference each and every allegation set forth in the preceding paragraphs.

33.    Turnkey has disclosed and used Ganart's trade secrets in violation of the NDA.

34.    Defendants have misappropriated Ganart's trade secrets through improper means.

35.    As a result of Defendants' misappropriation, disclosure and improper use, Ganart has suffered losses and irreparable injury.

36.    TurnKey is likely to continue to breach the NDA and act in a manner to irreparably harm Ganart unless restrained and enjoined.

37.    Ganart's remedy at law is not by itself adequate to compensate it for the injuries inflicted and threatened by Defendants' conduct. As such, Ganart is entitled to injunctive relief pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 134A.003.

38. In addition to injunctive relief, Ganart is also entitled to recover damages for Defendants' misappropriation including, but not limited to, actual losses, unjust enrichment, and lost royalties.

39. TurnKey's conduct in misappropriating Ganart's trade secret was willful and malicious, and thus, Ganart is entitled to and seeks exemplary damages.

40. Ganart has been required to retain the services of the undersigned attorneys in prosecution of this claim. Pursuant to TEX. CIV. PRAC. & REM. CODE § 134A.005, Ganart seeks to reimburse its attorneys' fees and costs expended in presenting this mater.

## COUNT II

### BREACH OF CONTRACT

41. Ganart repeats and incorporates by reference each and every allegation set forth in the preceding paragraphs.

42. Ganart and TurnKey entered into a valid contract, namely the NDA.

43. TurnKey breached the NDA by, among other things misappropriating Ganart's trade secrets and disclosing them to a third party or parties.

44. TurnKey has admitted it violated the terms of the NDA.

45. As a direct result of TurnKey's breaches, Ganart has sustained general and special damages in a sum to be proved at trial.

46. Ganart has been required to retain the services of the undersigned attorneys in prosecution of this claim. Pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001, Ganart seeks to reimburse its attorneys' fees and costs expended in presenting this matter.

## COUNT III

### AIDING AND ABETTING

47. Ganart repeats and incorporates by this reference each and every allegation set forth in the proceeding paragraphs.

48. Robocoin's misappropriation and improper use of Ganart's proprietary software constitutes a violation of the Texas Uniform Trade Secrets Act was tortious.

49. TurnKey disclosed Ganart's proprietary Self-Service Registration at Kiosk process to Robocoin and also installed Ganart's proprietary Assembly in the first kiosk it supplied to Robocoin. In doing so, TurnKey intended to assist Robocoin's misappropriation and improper use of Ganart's proprietary software and hardware. TurnKey's active assistance and encouragement to Robocoin was a substantial factor, if not the factor causing, Robocoin's tortious conduct.

50. TurnKey intended to assist Robocoin in committing the tort.

## COUNT IV

### CONSPIRACY

51. Ganart repeats and incorporates by this reference each and every allegation set forth in the proceeding paragraphs.

52. The Defendants agreed to misappropriate Ganart's proprietary processes and hardware for their mutual benefit.

53. This agreement was unlawful in its purpose in that it violated the Texas Uniform Trade Secrets Act.

54. The Defendants had a meeting of minds on the objective and their course of action to accomplish their tortious goals.

55. Each Defendant committed unlawful, overt acts to further their goals. TurnKey demonstrated Ganart's proprietary Self-Service Registration at Kiosk process to Robocoin in violation of TurnKey's contractual obligations pursuant to the NDA. Upon information and belief TurnKey copied or duplicated Ganart's proprietary software and provided it to Robocoin. TurnKey also used Ganart's proprietary Assembly in violation of the NDA by installing it in the Robocoin kiosk deployed in Vancouver, Canada. Having received a demonstration of Ganart's proprietary Self-Service Registration at Kiosk process, Robocoin duplicated the process and upon information and belief, used Ganart's proprietary software and hardware.

56. Ganart suffered injuries as approximate result of the wrongful acts.

### VII. REQUEST FOR TEMPORARY INJUNCTION

57. Ganart repeats and incorporates by this reference each and every allegation set forth in the preceding paragraphs.

58. Ganart's request for a temporary injunction is authorized by Texas Civil Practice and Remedies Code § 65.011 and 134A.003 because, among other things, the applicant is entitled to the relief demanded and all or part of the relief requires the restraint of some act prejudicial to the applicant.

59. In executing the NDA, Ganart and TurnKey agreed as follows:

> Because monetary damages are difficult to ascertain and may be inadequate as a remedy for a Party in the event that the other Party were to violate the terms of this Agreement, Ganart and TurnKey agree that each Party may seek to obtain an injunction to prevent unauthorized use or disclosure of its Confidential Information by the other Party.

60. Ganart asks the Court to prevent the Defendants from engaging in business activities that violates the NDA. Specifically, Ganart asks to the Court to:

A. Restrain Defendants from disclosing any and all information or data of Ganart, and any information or data related to third parties that TurnKey

has an obligation to treat as confidential, including without limitations, trade secrets, proprietary technical & business data, technical & business expertise, idea, design, features, software functions, hardware materials, manufacturing processes, software and firmware computer programs, algorithm, architecture, source code, patterns, devices, invention, trademarks, copyright, compilations of information, records and specifications, business methods and techniques, customer list, and product information, whether provided by Ganart in written or verbal form, or as data recorded in machine-readable form, or printed facsimile form.

B. Restrain Defendants from using any and all information or data of Ganart, and any information or data related to third parties that TurnKey has an obligation to treat as confidential, including without limitations, trade secrets, proprietary technical & business data, technical & business expertise, idea, design, features, software functions, hardware materials, manufacturing processes, software and firmware computer programs, algorithm, architecture, source code, patterns, devices, invention, trademarks, copyright, compilations of information, records and specifications, business methods and techniques, customer list, and product information, whether provided by Ganart in written or verbal form, or as data recorded in machine-readable form, or printed facsimile form.

C. Order the Defendants to return any Ganart proprietary or confidential information or material in their possession.

D. Prohibit Defendants from producing, marketing, selling, leasing, or continuing to use any kiosk or other device that incorporates any Ganart confidential information, or that incorporates any software or hardware, including computer-aided design (CAD) files, Defendants generated as a result of decompiling disassembling, decoding, reproducing, redesigning, reverse engineering, reverse designing, duplicating (in whole or in part), developing derivatives, or copying the original software or hardware provided to TurnKey by Ganart.

61. It is probable that Ganart will recover from Defendants after a trial on the merits because, as discussed in detail and as will be shown by the evidence and testimony, TurnKey has violated the terms of the NDA and Defendants have improperly used Ganart's proprietary hardware and software.

62. Ganart is willing to post bond or cash deposit in lieu of a bond.

## VIII. REQUEST FOR PERMANENT INJUNCTION

63. Ganart repeats and incorporates by this reference each and every allegation set forth in the preceding paragraphs.

64. Ganart asks the Court to set its request for permanent injunction for a full trial on the merits and, after the trial, issue a permanent injunction against TurnKey and Robocoin.

## IX. CONDITIONS PRECEDENT

65. All conditions precedent to Ganart's claims for relief have been performed or have occurred.

## X. PRAYER FOR RELIEF

WHEREFORE, for these reasons, Plaintiff asks that Defendants be cited to appear and answer, and that Plaintiff be awarded a judgment against Defendants for the following:

(1) Temporary injunction.

(2) Permanent injunction.

(3) Actual damages.

(4) Exemplary Damages.

(5) Prejudgment and postjudgment interest.

(6) Attorneys' fees.

(7) Court costs.

(8) All other relief to which Ganart is entitled.

                      **Respectfully submitted,**

                      **COBB MARTINEZ WOODWARD PLLC**
                      1700 Pacific Avenue, Suite 3100
                      Dallas, Texas 75201
                      (214) 220-5204
                      (214) 220-5254 (Fax)

                      By: */s/ Jonathan C. LaMendola*
                            **JONATHAN C. LaMENDOLA**
                            Texas Bar No. 00792637
                            email: jlamendola@cobbmartinez.com
                            **DAVID R. WOODWARD**
                            Texas Bar No. 21975650
                            email: dwoodward@cobbmartinez.com

                      **ATTORNEYS FOR PLAINTIFF GANART TECHNOLOGIES, INC.**

## CERTIFICATE OF SERVICE

     I hereby certify that on June 24, 2014, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this notice as service of this document by electronic means: David W. Williams and Joshua W. Carden.

                      */s/ Jonathan C. LaMendola*
                      **JONATHAN C. LaMENDOLA**

## VERIFICATION

STATE OF TEXAS §
§
COUNTY OF DALLAS §

**BEFORE ME**, the undersigned notary, on this day personally appeared Wayne McHugh, of Ganart Technologies, Inc., the affiant, a person whose identity is known to me.  After I administered an oath to affiant, affiant testified:

"My name is Wayne McHugh.  I am duly qualified and capable of making this verification. I am an authorized representative of Ganart Technologies, Inc. I have read Plaintiff's Second Amended Complaint, Request for Temporary Injunction and Request for Permanent Injunction and on behalf of Ganart Technologies, Inc. I attest that based on the information known or reasonably available to Ganart Technologies, Inc., the factual statements contained in it are true and correct."

_____
WAYNE McHUGH, Authorized Representative of Ganart Technologies, Inc.

Sworn to and subscribed before me by Wayne McHugh on June 23, 2014.

JANIE WHITE
Notary Public, State of Texas
My Commission Expires
March 13, 2017

_____
Notary Public in and for the State of Texas

My commission expires: March 13, 2017