# EXHIBIT A



## CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

This Confidentiality and Non-Disclosure Agreement ("Agreement"), effective as of the 6 day of Dec, 20 11 ("Effective Date") by and between Ganart Technologies, Inc., having its office at 1700 Columbian Club Drive, Carrollton, Texas 75006, USA (hereinafter referred to as "Ganart"), and _Turnkey Kiosks LLC  14205 N 83rd Ave #105_, having its office at 14205 N 83rd Ave # 105, Peoria, AZ 85382 (hereinafter referred to as "Individual"), is intended to preserve the confidentiality and proprietary status of information to be disclosed or exchanged between Ganart and Individual; each a "Party" and collectively "Parties".

WHEREAS, each Party may, from time to time, for Purposes defined hereunder, disclose to the other Party certain technical and/or business information that Disclosing Party considers confidential and proprietary.

NOW, THEREFORE, in consideration of the foregoing and of the mutual covenants and agreements hereinafter set forth, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. <u>Definition of Confidential Information</u>. As used herein, "Confidential Information" of a Party disclosing such information ("Disclosing Party") to the other Party ("Receiving Party") shall mean any and all information or data of Disclosing Party, and any information or data related to third parties that Disclosing Party has an obligation to treat as confidential, including without limitation, trade secrets, proprietary technical & business data, technical & business expertise, idea, design, features, software functions, hardware materials, manufacturing processes, software and firmware computer programs, algorithm, architecture, source code, patterns, devices, invention, trademarks, copyright, compilations of information, records and specifications, business methods and techniques, customer list, and product information, whether provided by Disclosing Party in written or verbal form, or as data recorded in machine-readable form, or printed, facsimile form. Such Confidential Information is either designated as confidential by Disclosing Party at the time such disclosure is made, or is disclosed in circumstances of confidence, or would otherwise be understood by Receiving party, exercising reasonable judgment, to be confidential.

   "Customer/Consumer Information" means all information relating to any customer, consumer or prospective or former customer or consumer of Ganart or of any of Ganart's affiliates, and including without limitation: (a) any and all non-public personal information of consumers or customers (within the meaning of Title V of the Gramm-Leach-Bliley Act and its implementing regulations), and (b) any information from which a customer or consumer's identity can be ascertained, either from the information itself or by combining the information with information from other sources. Customer/Consumer Information is Confidential Information.

2. <u>Purposes</u>. Each Party agrees to use Confidential Information received from the other Party only for the purpose(s) of discussing a potential business opportunity in connection with development of products or services for Ganart by Individual, or modifications to the products or services of Individual enabling such products or services to interface with Ganart's products or services, and/or determining whether to enter into a mutual business relationship concerning the same or similar products or services ("Purposes").

3. <u>Obligations of Confidentiality</u>. The Parties agree, with respect to any Confidential Information to which either is a Receiving Party, to the following:

   3.1 Receiving Party shall protect and keep confidential and secure all Confidential Information of the Disclosing Party with the same degree of precautions and safeguards it uses to protect and keep its own Confidential Information of a similar nature, but in no case with less than reasonable care.

   3.2 Receiving Party will not copy and distribute, furnish or otherwise disclose any Confidential Information of Disclosing Party to any third party, without the specific written permission of Disclosing Party. As a condition of granting such permission, Disclosing Party may require Receiving Party to execute an agreement with the third party in substantially the same form as this Agreement.

3.3 Receiving Party agrees to disclose Confidential Information received from Disclosing Party only to representatives, officers, employee(s), or agents of Receiving Party who have a "need to know" such Confidential Information, only for Purposes set forth in this Agreement, and who have agreed in writing to be bound by confidentiality terms no less restrictive than the terms of this Agreement.

3.4 Receiving Party shall not decompile, disassemble, decode, reproduce, redesign, reverse engineer, reverse design, duplicate in whole or part, replicate, develop derivatives of or copy the design of any software, algorithm, source code, schematics, diagrams, technical documentation, or related products provided by Disclosing Party or to which Receiving Party has access to.

4. **Exceptions to Confidentiality.** Notwithstanding any other provisions of this Agreement, the term "Confidential Information" does not include information which: (a) has been published by Disclosing Party, or is otherwise in the public domain without breach of this Agreement by Receiving Party; (b) is properly within the legitimate possession of Receiving Party prior to its disclosure hereunder, and without obligation of confidentiality; (c) after disclosure, is received by Receiving Party from a third party which, to Receiving Party's knowledge, had rights in such Confidential Information and was not restricted from disclosing the information to Receiving Party hereunder; (d) is independently developed by Receiving Party without using the Confidential Information, or; (e) is approved for disclosure by Disclosing Party, in writing, prior to its disclosure.

Notwithstanding anything to the contrary in this Agreement, Receiving Party may disclose Confidential Information to a Court or other government body having applicable jurisdiction upon request; in which case, Receiving Party shall disclose only that portion of the Confidential Information that it is legally required to disclose, provided however, that Receiving Party shall first give prompt notice to Disclosing Party upon receipt of such request so that Disclosing Party may seek a protective order or other appropriate relief as Disclosing Party, in its sole discretion, may elect, and Receiving Party shall reasonably cooperate, at Disclosing Party's expense, with Disclosing Party in Disclosing Party's effort to obtain such order or relief.

5. **No License.** All Confidential Information furnished by Disclosing Party pursuant to this Agreement shall remain the sole property of Disclosing Party. Receiving Party recognizes and agrees that nothing in this Agreement shall be construed as granting any right or license to Receiving Party, express or implied, to any Confidential Information of Disclosing Party disclosed pursuant to this agreement, or to any patent, copyright, trademark, trade secret, or other intellectual property of Disclosing Party that has issued or that may issue based upon the Confidential Information.

6. **Disclaimer.** No representation or warranty of any kind is given by Disclosing Party, either expressly or by implication, including without limitation any representation or warranty of merchantability, fitness for any particular purpose, non-infringement, accuracy, or completeness, with respect to the Confidential Information disclosed to Receiving Party pursuant to this Agreement.

7. **No Obligation:** Nothing in this Agreement shall obligate either Party to disclose any information to the other Party or obligate either Party to enter into any other agreement or business transaction. Subject to the obligations hereof, neither Party shall be precluded from independently developing or acquiring products, services or technology, or pursuing business opportunities similar to or competitive with those covered by this Agreement.

8. **Return or Destruction of Information.** Upon termination of this Agreement, or upon written request by Disclosing Party made at any time, Receiving Party shall within ten (10) business days return all Confidential Information (original, copies, or extracts), or Receiving Party shall, upon Disclosing Party's option, destroy all Confidential Information, and provide a written certification by an officer of Receiving Party to Disclosing Party of such return or destruction. Notwithstanding the foregoing, either Party may retain one copy of the Confidential Information of the other Party for its records if it is necessary solely for compliance with legal or regulatory obligations, subject to the continuing confidentiality obligations set forth in this Agreement.

9.  Termination. Either Party may terminate this Agreement on thirty (30) days written notice to the other Party at the address set forth in this Agreement or at such other address that a Party may hereafter give to the other Party in writing. Notwithstanding the termination of this Agreement by either Party, all provisions of this Agreement relating to the rights and obligations concerning Confidential Information disclosed prior to the effective date of termination of this Agreement shall continue for a period of five (5) years after the date of such termination; provided, however, that with respect to (a) Confidential Information which consists of technical information (including without limitation, software, schematics, diagrams, algorithm, source code, and other technical documentation), and (b) trade secrets, the obligations of the Receiving Party contained in this Agreement shall continue indefinitely, and with respect to Customer/Consumer Information the obligations of Individual under this Agreement shall continue indefinitely.

10. Severability. In the event that any portion of this Agreement shall be ruled invalid by a court of competent jurisdiction, the remaining portions shall be deemed valid and in effect, and interpreted as if the invalid portion had never been part hereof.

11. Modification; Assignment. This Agreement cannot be amended, nor its provisions modified, except in writing by authorized representatives of Ganart and Individual. Neither Party may transfer or otherwise assign its rights, duties, and obligations under this Agreement, in whole or in part, without the prior written consent of the other Party.

12. Waiver. No waiver of a Party's rights, remedies, powers, or privileges under this Agreement shall be effective unless expressed in writing. The failure or delay or neglect by Disclosing Party to enforce at any time any of the provisions of this Agreement shall not be construed or deemed to be a waiver of Disclosing Party's rights, remedy, power, or privileges hereunder, nor prejudice Disclosing party's rights to take subsequent action.

13. Remedies. Because monetary damages are difficult to ascertain and may be inadequate as a remedy for a Party in the event that the other Party were to violate the terms of this Agreement, Ganart and Individual agree that each Party may seek to obtain an injunction to prevent unauthorized use or disclosure of its Confidential Information by the other Party. Should an action be brought, the prevailing Party (as determined by the court) shall be entitled to a reasonable sum for attorney's fees and costs in addition to any other relief that may be awarded.

14. Compliance with Laws: Both Parties agree to comply with all applicable laws and regulations relating to its performance of this Agreement.

15. Governing Law; Arbitration. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, USA, without regard to the conflict of laws principles thereof. Ganart and Individual will make all commercially reasonable efforts to resolve all disputes and disagreements through good faith negotiations conducted by informal means, such as by written correspondence, teleconference, and/or meetings. The venue of any arbitration shall be Dallas, Texas, USA.

16. Headings. Captions and titles of sections and subsections of this Agreement are for convenience only and will not be considered or referred to in resolving questions of interpretation or construction.

17. Entire Agreement. This Agreement constitutes the entire agreement between the Parties with respect to the Purposes set forth herein, and supersedes any prior understandings, agreements, or representations, expressed or implied, between the Parties regarding the subject matter of this Agreement.

18. Counterparts. This Agreement may be executed by the Parties in separate counterparts, each of which when so executed and delivered to the other Party by facsimile, email, postal service, courier or commercial delivery service shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the Effective Date listed above.

GANART:

_____
Signature

Anthony M. Cachere
Printed Name

President / CEO
Title

INDIVIDUAL:

_____
Signature

Gary Strachan
Printed Name

Director of Operations
Title

1700 Columbian Club Drive, Carrollton, Texas USA
(O): +1-972-416-1301     Email: info@ganart.net     Web: www.ganart.com