## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **GANART TECHNOLOGIES, INC.** | § | |
| | § | **CIVIL ACTION NO.** |
| **VS.** | § | **3:14-CV-00616-BF** |
| | § | |
| **TURNKEY KIOSKS, LLC** | § | |

## APPENDIX IN SUPPORT OF PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE

### APPENDIX

| | |
|---|---|
| Appendix 1-4 | Verification of Jonathan C. LaMendola and correspondence from Robocoin's counsel |
| Appendix 5-7 | Declaration of Wayne McHugh and web pages from TurnKey Kiosks |
| Appendix 8-9 | November 19, 2012 emails |
| Appendix 10-11 | June 19, 2013 emails |
| Appendix 12-22 | Plaintiff's First Supplemental Objections and Answers to Defendant's First Set of Interrogatories |

**Respectfully submitted,**

**COBB MARTINEZ WOODWARD** PLLC
1700 Pacific Avenue, Suite 3100
Dallas, Texas 75201
(214) 220-5204
(214) 220-5254 (Fax)

By: */s/ Jonathan C. LaMendola*
    **JONATHAN C. LaMENDOLA**
    Texas Bar No. 00792637
    email: jlamendola@cobbmartinez.com
    **DAVID R. WOODWARD**
    Texas Bar No. 21975650
    email: dwoodward@cobbmartinez.com

**ATTORNEYS FOR PLAINTIFF GANART
TECHNOLOGIES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2014, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this notice as service of this document by electronic means: David W. Williams and Joshua W. Carden.

*/s/ Jonathan C. LaMendola*
**JONATHAN C. LaMENDOLA**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| GANART TECHNOLOGIES, INC. | § | |
| | § | CIVIL ACTION NO. |
| VS. | § | 3:14-CV-00616-BF |
| | § | |
| TURNKEY KIOSKS, LLC | § | |

## VERIFICATION OF JONATHAN C. LaMENDOLA

Attached are 3 pages which are true and correct copy of a letter I received from counsel from Robocoin Technologies, LLC in response to an inquiry on behalf of my client.

/s/ Jonathan C. LaMendola
**JONATHAN C. LaMENDOLA, COUNSEL
FOR GANART TECHNOLOGIES, INC.**

VERIFICATION OF JONATHAN C. LaMENDOLA/Solo Page
Doc. #121727

**1**



Frank A. Grant
PHONE: (310) 788-3244
FAX:   (310) 843-1263
EMAIL: FGrant@perkinscoie.com

1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
PHONE: 310.788.9900
FAX: 310.788.3399
www.perkinscoie.com

January 27, 2013

**VIA E-MAIL**

Mr. Jonathan C. LaMendola
Cobb Martinez Woodward, PLLC
1700 Pacific Avenue
Dallas, TX  75201
jlamendola@cobbmartinez.com

**Re:    Robocoin Technologies, LLC**

Dear Mr. LaMendola:

In response to your letter dated December 19, 2013, I wanted to provide written responses to your specific questions regarding my client, RoboCoin Technologies, LLC ("RoboCoin").  I have included my responses immediately following your question or request.

    1.  RoboCoin acknowledges it received a demonstration from TurnKey of the Self-Service Registration at Kiosk process, which is proprietary to Ganart and provide dates, time, and persons who attended those demonstration(s).

**RESPONSE:**  RoboCoin acknowledges that it received such demonstration, but has no direct knowledge of what is proprietary to Ganart.

    2.  Robocoin acknowledges the kiosk it purchased from TurnKey and sold to another party (that deployed it in Vancouver, Canada) had the same palm vein scanner Assembly, in part or whole, that was installed on the demo kiosk at TurnKey's office in Peoria, AZ on which TurnKey gave demonstration to Robocoin.

**RESPONSE:**  RoboCoin acknowledges that that the kiosk it purchased had the same palm vein scanner Assembly as described.

    3.  Robocoin acknowledges it received the kiosk from TurnKey, fitted with Assembly, with TurnKey either:
      (a) misrepresenting that the Assembly belonged to them and/or TurnKey had full rights in the Assembly; and/or

(b) failing to disclose that TurnKey did not have rights in the Assembly and was prohibited from providing the Assembly or its design to any third party.

**RESPONSE:** RoboCoin believes that the statement is either false or it does not have enough information to adequately respond.

4. Robocoin acknowledges that TurnKey provided them, in part or whole, the AML compliant Self-Service Registration at Kiosk process, including process flow, marketing and sales pitch, software, and roadmap to the compliant process, which is proprietary to Ganart, with TurnKey either:
   (a) misrepresenting that the process belonged to TurnKey, or TurnKey had full rights in process; or
   (b) failing to disclose that TurnKey had no rights in process and was prohibited from providing details of process to any third-party.

**RESPONSE:** RoboCoin believes that the statement is either false or it does not have enough information to adequately respond.

5. Robocoin acknowledges that TurnKey provided Robocoin, in part or whole, the Application Programming Interface ("API") for the devices, associated with the Self-Service Registration at Kiosk, installed on the kiosk(s) Robocoin purchased (or is purchasing) from TurnKey, with TurnKey either:
   (a) misrepresenting that the API belonged to TurnKey, or TurnKey had full rights in those API; or
   (b) failing to disclose that TurnKey had no rights in the API and was prohibited from providing details of API to any third-party.

**RESPONSE:** RoboCoin believes that the statement is either false or it does not have enough information to adequately respond.

6. Robocoin acknowledges it received a demonstration of Ganart's proprietary Money Earned product from TurnKey. Robocoin also acknowledges that TurnKey provided it with financial data, analysis, pricing, and related information about Money Earned without prior approval by Ganart.

**RESPONSE:** RoboCoin believes that the statement is either false or it does not have enough information to adequately respond.

7. Robocoin agrees to:
   (a) stop using Ganart's proprietary Self-Service Registration at Kiosk process; or
   (b) pay Ganart $1,000 per kiosk enabled with the Self-Service Registration at Kiosk process sold and/or deployed by Robocoin, in lieu of damages.

**RESPONSE:** RoboCoin does not have enough information to adequately respond.

Based on the foregoing, we hope you can appreciate that RoboCoin knows very little about the underlying facts of this dispute, and is not in a position to opine on the validity of Ganart's claims. While RoboCoin is willing to share what it knows (or knew at the time events occurred) about the facts in this case, it is committed to neutrality as to the dispute itself.

RoboCoin specifically reserves all rights, whether at law or in equity, to amend, correct, or change its responses to Ganart's questions as it learns new information, or to defend itself against any and all subsequent claims that may arise from this dispute.

Please let me know if you have additional questions.

Sincerely,

/s/ *Frank Grant*

Frank Grant | Perkins Coie LLP
Senior Counsel
1888 Century Park East, Suite 1700
Los Angeles, CA 90067
PHONE: 310-788-9900 x3244
DIRECT: 310-788-3244
FAX: 310-843-1263
E-MAIL: fgrant@perkinscoie.com

LEGAL29159872.1

**4**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

GANART TECHNOLOGIES, INC.          §
                                   §          CIVIL ACTION NO.
VS.                                §          3:14-CV-00616-BF
                                   §
TURNKEY KIOSKS, LLC AND            §
ROBOCOIN TECHNOLOGIES, LLC         §

### DECLARATION OF WAYNE McHUGH

1. I, Wayne McHugh, pursuant to 28 U.S.C 1746, declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

2. TurnKey Kiosk's website is located at www.turnkeykiosks.com

3. Attached are true and correct copies of information which appeared on TurnKey Kiosk's website in October, 2013.

_____
WAYNE McHUGH

JUNE 23, 2014
_____
DATE

DECLARATION OF WAYNE McHUGH -- Page Solo

5



**602-606-7771**
info@turnkeykiosks.com

- home
- About Us
- Products
  - Financial Services Kiosks
  - Outdoor Kiosks
  - Workplace Solution Kiosks
  - Print-On-Demand Kiosks
  - Ticketing Kiosks
  - Custom Kiosks
  - Shelters: ATM and Kiosk
- Software
- Capabilities
- Consulting
- Partners
- News
- Contact

| |
|---|
| **Financial Services Kiosks** |
| **Outdoor Kiosks** |
| **Print-On-Demand Kiosks** |
| **Ticketing Kiosks** |
| **Custom Kiosks** |
| **Shelters: ATM and Kiosk** |

# Three Amazing Things About TurnKey Kiosks, LLC

1.**TurnKey Kiosks is a family-owned and operated company.** While many people might look at family-owned businesses as simple "mom and pop" operations, the depth of experience that the Strachans bring to TurnKey Kiosks before the founding of their company has helped TurnKey develop exciting, quality kiosk solutions. TurnKey Kiosks was founded by Gary Strachan, and his two sons Kelly and Casey. The Strachans each have strong business backgrounds prior to the founding of TurnKey. Gary worked with IBM for 35 years. Kelly worked in research and development in the oil and gas pipeline industry. Casey worked with IBM and in the construction industry, where he built small networks.

A 2012 study conducted by the Harvard Business review found that:

> family businesses focus on resilience more than performance. They forgo the excess returns available during good times in order to increase their odds of survival during bad times.

This same study found that family owned business have smaller turnover rates, operate with smaller debt loads, and are more diversified than average corporations. Because the well-being of an entire family is at risk when the business is operated by the family, family-owned businesses are more cautious in their business approaches, and this leads to their companies being better able to adapt in times of economic crisis.

As a family-owned and family-operated company, TurnKey uses low turnover rates, smaller debt load and the diversity of experience within the Strachan family to build amazing kiosks for their customers.

2. **TurnKey Kiosks designs all the hardware for their Kiosks in-house.** The Strachans have over 90 combined years experience with informational technology and hardware design. At IBM, Gary was the leader of the ATM Support Practice, with North America and Carribean responsibilities. He also worked on airline check in, photo kiosks and other self-service projects there. Casey helped work on IBM's Y2K project. Casey has also worked with

**6**

Three Amazing Things About TurnKey Kiosks, LLC :: TurnKey Kiosks          http://turnkeykiosks.com/2013/10/03/three-amazing-things-about-turnke...

networks, both large and small, and helped develop troubleshooting and repair techniques on a wide variety of IT machines.  Kelly's work in the oil and gas industry included research and development, which helps him today with researching the latest technologies for kiosk hardware.

Because of the Strachan family's wealth of experience in IT and R&D, they are able to fully design the hardware for all the kiosks they manufacture. TurnKey Kiosks also has software development being done in house. There is no need for them to outsource software design, because they can design and implement needed software for TurnKey Kiosks' products with relative ease. The Strachan family knows how to design kiosks, and how to make them function in the way needed by the consumer.

3. TurnKey Kiosks provided the hardware for the first Bitcoin ATMs. Bitcoin is still a relatively new player in the financial field. It is a secure, traceable digital currency that allows customers to purchase things on various internet (and a few store front) locations without using a credit card. It is not controlled by any one government: it is available for use world wide. TurnKey Kiosks partnered with Robocoin to design Bitcoin ATMs that allow a person to buy Bitcoins with cash, and trade bitcoins for cash. These kiosks are expected to make Bitcoin more accessible to the general public who don't own dedicated Bitcoin mining computers or software.

TurnKey Kiosks | Copyright © 2013 All Rights Reserved

Design by Absolute Computers

7

**Casey Strachan**

| | |
|---|---|
| **From:** | Wayne McHugh [wmchugh@ganart.com] |
| **Sent:** | Monday, November 19, 2012 9:48 AM |
| **To:** | Casey Strachan |
| **Subject:** | Re: Progress |

Thanks for the update Casey. We are tweaking some of our device libraries to handle the exact devices on the unit and testing, testing, testing. I will also be sending over the Palm Vein assembly for your review. We see this as a crucial piece of biometric validation for the Money Services Business (MSB) which we see as a big player.

I should have files from engineering later today and will fire them over.

We are all feeling really good about the unit and as such, we should layout a roadmap between the two companies. Would like to get your thoughts on that.

Lastly, not sure what your collective schedules are for after the holiday, but as we mentioned previously, would love to get you guys out here to see the technology first hand and to work through business roadmap between TurnKey and Ganart.

Just in case I get tied up over the next couple days, I wanted to wish all you guys (and your families) a safe and happy Thanksgiving.

Best regards,

**Wayne McHugh**
*Managing Director - Sales*
GANART Technologies Inc.
1700 Columbian Club Drive
Carrollton, TX
75006
Email: wmchugh@ganart.com
wmchugh@ganart.com

U.S. Cell: 603.930.8229

India Cell: +91.976.372.0497



On Nov 19, 2012, at 10:37 AM, Casey Strachan wrote:

Hi Wayne,

Just wanted to check in and let you know that I did receive the webcam. I looked at it and I think I should be able to make a bracket to hold that webcam in the klosk without an issue. My sheet metal contact will be here tomorrow, I will get him to confirm that for me.

1

TURNKEY000245

00015   **8**

I also looked into a UPS and found an option.  It has a connection to the PC via USB port.  Should hold the kiosk up for at least 5 minutes.

Gary said that the testing is going well, is there anything else that you need from us?

Thanks,


*Casey W. Strachan*   Director of I.T.
          <image001.jpg>

cstrachan@turnkeykiosks.com

8957 W. Windsor Drive, #118
Peoria, Arizona 85381
Office: (602) 606-7771
Fax: (623) 372-2381
Cell: (623) 297-5202

2

TURNKEY000246

00016  **9**

**Casey Strachan**

| | |
|---|---|
| **From:** | Wayne McHugh [wmchugh@ganart.com] |
| **Sent:** | Wednesday, June 19, 2013 5:36 PM |
| **To:** | Casey Strachan |
| **Subject:** | Re: Palm Dome |

Thanks. Let me know how the testing goes.

Sent from my iPhone

On Jun 19, 2013, at 7:35 PM, "Casey Strachan" <cstrachan@turnkeykiosks.com> wrote:

> Makes sense, we will make the one tweak we know it needs and do some extensive testing here.
> But I believe you are correct. We made this one out of acrylic and it will read through it.
>
> Thanks,
>
> Casey Strachan
> Cstachan@turnkeykiosks.com
> 8957 W. Windsor Drive, #118
> Peoria, Arizona 85381
>
> On Jun 19, 2013, at 5:19 PM, Wayne McHugh <wmchugh@ganart.com> wrote:
>
>> We had a very special material, process and tint. We were very concerned about
>> striations, light absorption etc. I do not feel tht is any longer a factor, but I am not
>> the one building them anymore. I just need them to be able to read. They do not
>> take a beating by the design itself.
>>
>> Make sense?
>>
>> On Jun 19, 2013, at 7:11 PM, Casey Strachan wrote:
>>
>>
>>> Hi Wayne,
>>>
>>> Overkill in which way? It is a good protection against damaging the palm
>>> scanning sensor itself so we would want to keep them. But maybe it does not need
>>> to be special material or tint anymore.
>>>
>>> Casey Strachan
>>> Cstachan@turnkeykiosks.com
>>> 8957 W. Windsor Drive, #118
>>> Peoria, Arizona 85381
>>>
>>> On Jun 19, 2013, at 5:00 PM, Wayne McHugh <wmchugh@ganart.com> wrote:
>>>
>>>> If the dome you had made works in a production environment, that
>>>> is fine with us. The first units were overkill by design.But based on
>>>> changes in Fujitsu's Palm Scan, it may no longer be needed.

1

TURNKEY000258

00018 **10**

On Jun 19, 2013, at 6:11 PM, Casey Strachan wrote:


Wayne,

I just wanted to send you this. Before I got the info last week about where you had your domes made, we had our plastic company make us some to the print that was in the STP file you sent originally.

This is the difference between the two. I am curious if there is any particular reason that the dome needs to be tinted or shaped in the way that it is?

We have tested ours here and found that it needs a small tweak in it's height, it's about a tenth of an inch too short. However, it still scans your palm with an accurate read everytime.

We have a quote from your original company on the domes they made for you. They seem a bit pricey compared to what we were getting but that could be the construction of the dome. We just wanted to check if there was a particular reason that it was built in that manner and if you would mind if we went with the new design?

Thanks,


*Casey W. Strachan* : Director of I.T.


cstrachan@turnkeykiosks.com

8967 W. Windsor Drive, #118
Peoria, Arizona 85381
Office: (602) 606-7771
Fax: (623) 372-2381
Cell: (623) 297-5202

  Check out our new Website
Like us on Facebook & Twitter!

2

TURNKEY000259

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| GANART TECHNOLOGIES, INC. | § | |
| | § | CIVIL ACTION NO. |
| VS. | § | 3:14-CV-00616-BF |
| | § | |
| TURNKEY KIOSKS, LLC | § | |

**PLAINTIFF'S FIRST SUPPLEMENTAL OBJECTIONS AND ANSWERS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES**

TO:   Defendant, TurnKey Kiosks, LLC, by and through its attorney of record, David W. Williams and Joshua W. Carden, Davis Miles McGuire Gardner, The Summit at law Colinas, 545 E. John Carpenter Freeway, Suite 300, Irving, Texas 75062

COMES NOW, Ganart Technologies, Inc., Plaintiff in the above-entitled and numbered cause and pursuant to the Federal Rules of Civil Procedure, files this its First Supplemental Objections and Answers to Defendant's First Set of Interrogatories.

Respectfully submitted,

COBB MARTINEZ WOODWARD PLLC
1700 Pacific Avenue, Suite 3100
Dallas, Texas 75201
(214) 220-5204
(214) 220-5254 (Fax)

By: /s/ Jonathan C. LaMendola
JONATHAN C. LaMENDOLA
Texas Bar No. 00792637
email: jlamendola@cobbmartinez.com
DAVID R. WOODWARD
Texas Bar No. 21975650
email: dwoodward@cobbmartinez.com

ATTORNEYS FOR PLAINTIFF GANART
TECHNOLOGIES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to the following counsel of record either by hand-delivery, telefax, certified mail, return receipt requested, e-mail and/or regular U.S. mail on this 11th day of June, 2014.

David W. Williams
Joshua W. Carden
Davis Miles McGuire Gardner
The Summit at law Colinas
545 E. John Carpenter Freeway, Suite 300
Irving, TX 75062

/s/ Jonathan C. LaMendola
**JONATHAN C. LaMENDOLA**

## INTERROGATORIES

<u>INTERROGATORY NO. 1:</u>      State the names, current addresses, and telephone numbers of each and every individual who you believe has knowledge of facts concerning this matter, including but not limited to any persons whom you have obtained written or recorded statements pertaining to this case from, and provide the substance of each individual's knowledge and give the date of any statements obtained, if applicable.

     **ANSWER:** *See* Plaintiff's Initial Disclosures.


<u>INTERROGATORY NO. 2:</u>      Please separately state the amounts you are claiming for economic damages, non-economic damages, special damages, and explain how you arrived at those amounts.

     **ANSWER:** *See* Plaintiff's Initial Disclosures.


<u>INTERROGATORY NO. 3:</u>      Please identify each and every exhibit you propose to use at the trial or any hearing of this case, including the title of each exhibit, a description of the contents of each exhibit, identify any limited purpose for which the exhibit will be offered, the names, addresses of and job titles of authenticating witnesses and current custodians. This interrogatory is directed both to exhibits you intend to use upon the trial and exhibits you may use.

     **ANSWER:** Plaintiff objects to this Interrogatory as premature, but will supplement its response. Plaintiff, however, may use any document or items produced in this case.

INTERROGATORY NO. 4:  Please identify every witness, including expert witnesses, who may testify at the trial of this matter including their names, addresses, job titles, relationship to any party, the subject matter and summary of the anticipated testimony.

ANSWER: *See* Plaintiff's Initial Disclosures.

INTERROGATORY NO. 5:        Regarding each trade secret which you contend was misappropriated by Defendant, please describe with particularity how Defendant allegedly misappropriated the trade secret, each person with knowledge of any such misappropriation, and when you contend the each such trade secret was misappropriate.

ANSWER: Ganart directs Defendant to Plaintiff's Amended Disclosures and its live pleading. Ganart currently contends TurnKey misappropriated its trade secrets by:

a) disassembling, reverse engineering, redesigning and/or duplicating Ganart's proprietary palm vein scanner assembly (The Assembly);

b) copying, decoding and/or reproducing Ganart's proprietary software based customer registration and authentication process;

c) copying, redesigning and/or reproducing Ganart's patent pending, anti-money laundering compliant self-service registration at kiosk; and

d) disclosing, demonstrating, and/or providing Ganart's system and method for formless self-service registration for access to financial services to Third-Parties without Ganart's specific written permission.

The identity of specific individuals with knowledge of such wrongful conduct would be within the sole possession of TurnKey employees, representatives, and agents who engaged in such wrongful activity as well as those individuals to whom Ganart's trade secrets were provided.

Ganart contends that at a minimum, Casey Strachan, Kelly Strachan, and Gary Strachan engaged in the misappropriation as well as currently unknown representatives of Robocoin Technologies, Inc.

Both TurnKey and Robocoin have admitted that TurnKey demonstrated Ganart's proprietary system and method for formless self-service registration for access to financial services to Robocoin. This was done in violation of the NDA between Ganart and TurnKey.

TurnKey has likewise admitted that it misappropriated Ganart's assembly and installed it in a kiosk that was provided to Robocoin and deployed in Vancouver, Canada. Furthermore, the software-based customer registration process used by Robocoin in the kiosk deployed in Vancouver, Canada is a replica of Ganart's patent-pending system and method for formless self-service registration for access to financial services.

Since discovery has only just begun, Ganart contends there may be other instances of misappropriation and wrongful conduct by TurnKey which Ganart has not yet learned of.

<u>INTERROGATORY NO. 6:</u>      Regarding each trade secret you contend was utilized by Defendant, identify with particularity the following:

    (a)    The complete, precise trade secret you contend was utilized;

    (b)    The Bates numbers of (or description enabling Defendant to identify) the documents produced by you which show or describe each trade secret or its utilization by Defendant;

    (c)    Each person with knowledge of any such utilization; and

    (d)    When the trade secret was allegedly utilized by Defendant.

**ANSWER:** Ganart refers Defendant to Ganart's live pleadings and initial disclosures.

Additionally:

a) (1)     Ganart's palm vein scanner assembly (The Assembly);

(2)     Ganart's software based customer registration and authentication process;

(3)     Ganart's patent pending anti-money laundering compliant self-service registration and kiosk; and

(4)     Ganart's system and method for formless self-service registration for access to financial services.

b) TurnKey has been provided a proposed stipulated confidentiality order which, once agreed upon, will facilitate production of responsive documents.

c) The specific identity of the individuals who utilized Ganart's trade secrets is within the sole possession of TurnKey employees, representatives, and agents as well as anyone to whom TurnKey wrongfully disclosed or provided Ganart's trade secrets. Ganart contends that at a minimum, Gary Strachan, Kelly Strachan, and Casey Strachan have such knowledge.

d) The exact timing of when TurnKey engaged in the wrongful conduct is within the sole possession of TurnKey's employees, representatives, and agents. Ganart, however, contends that TurnKey's misappropriation occurred sometime between March 8, 2013 and October 28, 2013.

Since discovery has only just begun, Ganart contends there may be other instances of misappropriation and wrongful conduct by TurnKey which Ganart has not yet learned of.

INTERROGATORY NO. 7:     Please state the complete factual basis for any allegation that Defendant allegedly shared any trade secret or proprietary information with any third-party, including all documents that support the allegation and any person with knowledge of such allegations.

**ANSWER:** On or about August 20, 2013 Ganart received alerts from TurnKey's demo kiosk. Ganart was informed by TurnKey that TurnKey had disconnected and/or removed several devices from the demo kiosk.

On or about September 5, 6 and 20, 2013 TurnKey requested Ganart enable the self-service registration at kiosk service on the demo kiosk in TurnKey's offices so that it could provide a demonstration to a prospective customer.

On or about October 23, 2013 TurnKey emailed Ganart that the ID scanner was not working. This indicates TurnKey disconnected and/or removed the ID scanner.

On or about October 28, 2013 Ganart learned from news report that Robocoin had deployed a TurnKey kiosk in Vancouver, Canada. The kiosk contained Ganart's proprietary palm vein scanner assembly. The software based customer registration process used by Robocoin is a replica of Ganart's patent-pending self-service Registration at kiosk.

When confronted over the phone later that day with this information by Art Holbrook, Gary Strachan admitted that TurnKey had used Ganart's design and installed The Assembly in the kiosk deployed in Vancouver, Canada.

Ganart refers TurnKey to Ganart's Amended Disclosures and its response to Interrogatory No. 6 for additional responsive information.

Since discovery has only just begun, Ganart contends there may be other instances of misappropriation and wrongful conduct by TurnKey which Ganart has not yet learned of.

INTERROGATORY NO. 8:       Please identify in detail any confidential or proprietary information belonging to Plaintiff that is not a trade secret and that you contend Defendant wrongfully utilized or misappropriated, each document pertaining or related to such utilization or misappropriation, and each person who has knowledge of such misappropriation or utilization.

**ANSWER:** Ganart contends that all confidential and proprietary information TurnKey wrongfully utilized or misappropriated was a trade secret. To the extent it was not, see Ganart's response to Interrogatory No. 6, above.

Since discovery has only just begun, Ganart contends there may be other instances of misappropriation and wrongful conduct by TurnKey which Ganart has not yet learned of.

INTERROGATORY NO. 9:    Please state the complete factual basis for any allegation that supports your claim that Defendant breached the non-disclosure agreement, including all documents that support the allegation and any person with knowledge of such allegations.

**ANSWER:** On or about August 20, 2013 Ganart received alerts from TurnKey's demo kiosk. Ganart was informed by TurnKey that TurnKey had disconnected and/or removed several devices from the demo kiosk.

On or about September 5, 6, and 20, 2013 TurnKey requested Ganart enable the self-service registration at kiosk service on the demo kiosk in TurnKey's offices so that it could provide a demonstration to a prospective customer.

On or about October 23, 2013 TurnKey emailed Ganart that the ID scanner was not working. This indicates TurnKey disconnected and/or removed the ID scanner.

On or about October 28, 2013 Ganart learned from news report that Robocoin had deployed a TurnKey kiosk in Vancouver, Canada. The kiosk contained Ganart's proprietary palm vein scanner assembly. The software based customer registration process used by Robocoin is a replica of Ganart's patent-pending self-service Registration at kiosk.

When confronted over the phone later that day with this information by Art Holbrook, Gary Strachan admitted that TurnKey had used Ganart's design and installed The Assembly in the kiosk deployed in Vancouver, Canada.

PLAINTIFF'S FIRST SUPPLEMENTAL OBJECTIONS AND ANSWERS TO DEFENDANT'S
FIRST SET OF INTERROGATORIES/Page 8
Doc. #121025

**19**

Ganart refers TurnKey to Ganart's Amended Disclosures and its response to Interrogatory No. 6 for additional responsive information.

Since discovery has only just begun, Ganart contends there may be other instances of misappropriation and wrongful conduct by TurnKey which Ganart has not yet learned of.

INTERROGATORY NO. 10:   Please state the complete factual basis for any allegation that supports your claim that Defendant breached the non-disclosure agreement, including all documents that support the allegation and any person with knowledge of such allegations.

**ANSWER:** This Interrogatory is identical to Interrogatory No. 9, above. Please see Plaintiff's response to Interrogatory No. 9.

INTERROGATORY NO. 11:   Please describe with particularity Plaintiff's "Self-Service Registration at Kiosk, including how the "Self-Service Registration at Kiosk" constitutes a "trade secret."

**ANSWER:** Self-service Registration at Kiosk is a service that allows fully compliant (Anti-money Laundering Act) registration of an individual at a self-service device, such as a kiosk, without teller assistance, for access to variety of services, such as regulated financial transactions like money transfer. This service allows a complete Anti Money Laundering Act (AML) compliant identification and registration of an individual at a self-service kiosk using Ganart's proprietary technology and processes. It includes biometric signature (including palm vein), capture and validation of a government issued identification card, and digital photographs of the registrant.

Ganart's Self-Service Registration at kiosk is the result of over two years of research and development by Ganart and the expenditure of approximately one million

dollars. Ganart licenses this process to third parties for a fee. This process derives independent economic value because it is not generally known to, and not readily ascertainable by proper means, by other persons who could obtain economic value from its disclosure or use.

This software-based process is kept confidential by Ganart and is not shared with third parties absent a Non-Disclosure Agreement. As part of the NDA, Ganart requires any subsequent disclosure by the party receiving such confidential information to obtain Ganart's specific written permission before doing so.

### VERIFICATION

STATE OF TEXAS          §
                        §
COUNTY OF DALLAS        §

**BEFORE ME,** the undersigned Notary Public, on this day personally appeared WAYNE McHUGH, who, being by me duly sworn on his oath, deposed and said that he is duly qualified and authorized in all respects to make this affidavit; that he is a duly authorized representative of Defendant Ganart Technologies, Inc.; and he has read the above and foregoing Objections and Answers to Plaintiff's Interrogatories, and that on behalf of Ganart Technologies, Inc., attests that based on the information known or reasonably available to Ganart Technologies, Inc., the factual statements contained herein are true and correct.

_____
WAYNE McHUGH, Authorized Representative
of Ganart Technologies, Inc.

**SUBSCRIBED AND SWORN TO BEFORE ME** on this 11 day of June_____, 2014, which witness my hand and official seal.

JANIE WHITE
Notary Public, State of Texas
My Commission Expires
March 13, 2017

_____
Notary Public, State of Texas

Printed Name: Janie White_____

My Commission Expires: March 13, 2017

PLAINTIFF'S FIRST SUPPLEMENTAL OBJECTIONS AND ANSWERS TO DEFENDANT'S
FIRST SET OF INTERROGATORIES/Page 11
Doc. #121025

**22**