IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **GANART TECHNOLOGIES, INC.** | § | |
| | § | **CIVIL ACTION NO.** |
| VS. | § | **3:14-CV-00616-BF** |
| | § | |
| **TURNKEY KIOSKS, LLC** | § | |

**PLAINTIFF'S OBJECTIONS AND ANSWERS TO
DEFENDANT'S SECOND SET OF INTERROGATORIES**

**TO:** Defendant, TurnKey Kiosks, LLC, by and through its attorney of record, David W. Williams and Joshua W. Carden, Davis Miles McGuire Gardner, The Summit at law Colinas, 545 E. John Carpenter Freeway, Suite 300, Irving, Texas 75062

      **COMES NOW,** Ganart Technologies, Inc., Plaintiff in the above-entitled and numbered cause and pursuant to the Federal Rules of Civil Procedure, files this its Objections and Answers to Defendant's Second Set of Interrogatories.

      Respectfully submitted,

      **COBB MARTINEZ WOODWARD** P<small>LLC</small>
      1700 Pacific Avenue, Suite 3100
      Dallas, Texas  75201
      (214) 220-5204
      (214) 220-5254 (Fax)

      By: */s/ Jonathan C. LaMendola*
          **JONATHAN C. LaMENDOLA**
          Texas Bar No. 00792637
          email: jlamendola@cobbmartinez.com
          **DAVID R. WOODWARD**
          Texas Bar No. 21975650
          email: dwoodward@cobbmartinez.com

      **ATTORNEYS FOR PLAINTIFF GANART
      TECHNOLOGIES, INC.**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to the following counsel of record either by hand-delivery, telefax, certified mail, return receipt requested, e-mail and/or regular U.S. mail on this 15th day of August, 2014.

David W. Williams  
Joshua W. Carden  
Davis Miles McGuire Gardner  
The Summit at law Colinas  
545 E. John Carpenter Freeway, Suite 300  
Irving, TX 75062  

                              */s/ Jonathan C. LaMendola*  
                              **JONATHAN C. LaMENDOLA**

**INTERROGATORIES**

**INTERROGATORY NO. 1:** Please state with particularity the complete factual basis for the allegations in Paragraph 10 of Ganart's Second Amended Complaint that "the Self-Service Registration at Kiosk process and software and the Assembly were the result of over two years of research and development by Ganart to perfect the capture of biometric images in support of Ganart's Know-Your-Customer (KYC) and Anti-Money Laundering complaint Self-Service Registration at Kiosk and biometric user authentication at kiosk which has been in commercial use since August 2011."

**ANSWER:** Ganart was in development of the Self-Service Registration at Kiosk process and software, and the Assembly, in 2010. During that time until Self-Service Registration at Kiosk was initially deployed in August 2011 for commercial use, Ganart spent hundreds of thousands of man hours, and expended significant resources, researching, developing and creating the Self-Service Registration at Kiosk process, the Self-Service Registration at Kiosk software and the Assembly itself.

Ganart spent significant resources researching, developing, manufacturing, and fine tuning the Assembly, so that the housing, finger guide, dome, and palm secure cube were fully integrated into a robust, reliable, secure, industrial grade, biometric reader. Unlike the Fujitsu consumer grade, plastic, off the shelf scanner, Ganart's Assembly integrates features (e.g. the acrylic dome covering the cube) which differentiate it from other biometric identification devices in the market. Self-Service Registration at Kiosk is a service that allows fully compliant (Anti-money Laundering Act) registration of an individual at a self-service device, such as a kiosk, without teller assistance, for access to variety of services, such as regulated financial transactions like money transfer. This service allows a complete Anti Money Laundering Act (AML)

compliant identification and registration of an individual at a self-service kiosk using Ganart's proprietary technology and processes. It includes unique combination of biometric signature (including palm vein), capture and validation of a government issued identification card, and digital photographs of the registrant.

**INTERROGATORY NO. 2:**   Please state with particularity the complete factual basis for the allegations in Paragraph 26 of Ganart's Second Amended Complaint that "prior to the demonstration(s), Robocoin's process for customer registration of bitcoin transfer used cell phones and QR codes.

**ANSWER:** On May 13, 2013, Robocoin posted a video on YouTube showing the Bitcoin exchange process.  That video may be seen at:

https://www.youtube.com/watch?v=0SidcjCLrQM

The video shows an individual buying and selling bitcoins using a cell phone and QR Code.  There is no palm vein reader or scanner.

Robocoin has since admitted through counsel, as has TurnKey, that TurnKey demonstrated the process to Robocoin's representatives.

When Robocoin deployed its first kiosk manufactured by TurnKey in Vancouver. Canada in October, 2013, the process had changed.  The kiosk, which appears to be the same one manufactured for Ganart, had Ganart supplied and manufactured parts (the Assembly) and the customer registration process now incorporated biometric identification using Ganart's Assembly, the scanning of an approved identification card, such as government issued photo id cards, and a captured photograph of the user. The unique combination of these three processes are identical to the Self-Service Registration at Kiosk process developed by Ganart. This was different than the Robocoin process demonstrated previously.  Video of the process confirms Robocoin's "new" process incorporated identical features from Ganart's Know Your Customer

PLAINTIFF'S OBJECTIONS AND ANSWERS TO DEFENDANT'S
SECOND SET OF INTERROGATORIES
Doc. #123008

(KYC) and Anti-Money Laundering Compliant Self-Service Registration at Kiosk process.

There are multiple videos of this process which can be found on the internet now. *See e.g.*:

> http://www.bing.com/videos/search?q=robocoin&qs=n&form=QBVR&pq=robocoin&sc=8-5&sp=-1&sk=

**INTERROGATORY NO. 3:**   Please state with particularity the complete factual basis for the allegations in Paragraph 26 of Ganart's Second amended Complaint that the Robocoin process for customer registration "did not incorporate any biometric identification" and "the authentication process was substantially different from Ganart's authentication process."

**ANSWER:** On May 13, 2013, Robocoin posted a video on YouTube showing the Bitcoin exchange process. That video may be seen at:

> https://www.youtube.com/watch?v=0SidcjCLrQM

The video shows an individual buying and selling bitcoins using a cell phone and QR Code. There is no palm vein reader or scanner.

Robocoin has since admitted through counsel, as has TurnKey, that TurnKey demonstrated the process to Robocoin's representatives.

When Robocoin deployed its first kiosk manufactured by TurnKey in Vancouver, Canada in October, 2013, the process had changed. The kiosk, which appears to be the same one manufactured for Ganart, had Ganart supplied and manufactured parts (the Assembly) and the customer registration process now incorporated biometric identification using Ganart's Assembly, the scanning of an approved identification card, such as government issued photo id cards, and a captured photograph of the user. The unique combination of these three processes are identical to the Self-Service Registration at Kiosk process developed by Ganart. . This was different than the Robocoin process demonstrated previously. Video of the process confirms

Robocoin's "new" process incorporated identical features from Ganart's Know Your Customer (KYC) and Anti-Money Laundering Compliant Self Service Registration at Kiosk process.

There are multiple videos of this process which can be found on the internet now.  *See e.g.*:

> http://www.bing.com/videos/search?q=robocoin&qs=n&form=QBVR&pq=robocoin&sc=8-5&sp=-1&sk=

**INTERROGATORY NO. 4:**   Please state with particularity the complete factual basis for the allegations in Paragraph 26 of Ganart's Second Amended Complaint that the Robocoin process for customer registration "on or about October 28, 2013, [Robocoin's] process had substantially changed and was identical in features and process steps in Ganart's process."

**ANSWER:**   On May 13, 2013, Robocoin posted a video on YouTube showing the Bitcoin exchange process.  That video may be seen at:

> https://www.youtube.com/watch?v=0SidcjCLrQM

The video shows an individual buying and selling bitcoins using a cell phone and QR Code.  There is no palm vein reader or scanner.

Robocoin has since admitted through counsel, as has TurnKey, thatTurnKey demonstrated the process to Robocoin's representatives.

When Robocoin deployed its first kiosk manufactured by TurnKey in Vancouver, Canada in October, 2013, the process had changed.  The kiosk, which appears to be the same one manufactured for Ganart, had Ganart supplied and manufactured parts (the Assembly) and the customer registration process now incorporated biometric identification using Ganart's Assembly, the scanning of an approved identification card, such as government issued photo id cards, and a captured photograph of the user. The unique combination of these three processes are identical to the Self-Service Registration at Kiosk process developed by Ganart. .  This was

different than the Robocoin process demonstrated previously. Video of the process confirms Robocoin's "new" process incorporated identical features from Ganart's Know Your Customer (KYC) and Anti-Money Laundering Compliant Self Service Registration at Kiosk process.

There are multiple videos of this process which can be found on the internet now. *See e.g.*:

> http://www.bing.com/videos/search?q=robocoin&qs=n&form=QBVR&pq=robocoin&sc=8-5&sp=-1&sk=

Robocoin's process for registering customers and/or transactions now followed Ganart's process. It involved the use of a palm scanner to identify the user. The process flow was the same. Ganart contends TurnKey provided Robocoin with Ganart's proprietary process and/or software as well as Ganart's proprietary Assembly.

**INTERROGATORY NO. 5:** Please state with particularity the complete factual basis for the allegations in Paragraph 26 of Ganart's Second Amended Complaint that "TurnKey also provided Robocoin with Ganart's software-based customer registration and authentication process."

**ANSWER:** Ganart provided TurnKey with a hard drive loaded with Ganart's proprietary software which TurnKey installed into a kiosk kept at Turnkey's corporate offices.

TurnKey represented it had a "wealth of experience in IT" and had "software development being done in house." TurnKey also represented it could "design and implement needed software." After this lawsuit was filed, TurnKey removed these representation from its website.

Ganart contends TurnKey accessed, copied and/or reversed engineered Ganart's proprietary software and either provided or made it available to Robocoin.

**INTERROGATORY NO. 6:** Please state with particularity the complete factual basis for the allegations in Paragraph 29 of Ganart's Second Amended Complaint that "the software-based customer registration process used on Robocoin kiosk appears to be a replicate of Ganart's Self-Service Registration at Kiosk."

**ANSWER:** The process demonstrated in the Robocoin kiosk deployed in Vancouver, Canada has the unique combination of the three processes in Ganart's Self-Service Registration at Kiosk process: biometric identification, scanning of an approved identification card, such as government issued photo id cards, and photograph capture of the user, which are identical to Ganart's proprietary KYC and AML Self-Service Registration at Kiosk.

**INTERROGATORY NO. 7:** Please state with particularity the complete factual basis for the allegation in Paragraph 30 of Ganart's Second Amended Complaint that "TurnKey has … violated the terms of the NDA with Ganart by providing Robocoin Technologies the Assembly."

**ANSWER:** Ganart and TurnKey executed a Non-Disclosure and Confidentiality Agreement ("NDA") on December 6, 2011 to explore potential business opportunities. A true and correct copy of the NDA is attached hereto as Exhibit A. Pursuant to the NDA, Ganart subsequently shared confidential information with TurnKey, including Ganart's proprietary Self-Service Registration at Kiosk software and process flow on a hard drive supplied by Ganart to TurnKey, Ganart's proprietary palm vein scanner assembly ("the Assembly") and CAD design files, financial analysis and data, pricing, and device designs.

The confidential information and material provided to TurnKey was in connection with the development of a kiosk model for Ganart's Workplace Solution using Ganart's proprietary software platform (TaaS®), Ganart's Know-Your-Customer (KYC) and Anti-Money Laundering (AML) compliant Self-Service Registration at Kiosk ("Self-Service Registration at Kiosk")

process and software, and proprietary hardware designs. Ganart provided TurnKey a hard drive with Ganart's kiosk software platform and process flow, including Self-Service Registration at Kiosk software, and a list of approved devices and proprietary hardware designs needed for the kiosk. Ganart also provided TurnKey a palm secure cube by Fujitsu, along with the Assembly. The Self-Service Registration at Kiosk process and software and the Assembly were the result of over two years of research and development by Ganart to perfect the capture of biometric images in support of Ganart's Know-Your-Customer (KYC) and Anti-Money Laundering (AML) compliant Self-Service Registration at Kiosk and biometric user authentication at kiosk which has been in commercial use since August 2011.

TurnKey sent their test kiosk to Ganart on November 3, 2012 to be put in Ganart lab for testing and device certification purposes ("Lab Kiosk"). The Lab Kiosk as shipped by TurnKey did not include the Assembly. Ganart successfully tested the Lab Kiosk to run on Ganart software.

The parties mutually agreed that TurnKey would send a production-ready kiosk to Ganart fitted with all devices, including the Assembly, for real production environment ("YourATM Kiosk"). Ganart shipped a unit of the Assembly to TurnKey in November 14, 2012 ("Assembly 1") to be installed in the YourATM Kiosk.

TurnKey executives (Gary Strachan, Kelly Strachan, Margaret Strachan, and Casey Strachan) visited the corporate office of Ganart on December 7, 2012 to discuss the parties' business relationship.

On January 7, 2013 Casey Strachan made a request for two units of the Assembly stating that TurnKey had two palm vein scanner devices with them available that they would like to fit into two Assembly units. TurnKey requested a kiosk with Ganart-approved devices and the

Assembly, running on Ganart software platform to be installed in their corporate office in Peoria, Arizona as a demo unit for prospective customers for Ganart's Workplace Solution ("Demo Kiosk"). The parties agreed that Ganart would send two units of the Assembly to TurnKey with the mutual understanding that one unit of the Assembly would be installed in the Demo Kiosk ("Assembly 2") to be deployed in TurnKey's corporate office, and the other one would be held by TurnKey pending request by Ganart for another kiosk ("Assembly 3"). Ganart sent two units of the Assembly to TurnKey that day.

TurnKey completed the YourATM Kiosk fitted with the Assembly 1 and shipped it to Ganart on January 24, 2013 which was deployed by Ganart in the Humanetics factory location in Carrollton, Texas.

TurnKey visited Ganart's office in Texas on Jan 29, 2014 to (i) retrofit the YourATM Kiosk with a second cash dispenser cassette, and (ii) retrofit the Demo Kiosk with a new front access door. During this visit, Ganart provided TurnKey with another unit of Assembly ("Lab Assembly") which was installed in the Lab Kiosk by TurnKey. The Lab Assembly was in addition to the three Assembly units previously shipped to TurnKey in Arizona.

Ganart sent a hard drive to TurnKey loaded with Ganart's proprietary software, which was received by TurnKey on March 8, 2013. TurnKey used the hard drive and Assembly 2 for the Demo Kiosk that was placed in their corporate office. The Demo Kiosk was operational on April 1, 2013.

On August 20, 2013 Ganart received several alerts from TurnKey's demo unit. Upon inquiry, Ganart was informed that TurnKey removed and/or disconnected several devices from the Demo Kiosk, which triggered the alerts.

PLAINTIFF'S OBJECTIONS AND ANSWERS TO DEFENDANT'S
SECOND SET OF INTERROGATORIES
Doc. #123008

On September 4, 2013 Casey Strachan requested to make some changes to the software module (from two cassette dispenser to one cassette version) as TurnKey had a customer visiting their shop on September 5, 2013 and TurnKey wanted to do a demo of Ganart services on the Demo Kiosk.

On September 5, 2013, Ganart received emergency call from TurnKey that their Demo Kiosk was not responding. TurnKey also made an emergency request to enable Self-Service Registration at Kiosk service on the Demo Kiosk for a customer demo. Ganart responded to the requests. TurnKey sent a confirmation email to Ganart that the Demo Kiosk was working and the Self-Service Registration at Kiosk service worked very well. TurnKey also requested Ganart to restore the previous services on the Demo Kiosk. On September 6, 2013 TurnKey sent another email that Self-Service Registration at Kiosk service worked great during customer demo.

On September 12, 2013 Gary Strachan made a request to ship the Lab Kiosk in Ganart lab back to TurnKey with the explanation that they had an opportunity to sell it to a customer. Ganart erased its software from the hard drive and removed its own devices, including Lab Assembly, from the Lab Kiosk prior to shipment.

On September 20, 2013 TurnKey made an emergency request to enable Self-Service Registration at Kiosk service again on their Demo Kiosk for a customer demo later that day. Ganart responded to the request by enabling the Self-Service Registration at Kiosk service for that customer demo.

Assembly 1 was removed by Ganart prior to shipping the YourATM Kiosk to TurnKey the week of November 23, 2013. Assembly 2 was returned by TurnKey to Ganart in November 2013 in a disassembled state which is a violation of the NDA. TurnKey is currently in possession of Assembly 3.

Based on information and belief, TurnKey gave one or more demonstrations of Ganart's proprietary Know Your Customer and Anti-Money Laundering compliant Self Service Registration at Kiosk to Robocoin in September, 2013, in violation of the NDA.

In October, 2013 TurnKey provided Robocoin with a Kiosk that incorporated Ganart's proprietary Assembly.

Prior to the demonstration(s), Robocoin's process for customer registration and bitcoin transfer used cell phones and QR Codes. It did not incorporate any biometric identification. Furthermore, the authentication process was substantially different from Ganart's authentication process.  Following the demonstration(s), as evidenced by video of the TurnKey-supplied Robocoin kiosk, deployed in Vancouver, Canada, on or about October 28, 2013, the process had substantially changed and was identical in features and process steps to Ganart's process. Upon information and belief, TurnKey also provided Robocoin with Ganart's software-based customer registration and authentication process.

During the week of September 23, 2013 TurnKey had the Ganart Lab Kiosk picked up from Ganart premises by UPS.

On October 23, 2013 TurnKey sent an email that the Snapshell (ID scanner) device on their Demo Kiosk was not working.  Upon information and belief, TurnKey unplugged the Snapshell device from the Demo Kiosk, plugged in another device, and then when they re-plugged the Snapshell device, it stopped working.

On or about October 28, 2013 Ganart learned from media reports that Robocoin installed a kiosk (supplied by TurnKey) in Vancouver, Canada.  The kiosk installed by Robocoin is the same model manufactured by TurnKey for Ganart.  Photographs of the kiosk accompanying the news reports reveal that the palm vein scanner assembly installed on the Robocoin kiosk is the

same as the Assembly designed by Ganart. Also, the software-based customer registration process used on Robocoin kiosk appears to be a replica of Ganart's Self-Service Registration at Kiosk. When confronted with this information, TurnKey admitted that the palm vein scanner Assembly installed on the Robocoin kiosk had the same components provided by Ganart and same design of the Assembly provided to TurnKey by Ganart, which is a violation of the NDA.

**INTERROGATORY NO. 8:** Please state with particularity the complete factual basis for the allegations in Paragraph 30 of Ganart's Second Amended Complaint that "TurnKey has … violated the terms of the NDA with Ganart by demonstrating Ganart's proprietary Self-Service Registration at Kiosk process to Robocoin."

**ANSWER:** *See* Answer to Interrogatory No. 7. *See also*, Ganart's Answers to Defendant's First Set of Interrogatories.

**INTERROGATORY NO. 9:** Please state with particularity the complete factual basis for the allegations in Paragraph 30 of Ganart's Second Amended Complaint that "TurnKey has … infringed upon the intellectual property of Ganart by providing Robocoin Technologies the entire Self-Service Registration at Kiosk process."

**ANSWER:** *See* Answer to Interrogatory No. 7. *See also*, Ganart's Answers to Defendant's First Set of Interrogatories.

**INTERROGATORY NO. 10:** Please state with particularity the complete factual basis for the allegations in Paragraph 34 of Ganart's Second Amended Complaint that "Defendants have misappropriated Ganart's trade secrets through improper means."

**ANSWER:** *See* Answer to Interrogatory No. 7. *See also*, Ganart's Answers to Defendant's First Set of Interrogatories.

**INTERROGATORY NO. 11:** Please state with particularity the complete factual basis for your contention that the "palm vein scanner assembly" constitutes a "trade secret" as defined by Tex. Civ. Prac. & Rem. Code § 134A.002(6).

**ANSWER:** Ganart spent significant resources researching and developing the Assembly, so that the housing, finger guide, dome, and palm secure cube were fully integrated into a robust, reliable, secure, industrial grade, biometric reader. Unlike the Fujitsu consumer grade, plastic, off the shelf scanner, Ganart's Assembly integrates features (e.g. the acrylic dome covering the cube) which differentiate it from other biometric identification devices in the market.

TurnKey's allegedly "independently developed" palm vein scanner assembly is nothing more than a slight modification of Ganart's design — it uses the same materials, has the same profile, and the same angles developed by Ganart. The base geometry for TurnKey's version is identical to Ganart's proprietary Assembly.

**INTERROGATORY NO. 12:** Please state with particularity the complete factual basis for your contention that the "Self-Service Registration" constitutes a "trade secret" as defined by Tex. Civ. Prac. & Rem. Code § 134A.002(6).

**ANSWER:** Self-Service Registration at Kiosk is a service that allows fully compliant (Anti-money Laundering Act) registration of an individual at a self-service device, such as a kiosk, without teller assistance, for access to variety of services, such as regulated financial transactions like money transfer. This service allows a complete Anti Money Laundering Act (AML) compliant identification and registration of an individual at a self-service kiosk using Ganart's proprietary technology and processes. It includes unique combination of biometric

signature (including palm vein), capture and validation of a government issued identification card, and digital photographs of the registrant.

Ganart's Self-Service Registration at kiosk is the result of over two years of research and development by Ganart and the expenditure of approximately one million dollars. Ganart licenses this process to third parties for a fee. This process derives independent economic value because it is not generally known to, and not readily ascertainable by proper means, by other persons who could obtain economic value from its disclosure or use.

This software-based process is kept confidential by Ganart and is not shared with third parties absent a Non-Disclosure Agreement. As part of the NDA, Ganart requires any subsequent disclosure by the party receiving such confidential information to obtain Ganart's specific written permission before doing so.

**INTERROGATORY NO. 13:**     If your responses to Plaintiff's First Set of Requests for Admission are anything, but an unqualified admission:

    A.    State the factual basis for your denial;

    B.    Identify all persons who have knowledge of the facts stated in support of subparagraphs (A) above; and

    (C)    Identify all documents supporting your denial.

**ANSWER:**  Plaintiff objects to this Interrogatory because Defendant has exceeded the permissible number of Interrogatories.  Plaintiff objects to this Interrogatory because it is overbroad.  Subject to these objections, Plaintiff directs Defendant to its Disclosures and its responses to Defendant's discovery.

PLAINTIFF'S OBJECTIONS AND ANSWERS TO DEFENDANT'S
SECOND SET OF INTERROGATORIES
Doc. #123008

## VERIFICATION

| | |
|---|---|
| STATE OF TEXAS | § § § |
| COUNTY OF DALLAS | |

**BEFORE ME,** the undersigned Notary Public, on this day personally appeared WAYNE McHUGH, who, being by me duly sworn on his oath, deposed and said that he is duly qualified and authorized in all respects to make this affidavit; that he is a duly authorized representative of Defendant Ganart Technologies, Inc.; and he has read the above and foregoing Objections and Answers to Plaintiff's Second Set of Interrogatories, and that on behalf of Ganart Technologies, Inc., attests that based on the information known or reasonably available to Ganart Technologies, Inc., the factual statements contained herein are true and correct.

_____
WAYNE McHUGH, Authorized Representative
of Ganart Technologies, Inc.

**SUBSCRIBED AND SWORN TO BEFORE ME** on this 13 day of August, 2014, which witness my hand and official seal.



JANIE WHITE
Notary Public, State of Texas
My Commission Expires
March 13, 2017

_____
Notary Public, State of Texas
Printed Name: Janie White
My Commission Expires: March 13, 2017

PLAINTIFF'S OBJECTIONS AND ANSWERS TO DEFENDANT'S
SECOND SET OF INTERROGATORIES
Doc. #123008