IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GANART TECHNOLOGIES, INC.<br>Plaintiffs, | §<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 3:14-cv-00616-BF |
| V. | §<br>§ | |
| TURNKEY KIOSKS, LLC<br>Defendant. | §<br>§<br>§<br>§<br>§ | |

**DEFENDANT TURNKEY KIOSK, LLC'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S CONFIDENITAL APPENDIX AND PORTIONS OF PLAINTIFF'S CONFIDENTIAL RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant TurnKey Kiosks, LLC ("TurnKey") hereby moves to strike certain portions of Plaintiff Ganart Technologies, Inc. ("Ganart") confidential brief and appendix in support of its confidential brief opposing TurnKey's motion for summary judgment, including:

1. Ganart's Confidential Third Supplemental Objections and Answers to Defendants' First Set of Interrogatories (Appendix 2 to Ganart's Confidential Appendix, Docket 46) and Paragraphs 40, 41 and 42 of the Ganart's Confidential Brief (Docket 45) and

2. Paragraphs 22 through 24 of the Affidavit of Wayne McHugh (Appendix 1 to Ganart's Confidential Appendix, Docket 46) and Paragraphs 24 through 27 and 66 of Ganart's Confidential Brief (Docket 45).

I.     INTRODUCTION

TurnKey seeks to preclude and strike two portions of Ganart's Confidential Appendix and the allegations from Ganart's responsive brief based upon the two portions of the Confidential Appendix.

First, TurnKey seeks to strike Ganart's Confidential Third Supplemental Objections and Answers to Defendants' First Set of Interrogatories (Appendix 2 to Ganart's Confidential Appendix, Docket 46) and Paragraphs 40, 41 and 42 of Ganart's confidential brief that rely upon portions of the interrogatory responses. Ganart's confidential third supplemental interrogatory responses were served on February 9, 2015 after TurnKey moved for summary judgment. In the supplemental interrogatory responses, Ganart finally decided to define how its palm vein scanner assembly and Self-Service Registration at Kiosk were trade secrets under the Texas Uniform Trade Secrets Act. Throughout this litigation, TurnKey has repeatedly attempted through informal discovery and formal interrogatories to get Ganart to specifically identify its trade secrets. It was only after TurnKey filed its motion for summary judgment that Ganart finally attempted to provide a detailed description of its proprietary information and how such qualifies as a trade secret. Ganart's failure to timely supplement its interrogatory responses and gamesmanship with the discovery rules warrants preclusion of Ganart's third supplemental interrogatory responses, which are set forth in Appendix 2, and referenced in Ganart's confidential brief at Paragraphs 40 through 42.

Second, TurnKey seeks to strike Paragraphs 22 through 24 of the Affidavit of Wayne McHugh (Appendix 1 to Ganart's Confidential Appendix, Docket 46) and Paragraphs 24 through 27 and 66 of Ganart's congenital brief that references the sections of Mr. McHugh's affidavit. These materials should be stricken because they are based upon untimely disclosed damages theory and hearsay testimony related to a conversation between an unnamed Ganart representative and an unnamed representative of PayCenter1, a former customer of Ganart.

For the reasons set forth below, TurnKey requests that the aforementioned Exhibits and sections of Ganart's confidential brief be stricken.

## II. THE SUPPLEMENTAL INTERROGATORY RESPONSES AND THE RELATED SECTIONS OF GANART'S CONFIDENTIAL BRIEF SHOULD BE STRICKEN.

### A. Ganart Failed to Timely Supplement its Discovery Responses Related to Its Trade Secrets, and Only Did So After TurnKey Moved for Summary Judgment.

As the Court is aware, this lawsuit involves a claim for misappropriation of trade secret. Throughout this litigation, Ganart has been evasive in actually defining what its trade secrets are, and how its proprietary information qualifies as a trade secret. To fully understand how Ganart's proprietary information qualified as a trade secret, TurnKey served detailed interrogatories that asked Ganart to identify its trade secrets in detail. *See* TurnKey's Appendix in Support of its Motion to Strike ("App."), p. 7. On June 6, 2014, Ganart initially responded to TurnKey's first set of interrogatories with a general and vague response as follows:

> (a) *See* Plaintiff's live pleadings and briefing in support of its Application for a Temporary Injunction; (b) Plaintiff will supplement this response; (c) *See* Plaintiff's Initial Disclosures; (d) *See* Plaintiff's live pleadings and briefing in support of its Application for a Temporary Injunction.

*See* App., pp. 7-9. After receiving the vague interrogatory responses, on June 9, 2014, TurnKey's counsel sent detailed correspondence requesting that Ganart supplement its interrogatory response with a specific description of the alleged trade secrets and threatening a motion to compel if the trade secrets were not fully disclosed. *See* App., pp. 11, 12. On June 11, 2014, Ganart served its first supplemental interrogatory responses, which still only gave a vague and ambiguous description as to how the palm vein scanner assembly and Self-Service Registration at Kiosk were trade secrets. *See* App., pp. 17-18, 21-22.

In early October 2014, Ganart insisted on taking depositions of TurnKey's employees and non-party RoboCoin. Before agreeing to allow TurnKey's representatives to be deposed, on October 13, 2014, TurnKey's counsel again requested that Ganart fully and completely respond

to TurnKey's interrogatories related to how Ganart's proprietary information were alleged trade secrets. *See* App., pp. 24-26. Ganart did not respond or attempt to supplement its discovery responses. In early January 2015, Ganart again demanded to depose TurnKey's employees, and TurnKey's counsel once again requested that Ganart fully respond to TurnKey's interrogatories. *See* App., p. 27. In its Second Supplemental Interrogatory Responses, Ganart made no attempt to supplement its earlier responses related to how its proprietary information were alleged trade secrets. *See* App., pp. 32-33, 37-38.

TurnKey filed its motion for summary judgment on January 19, 2015. In its motion for summary judgment, TurnKey set forth why Ganart could not establish that its proprietary information were alleged trade secrets because Ganart had failed to provide any specificity to its proprietary information. *See* TurnKey's Brief, pp. 21-24, Doc. 38. After TurnKey filed its motion for summary judgment, Ganart served its third supplement interrogatory responses, which for the first time attempted to provide any level of specificity to how the palm vein scanner assembly and Self-Service Registration at Kiosk were alleged trade secrets. *See* Ganart's Confidential App. in Support its Response to Defendant's Motion for Summary Judgment, pp. 19-20, Doc. 46. The third supplemental interrogatory responses were incorporated into Ganart's confidential brief at Paragraphs 40 to 42, and Ganart used that information to attempt to show that its proprietary information met the requisite specificity requirements to qualify as a trade secret.

**B.    Ganart's Failure to Timely Supplement is a Violation of the Discovery Rules and Warrants Preclusion.**

It is widely accepted that a plaintiff in a trade secret lawsuit bears the initial burden of describing its trade secret with particularity, even before the plaintiff is allowed to conduct discovery. *See Engelhard Corp. v. Savin Corp.*, 505 A.2d 30, 33 (Del. Ch. 1986) (A "plaintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel

discovery of its adversary's trade secrets."); *StorageCraft Tech. Corp. v. Symantec*, No. 2:07-CV-856 CW, 2009 WL 112434, at *2 (D. Utah Jan. 16, 2009) ("There is no question that the magistrate's July 23 order correctly stated the correct legal standard. That is, Symantec is required to identify its claimed trade secret with reasonable particularity before being allowed discovery on that claim."); *Big Vision Private, Ltd. v. E.I. Dupont De Nemours & Co.*, 2014 Dist. LEXIS 26991 at *88 (S.D.N.Y. Feb. 10, 2014) ("The requirement of particularity exists for the simple reason that a defendant must know what constitutes a plaintiff's trade secret, so that it does not infringe upon that trade secret and so that the defendant can defend itself at any trial.");

Here, Ganart flagrantly skirted that burden, and only supplanted its discovery responses after TurnKey moved for summary judgment, despite numerous requests for TurnKey to provide the requested information. Ganart should not allowed to play fast and loose with its discovery obligations and then "come clean" after TurnKey has moved for summary judgment.

Ganart had a duty to seasonably supplement its discovery responses. *See* Fed.R.Civ.P. 26(e)(2) ("A party is under a duty seasonably to amend a prior response to an interrogatory . . . if the party learns that the response is in some material respect incomplete or incorrect."). Pursuant to the Federal Rules of Civil Procedure, information not provided in discovery should be excluded from evidence unless the disclosing party can establishes that the failure to disclose was either harmless or justified Fed.R.Civ.P. 37(c)(1) ("A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion, any witness or information not so disclosed."); *See Heidtman v. County of El Paso*, 171 F.3d 1038, 1040 (5th Cir. 1999).

In determining whether Ganart's failure to timely supplement its discovery responses is harmless, the Court should consider the following factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of allowing the evidence to be presented; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's

failure to provide the evidence in discovery. *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Company Inc.*, 73 F.3d 546, 572 (5th Cir. 1996). The particular factors are discussed below.

        **1.**    ***Importance of the Evidence***--The importance of specifically and in detail outlining how Ganart's proprietary information qualifies as a trade secret is at the heart of Ganart's case. As indicated above, courts have repeatedly required the plaintiff to specifically identify its trade secret before being able to even conduct discovery of the defendant. *See Engelhard Corp.*, 505 A.2d at 33; *StorageCraft Tech. Corp. v. Symantec*, 2009 WL 112434, at *2 (D. Utah Jan. 16, 2009).

        **2.**    ***The Prejudice to TurnKey***—The prejudice to TurnKey cannot be overstated. *See sit-up Ltd. v. IAC/Interactive Corp.*, 2008 U.S. Dist. LEXIS 12017 at *34 (S.D.N.Y. February 20, 2008) ("[S]pecificity is required before the court so that the defendant can defend himself adequately against claims of trade secret misappropriation, and can divine the line between secret and non-secret information, and so that a jury can render a verdict based on a discriminating analysis of the evidence of disclosure and misappropriation."). Throughout this litigation and through written discovery, TurnKey has attempted to gain an understanding of how Ganart's proprietary information qualifies as a trade secret. Instead, Ganart has played a shell game of evasive discovery responses, and only after TurnKey moved for summary judgment, did Ganart attempt to comply with its discovery obligations. Further, allowing Ganart to try and create a material issue of fact on summary judgment after almost 10 months of TurnKey's repeated attempts to get Ganart to comply with its discovery obligations would only condone the very behavior Rule 37 has designed to stop.

        **3.**    ***Possibility of a Continuance Curing the Prejudice***-- To grant a continuance to allow Ganart to properly disclose and comply with its discovery obligations would work further injustice upon TurnKey. The simple fact is that Ganart had more than adequate time to comply with its disclosure and discovery obligations, and simply elected not to do so.

    *4.*  *Explanation for Ganart's Behavior*--There is no reasonable excuse for Ganart's delay in supplementing its interrogatory responses. Ganart's failure to disclose is not "substantially justified" within the meaning of Rule 37(c)(1). Ganart has asserted its trade secret claim since the filing of this litigation, and was the one party in exclusive control of the evidence to show how Ganart's proprietary information qualified as a trade secret.

  Under no circumstances can Ganart show that its failure to timely supplement its discovery responses was substantially justified or harmless. Because Ganart cannot meet its burden, the Court should preclude and strike the third supplemental interrogatory responses of Ganart's appendix and Paragraphs 40 through 42 of Ganart's confidential brief. *See, e.g., Barner v. City of Harvey*, 1998 U.S. Dist. LEXIS 14937 (N.D. Ill. Sept. 16, 1998) (striking statements in summary judgment affidavit because information concerning the "facts and evidence" relating to those statements was not disclosed in response to contention interrogatory); *Morogiannis v. Caesars World, Inc.*, 1995 U.S. Dist. LEXIS 4660 (S.D.N.Y. April 7, 1995) (striking plaintiff's summary judgment affidavits where witnesses were not disclosed until after defendant filed motion for summary judgment).

## III. GANART'S BELATELDY DISCLOSED DAMAGES THEORY SHOULD BE STRICKEN.

  Ganart also failed to timely disclose any evidence of damages in this litigation, and only attempted to do so, after TurnKey moved for summary judgment. The **only** support of any damages for the misappropriation of trade secret claim or breach of contract claim is Ganart's assertion that one of Ganart's customers, PayCenter1, cancelled a contract to purchase licenses for Ganart's Workplace Solution software and process after PayCenter1 allegedly learned of Ganart's association with "bitcoin." These assertions are based upon the factual allegations set forth in Paragraphs 24 to 27 of Ganart's Response Brief, and Paragraphs 21 to 24 of the Affidavit of Wayne McHugh (Appendix 1 of Ganart's Appendix). The information should be stricken

because (1) Ganart failed to timely disclose the damages theory; and (2) the damages theory is based upon inadmissible hearsay.

### A.     The New Damages Theory Should Be Stricken Pursuant to Rule 37(c)(1).

In its initial disclosure, Ganart was required to disclose all of its evidence and factual support of its damages. In its initial disclosure, Ganart says nothing about the loss of PayCenter1 as a customer based upon the alleged actions of TurnKey, and instead only stated the following:

> Damages are still being assessed and because of the nature of TurnKey's actions, are difficult to place a pecuniary value on. Ganart contends, however, that TurnKey's misappropriation has resulted in lost business revenue and opportunities. Additionally, Ganart has incurred attorney's fees to prosecute the claim and to defend itself against TurnKey's legal action in Arizona.

*See* App., p. 2. TurnKey also served interrogatories on Ganart seeking a detailed explanation of all of its damages, and the factual basis for its alleged damages. *See* App., p. 6. In response, Ganart only referenced its initial disclosure. *Id.*. On January 30, 2015, and after TurnKey moved for summary judgment, Ganart finally disclosed the new legal theory related to the loss of PayCenter1 as a customer. *See* App., p. 41.

Ganart was aware of the alleged loss of PayCenter1 as a customer in October 2013 when the RoboCoin kiosk was featured in Wired Magazine. Thus, Ganart clearly knew of its damages theory even before it filed this lawsuit. However, Ganart waited over a year into this litigation before it even attempted to disclose the new damages theory. Such should not be permitted under Rule 37(c)(1), Fed.R.Civ.P. Courts have repeatedly precluded damages theories that were never timely or properly disclosed. *See Am. Realty Trust, Inc. v. Matisse Partners, LLC*, 2002 U.S. Dist. LEXIS 12560 at *17 (N.D. Tex. July 10, 2002) (precluding the plaintiff from asserting an untimely damages theory and stating that "plaintiffs simply delaying answering interrogatories until the brink of trial, when all facts are known and theories finalized, before informing the defendants of a key part of the plaintiffs' theory of the case. The plaintiffs should have disclosed their damage claim based on the information available at the beginning of this

case."); *See also See Fleming v. Verizon N.Y. Inc.*, 2006 U.S. Dist. LEXIS 68632 at *24-26 (S.D.N.Y. Sept. 22, 2006) (declarations of witnesses that were not disclosed in accordance with Fed. R. 26(a) should be stricken to avoid prejudicing defendant who filed summary judgment "based on what it thought to be all of the evidence accumulated in discovery). The factors set forth in the *Sierra Club* opinion warrant striking Ganart's new damages theory.

    1. ***Importance of the Evidence***—Evidence of damages is a prima facie element of Ganart's legal theories. If Ganart has no damages, TurnKey is entitled to summary judgment. The disclosure rules recognize the importance of damages evidence because it is required to be disclosed with the initial disclosure, and TurnKey served an interrogatory requesting the information.

    2. ***The Prejudice to TurnKey***—The prejudice to TurnKey for failure to timely disclose evidence of damages is immense. TurnKey moved for summary judgment, in part, on the assumption that Ganart had no damages because none had been disclosed. Now, Ganart has attempted to side-step its discovery and disclosure obligations by setting out its damages theory after TurnKey has incurred the cost of moving for summary judgment. Further, allowing Ganart to use belatedly disclosed theories that it literally sat on for over a year will only reward Ganart for its violation of the discovery rules.

    3. ***Possibility of a Continuance Curing the Prejudice***—No continuance is warranted because Ganart was aware of the damages theory before this lawsuit was even filed. Ganart was required to disclose the damages theory with its initial disclosure and in response to TurnKey's interrogatories, and decided not to. Ganart has had enough time to comply with its disclosure obligations.

    4. ***Explanation for Ganart's Behavior***—Ganart cannot offer a substantial justification in light of the fact that it should be aware of its disclosure and discovery obligations. Ganart's actions should not be tolerated, and warrants preclusion of the damages theory under Rule 37(c)(1).

### B.  The Damages Theory Is Based Upon Inadmissible Hearsay and Should Be Precluded.

Even if the Court were not to strike the allegations related to the loss of PayCenter1 as a customer based on an untimely disclosure, the damages theory is based upon inadmissible hearsay.  The only factual support for the loss of PayCenter1 as a customer of Ganart is based upon a hearsay statements set forth in Paragraphs 22 to 24 in the Affidavit of Wayne McHugh.  *See* Ganart's Appendix, pp. 4-5, Doc.46.  In his affidavit, Mr. McHugh states that PayCenter1 contacted Ganart and informed Ganart that it would no longer do business with Ganart based upon Ganart's alleged connection with the sale of bitcoins.  This statement is simple, traditional hearsay—an out of court statement by PayCenter1 to prove the truth of the matter assert (i.e. that Ganart lost a customer and sustained damages), and should not be considered by the Court.  *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) ("Neither the district court nor this court may properly consider hearsay evidence in affidavits and depositions."); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.")

### IV.  CONCLUSION

For the reasons set forth above, TurnKey requests that the Court strike and not consider the aforementioned portions of Ganrart's appendix and its confidential brief that rely on those portions of the appendix.

DAVIS MILES MCGUIRE GARDNER, PLLC

By: /s/ David W. Williams
David W. Williams, admitted Pro Hac Vice
Joshua W. Carden
Texas Bar No. 24050379
545 E. John Carpenter Freeway, Suite 300
Irving, Texas 75062
P. 972.674.3885
F. 972.674.2935
jcarden@davismiles.com
Attorney for Defendant, TurnKey Kiosks, LLC

**CERTIFICATE OF CONFERENCE**

I hereby certify that on February 25, 2015, I conferred with Jonathan LaMendola, counsel for Plaintiff, and Plaintiff opposes this motion.

/s/ David W. Williams
David W. Williams

**CERTIFICATE OF SERVICE**

On February 25, 2015, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ David W. Williams
David W. Williams