**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **GANART TECHNOLOGIES, INC.** | § | |
| | § | **CIVIL ACTION NO.** |
| **VS.** | § | **3:14-CV-00616-BF** |
| | § | |
| **TURNKEY KIOSKS, LLC** | § | |

## PLAINTIFF'S INITIAL DISCLOSURES

     **COMES NOW,** Plaintiff, Ganart Technologies, Inc. ("Ganart"), and serve this its Initial

Disclosures pursuant to the FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1):

**Fed. R. Civ. P. 26(a)(1)(A):** the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.

**Response:**

    a.    The following current employees of Ganart may be contacted through the counsel. They have knowledge regarding the NDA, the relationship between Ganart and TurnKey.  Ganart's proprietary software and hardware and processes, Ganart's Workplace Solution, Ganart's Know Your Customer and Anti-Money Laundering Compliant Self-Service Registration at Kiosk System:

        1.    Joel Gomez.

        2.    Robert Hasty.

        3.    Art Holbrook.

        4.    Barrett Jenkins

        5.    Wayne McHugh.

        6.    Safir Salihu.

        7.    Janie White.

    b.    The following employees and agents of TurnKey Kiosks, LLC ("TurnKey") may be contacted through TurnKey's counsel:

        1.    Gary Strachan.

        2.    Kelly Strachan;

      3.      Margaret Strachan.

      4.      Casey Strachan.

c.      Unknown individuals from Robocoin Technologies, including but not limited to CEO Jordan Kelley, John Russell, Mark Russell and Mitchell Demeter.

d.      Employees of Humanetics:  Manufacturer of Ganart hardware.

e.      Jonathan LaMendola:  Attorney's fees.

f.      Maria Speth:  Attorney's fees.

**Fed. R. Civ. P. 26(a)(1)(B):** a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely used for impeachment.

**Response:**

      1.      Non-Disclosure Agreement.

      2.      Correspondence between Ganart and TurnKey.

      3.      Patent Application.

      4.      Technical Drawings.

      5.      The Assembly.

      6.      Material from the internet regarding Ganart.

      7.      Material from the internet regarding Robocoin.

**Fed. R. Civ. P. 26(a)(1)(C):** a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of the injuries suffered.

**Response:**      Damages are still being assessed and because of the nature of TurnKey's actions, are difficult to place a pecuniary value on.  Ganart contends, however, that TurnKey's misappropriation has resulted in lost business revenue and opportunities.  Additionally, Ganart has incurred attorney's fees to prosecute the claim and to defend itself against TurnKey's legal action in Arizona.

**Fed. R. Civ. P. 26(a)(1)(D):** for inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy

part or all of a judgment which may be entered in the action or to indemnity or reimburse for payments made to satisfy the judgment.

**Response:**    Not applicable.

Signed this 6th day of June, 2014.

Respectfully submitted,

**COBB MARTINEZ WOODWARD PLLC**
1700 Pacific Avenue, Suite 3100
Dallas, Texas  75201
(214) 220-5204
(214) 220-5254 (Fax)

By: */s/ Jonathan C. LaMendola*
    **JONATHAN C. LaMENDOLA**
    Texas Bar No. 00792637
    email: jlamendola@cobbmartinez.com
    **DAVID R. WOODWARD**
    Texas Bar No. 21975650
    email: dwoodward@cobbmartinez.com

**ATTORNEYS FOR PLAINTIFF GANART TECHNOLOGIES, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to the following counsel of record either by hand-delivery, telefax, certified mail, return receipt requested, e-mail and/or regular U.S. mail on this 6th day of June, 2014.

David W. Williams
Joshua W. Carden
Davis Miles McGuire Gardner
The Summit at law Colinas
545 E. John Carpenter Freeway, Suite 300
Irving, TX 75062

*/s/ Jonathan C. LaMendola*
**JONATHAN C. LaMENDOLA**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **GANART TECHNOLOGIES, INC.** | § | |
| | § | **CIVIL ACTION NO.** |
| **VS.** | § | **3:14-CV-00616-BF** |
| | § | |
| **TURNKEY KIOSKS, LLC** | § | |

## PLAINTIFF'S OBJECTIONS AND ANSWERS TO DEFENDANT'S
## FIRST SET OF INTERROGATORIES

**TO:**   **Defendant, TurnKey Kiosks, LLC, by and through its attorney of record, David W. Williams and Joshua W. Carden, Davis Miles McGuire Gardner, The Summit at law Colinas, 545 E. John Carpenter Freeway, Suite 300, Irving, Texas 75062**

    **COMES NOW,** Ganart Technologies, Inc., Plaintiff in the above-entitled and numbered cause and pursuant to the Texas Rules of Civil Procedure, files this its Objections and Answers to Defendant's First Set of Interrogatories.

                  **Respectfully submitted,**

                  **COBB MARTINEZ WOODWARD PLLC**
                  1700 Pacific Avenue, Suite 3100
                  Dallas, Texas  75201
                  (214) 220-5204
                  (214) 220-5254 (Fax)

        By: */s/ Jonathan C. LaMendola*
                  **JONATHAN C. LaMENDOLA**
                  Texas Bar No. 00792637
                  email: jlamendola@cobbmartinez.com
                  **DAVID R. WOODWARD**
                  Texas Bar No. 21975650
                  email: dwoodward@cobbmartinez.com

                  **ATTORNEYS FOR PLAINTIFF GANART TECHNOLOGIES, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to the following counsel of record either by hand-delivery, telefax, certified mail, return receipt requested, e-mail and/or regular U.S. mail on this 6th day of June, 2014.

David W. Williams
Joshua W. Carden
Davis Miles McGuire Gardner
The Summit at law Colinas
545 E. John Carpenter Freeway, Suite 300
Irving, TX 75062

*/s/ Jonathan C. LaMendola*
**JONATHAN C. LaMENDOLA**

## **INTERROGATORIES**

<u>INTERROGATORY NO. 1:</u>          State the names, current addresses, and telephone numbers of each and every individual who you believe has knowledge of facts concerning this matter, including but not limited to any persons whom you have obtained written or recorded statements pertaining to this case from, and provide the substance of each individual's knowledge and give the date of any statements obtained, if applicable.

      **<u>ANSWER:</u>** *See* Plaintiff's Initial Disclosures.


<u>INTERROGATORY NO. 2:</u>          Please separately state the amounts you are claiming for economic damages, non-economic damages, special damages, and explain how you arrived at those amounts.

      **<u>ANSWER:</u>** *See* Plaintiff's Initial Disclosures.


<u>INTERROGATORY NO. 3:</u>          Please identify each and every exhibit you propose to use at the trial or any hearing of this case, including the title of each exhibit, a description of the contents of each exhibit, identify any limited purpose for which the exhibit will be offered, the names, addresses of and job titles of authenticating witnesses and current custodians. This interrogatory is directed both to exhibits you intend to use upon the trial and exhibits you may use.

      **<u>ANSWER:</u>** Plaintiff objects to this Interrogatory as premature, but will supplement its response.  Plaintiff, however, may use any document or items produced in this case.


<u>INTERROGATORY NO. 4:</u>          Please identify every witness, including expert witnesses,

who may testify at the trial of this matter including their names, addresses, job titles, relationship to any party, the subject matter and summary of the anticipated testimony.

**ANSWER:** *See* Plaintiff's Initial Disclosures.

INTERROGATORY NO. 5:        Regarding each trade secret which you contend was misappropriated by Defendant, please describe with particularity how Defendant allegedly misappropriated the trade secret, each person with knowledge of any such misappropriation, and when you contend the each such trade secret was misappropriate.

**ANSWER:** *See* Plaintiff's live pleadings and briefing in support of its Application for a Temporary Injunction.

INTERROGATORY NO. 6:        Regarding each trade secret you contend was utilized by Defendant, identify with particularity the following:

(a)     The complete, precise trade secret you contend was utilized;

(b)     The Bates numbers of (or description enabling Defendant to identify) the documents produced by you which show or describe each trade secret or its utilization by Defendant;

(c)     Each person with knowledge of any such utilization; and

(d)     When the trade secret was allegedly utilized by Defendant.

**ANSWER:** (a) *See* Plaintiff's live pleadings and briefing in support of its Application for a Temporary Injunction; (b) Plaintiff will supplement this response; (c) *See* Plaintiff's Initial Disclosures; (d) *See* Plaintiff's live pleadings and briefing in support of its Application for a Temporary Injunction.

INTERROGATORY NO. 7:        Please state the complete factual basis for any allegation

that Defendant allegedly shared any trade secret or proprietary information with any third-party, including all documents that support the allegation and any person with knowledge of such allegations.

  **ANSWER:** *See* Plaintiff's live pleadings and Initial Disclosures.

<u>INTERROGATORY NO. 8:</u>  Please identify in detail any confidential or proprietary information belonging to Plaintiff that is not a trade secret and that you contend Defendant wrongfully utilized or misappropriated, each document pertaining or related to such utilization or misappropriation, and each person who has knowledge of such misappropriation or utilization.

  **ANSWER:** *See* Plaintiff's live pleadings.

<u>INTERROGATORY NO. 9:</u>  Please state the complete factual basis for any allegation that supports your claim that Defendant breached the non-disclosure agreement, including all documents that support the allegation and any person with knowledge of such allegations.

  **ANSWER:** *See* Plaintiff's live pleading and Defendant's Answer.

<u>INTERROGATORY NO. 10:</u>  Please state the complete factual basis for any allegation that supports your claim that Defendant breached the non-disclosure agreement, including all documents that support the allegation and any person with knowledge of such allegations.

  **ANSWER:** *See* Plaintiff's live pleading and Defendant's Answer.

<u>INTERROGATORY NO. 11:</u>  Please describe with particularity Plaintiff's "Self-Service Registration at Kiosk, including how the "Self-Service Registration at Kiosk" constitutes a "trade secret."

**ANSWER:** *See* Plaintiff's live pleading and briefing in support of its Application for a Temporary Injunction.

LAW OFFICES OF

# DAVIS MILES McGUIRE GARDNER, PLLC

80 E. Rio Salado Pkwy., Ste. 401
Tempe, AZ 85281
Telephone: (480) 733-6800
Fax No. (480) 733-3748

# FAX

TO:            Jonathan LaMendola, Esq.

FAX NO.:       214-220-5254

FROM:          Kelly L. Labadie, Legal Assistant

DATE:          June 9, 2014

DESCRIPTION:   TurnKey Kiosks, LLC adv. Ganart-Northern District of Texas Court;
               3:14-cv-00616

CLIENT:        TurnKey Kiosks, LLC

MATTER:        63244-003

NUMBER OF PAGES:   3, including this cover.

---

**COMMENTS:**

---

## IF YOU DO NOT RECEIVE ALL PAGES,
## PLEASE CALL BACK AS SOON AS POSSIBLE.

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

\\ProLaw2\Documents\63244\63244-003\2258458.doc

# ⊡⊡ Davis Miles
## McGuire Gardner

**Davis Miles McGuire Gardner, PLLC**
Attorneys at Law
80 E. Rio Salado Parkway, Suite 401
Tempe, AZ 85281
Telephone: 480-733-6800
Facsimile: 480-733-3748
www.davismiles.com
www.mcguiregardner.com

**David W. Williams, Esq.**
Direct Dial:  480-344-4047
dwilliams@davismiles.com

June 9, 2014

<u>**Via E-Mail and Facsimile:**</u>

Jonathan C. LaMendola, Esq.
Cobb Martinez Woodward
1700 Pacific Avenue, Suite 3100
Dallas, TX 75201
Email: Jlamendola@cobbmartinez.com
Facsimile: (214) 220-5254

> **Re:  TurnKey Kiosks, LLC / Ganart**
> **Request to Supplement Discovery Responses Pursuant to Rule 37, Fed. R. Civ. P.**

Dear Jonathan:

I have had an opportunity to review Ganart's responses to TurnKey's interrogatories. Frankly, many of the discovery responses are deficient and are non-responsive. Please allow this to serve as my good faith attempt to resolve this issue without the need to file a motion to compel. This also follows the voicemail I left for you a short time ago.

Interrogatories 5, 6, 7, 8, 9, 10, and 11 requested specific information about Ganart's trade secret misappropriation claim including the following:

1. The specific identification of any and all trade secrets (*See* Interrogatories 6 and 11);, ;

2. How TurnKey alleged misappropriated each alleged trade secret (*See* Interrogatories 5, 7, 8, 9, and 10); and

3. How TurnKey allegedly violated the non-disclosure agreement (*See* Interrogatories 5, 7, 8, 9, and 10).

In each of its responses to the interrogatories, Ganart referred to its "live pleadings," TurnKey's answer, Ganart's initial disclosure, or Ganart's application for injunction. Reference to these materials is completely non-responsive to the answers to the interrogatories. Further, none of the interrogatory response are verified.

TurnKey specifically served these interrogatories to gather the factual basis of Ganart's claims. Prior to the initiation of this litigation, I corresponded with Ganart's IP attorneys, and asked them repeatedly to identify the specific trade secrets and how TurnKey allegedly shared any of Ganart's information with RoboCoin Technologies. Despite those requests, no information has ever been provided by Ganart.

---

Jonathan C. LaMendola, Esq.
Cobb Martinez Woodward
June 9, 2014
Page 2 of 2

Now, Ganart has filed its application for a preliminary injunction, and TurnKey was expecting detailed interrogatory responses before its response to the application for preliminary injunction was due. Obviously, Ganart's failure to answer rather straight forward interrogatories is concerning.

Further, Ganart has now served detailed interrogatories and requests for production on TurnKey to disclose highly sensitive information about TurnKey's business relationship with RoboCoin. Numerous courts have prohibited discovery from a party bringing a trade secret claim directed at the opposing party when the plaintiff has failed to describe with particularity the basis of its trade secret claims. *Engelhard Corp. v. Savin Corp.*, 505 A.2d 30, 33 (Del. Ch. 1986) (A "plaintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets."); *AutoMed Techs., Inc. v. Eller*, 160 F. Supp.2d 915, 926 (N.D. Ill. 2001); *Dura Global Techs., Inc. v. Magna Donnelly Corp.*, No. 07-cv-10945, 2007 U.S. Dist. LEXIS 89650, at *15-16 (E.D. Mich. Dec. 6, 2007) ("The Court will stay the discovery of Defendant's trade secret information sought by Plaintiffs' Interrogatories in accordance with the analysis above until Plaintiffs identify the alleged misappropriated trade secrets with reasonable particularity."); *Leucadia, Inc. v. Applied Extrusion Techs.*, Inc., 755 F. Supp. 635, 636 (D. Del. 1991) ("As both this Court and the Delaware Court of Chancery have recognized, disclosure of plaintiff's trade secrets prior to discovery of defendant may be necessary to enable the defendant and ultimately the Court to ascertain the relevance of plaintiff's discovery.") *StorageCraft Tech. Corp. v. Symantec*, No. 2:07-CV-856 CW, 2009 WL 112434, at *2 (D. Utah Jan. 16, 2009) ("There is no question that the magistrate's July 23 order correctly stated the correct legal standard. That is, Symantec is required to identify its claimed trade secret with reasonable particularity before being allowed discovery on that claim."); *Xerox Corp. v. International Business Machines Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974) ("At the very least, a defendant is entitled to know the bases for plaintiff's charges against it. The burden is upon the plaintiff to specify those charges, not upon the defendant to guess at what they are.").

Please provide supplemental discovery responses to the interrogatories identified above by no later than Wednesday, June 11, 2014. Otherwise, TurnKey will be filing a motion to compel, and seek a protective order prohibiting any discovery from TurnKey until Ganart has fully responded to TurnKey's interrogatories.

I understand under the local rules that we have to have a conference to discuss these issues. I am available anytime on June 10 to discuss these issues. Please give me a call as soon as possible at 480-344-4047.

Very truly yours,

DAVIS MILES McGUIRE GARDNER, PLLC

David W. Williams

**DavisMiles, PLLC**, 80 East Rio Salado Parkway, Suite 401, Tempe, Arizona 85281
PHONE 480.733.6800  FAX 480.733.3748  **www.mcguiregardner.com   www.davismiles.com**

0000012

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **GANART TECHNOLOGIES, INC.** | § | |
| | § | **CIVIL ACTION NO.** |
| **VS.** | § | **3:14-CV-00616-BF** |
| | § | |
| | § | |
| **TURNKEY KIOSKS, LLC** | § | |

### PLAINTIFF'S FIRST SUPPLEMENTAL OBJECTIONS AND ANSWERS TO
### DEFENDANT'S FIRST SET OF INTERROGATORIES

**TO:**   **Defendant, TurnKey Kiosks, LLC, by and through its attorney of record, David W. Williams and Joshua W. Carden, Davis Miles McGuire Gardner, The Summit at law Colinas, 545 E. John Carpenter Freeway, Suite 300, Irving, Texas 75062**

**COMES NOW,** Ganart Technologies, Inc., Plaintiff in the above-entitled and numbered cause and pursuant to the Federal Rules of Civil Procedure, files this its First Supplemental Objections and Answers to Defendant's First Set of Interrogatories.

Respectfully submitted,

**COBB MARTINEZ WOODWARD PLLC**
1700 Pacific Avenue, Suite 3100
Dallas, Texas 75201
(214) 220-5204
(214) 220-5254 (Fax)

By: /s/ Jonathan C. LaMendola
   **JONATHAN C. LaMENDOLA**
   Texas Bar No. 00792637
   email: jlamendola@cobbmartinez.com
   **DAVID R. WOODWARD**
   Texas Bar No. 21975650
   email: dwoodward@cobbmartinez.com

**ATTORNEYS FOR PLAINTIFF GANART TECHNOLOGIES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to the following counsel of record either by hand-delivery, telefax, certified mail, return receipt requested, e-mail and/or regular U.S. mail on this 11th day of June, 2014.

David W. Williams
Joshua W. Carden
Davis Miles McGuire Gardner
The Summit at law Colinas
545 E. John Carpenter Freeway, Suite 300
Irving, TX 75062

/s/ Jonathan C. LaMendola
**JONATHAN C. LaMENDOLA**

PLAINTIFF'S FIRST SUPPLEMENTAL OBJECTIONS AND ANSWERS TO DEFENDANT'S
FIRST SET OF INTERROGATORIES/Page 2
Doc. #121025

0000014

## INTERROGATORIES

<u>INTERROGATORY NO. 1:</u>        State the names, current addresses, and telephone numbers of each and every individual who you believe has knowledge of facts concerning this matter, including but not limited to any persons whom you have obtained written or recorded statements pertaining to this case from, and provide the substance of each individual's knowledge and give the date of any statements obtained, if applicable.

**ANSWER:** *See* Plaintiff's Initial Disclosures.

<u>INTERROGATORY NO. 2:</u>        Please separately state the amounts you are claiming for economic damages, non-economic damages, special damages, and explain how you arrived at those amounts.

**ANSWER:** *See* Plaintiff's Initial Disclosures.

<u>INTERROGATORY NO. 3:</u>        Please identify each and every exhibit you propose to use at the trial or any hearing of this case, including the title of each exhibit, a description of the contents of each exhibit, identify any limited purpose for which the exhibit will be offered, the names, addresses of and job titles of authenticating witnesses and current custodians. This interrogatory is directed both to exhibits you intend to use upon the trial and exhibits you may use.

**ANSWER:** Plaintiff objects to this Interrogatory as premature, but will supplement its response. Plaintiff, however, may use any document or items produced in this case.

<u>INTERROGATORY NO. 4:</u>  Please identify every witness, including expert witnesses, who may testify at the trial of this matter including their names, addresses, job titles, relationship to any party, the subject matter and summary of the anticipated testimony.

    **ANSWER:** *See* Plaintiff's Initial Disclosures.


<u>INTERROGATORY NO. 5:</u>        Regarding each trade secret which you contend was misappropriated by Defendant, please describe with particularity how Defendant allegedly misappropriated the trade secret, each person with knowledge of any such misappropriation, and when you contend the each such trade secret was misappropriate.

    **ANSWER:** Ganart directs Defendant to Plaintiff's Amended Disclosures and its live pleading. Ganart currently contends TurnKey misappropriated its trade secrets by:

    a) disassembling, reverse engineering, redesigning and/or duplicating Ganart's proprietary palm vein scanner assembly (The Assembly);

    b) copying, decoding and/or reproducing Ganart's proprietary software based customer registration and authentication process;

    c) copying, redesigning and/or reproducing Ganart's patent pending, anti-money laundering compliant self-service registration at kiosk; and

    d) disclosing, demonstrating, and/or providing Ganart's system and method for formless self-service registration for access to financial services to Third-Parties without Ganart's specific written permission.

The identity of specific individuals with knowledge of such wrongful conduct would be within the sole possession of TurnKey employees, representatives, and agents who engaged in such wrongful activity as well as those individuals to whom Ganart's trade secrets were provided.

Ganart contends that at a minimum, Casey Strachan, Kelly Strachan, and Gary Strachan engaged in the misappropriation as well as currently unknown representatives of Robocoin Technologies, Inc.

Both TurnKey and Robocoin have admitted that TurnKey demonstrated Ganart's proprietary system and method for formless self-service registration for access to financial services to Robocoin. This was done in violation of the NDA between Ganart and TurnKey.

TurnKey has likewise admitted that it misappropriated Ganart's assembly and installed it in a kiosk that was provided to Robocoin and deployed in Vancouver, Canada. Furthermore, the software-based customer registration process used by Robocoin in the kiosk deployed in Vancouver, Canada is a replica of Ganart's patent-pending system and method for formless self-service registration for access to financial services.

Since discovery has only just begun, Ganart contends there may be other instances of misappropriation and wrongful conduct by TurnKey which Ganart has not yet learned of.

INTERROGATORY NO. 6:        Regarding each trade secret you contend was utilized by Defendant, identify with particularity the following:

    (a)    The complete, precise trade secret you contend was utilized;

    (b)    The Bates numbers of (or description enabling Defendant to identify) the documents produced by you which show or describe each trade secret or its utilization by Defendant;

    (c)    Each person with knowledge of any such utilization; and

    (d)    When the trade secret was allegedly utilized by Defendant.

**ANSWER:**  Ganart refers Defendant to Ganart's live pleadings and initial disclosures.

Additionally:

a) (1)   Ganart's palm vein scanner assembly (The Assembly);

(2)   Ganart's software based customer registration and authentication process;

(3)   Ganart's patent pending anti-money laundering compliant self-service registration and kiosk; and

(4)   Ganart's system and method for formless self-service registration for access to financial services.

b) TurnKey has been provided a proposed stipulated confidentiality order which, once agreed upon, will facilitate production of responsive documents.

c) The specific identity of the individuals who utilized Ganart's trade secrets is within the sole possession of TurnKey employees, representatives, and agents as well as anyone to whom TurnKey wrongfully disclosed or provided Ganart's trade secrets. Ganart contends that at a minimum, Gary Strachan, Kelly Strachan, and Casey Strachan have such knowledge.

d) The exact timing of when TurnKey engaged in the wrongful conduct is within the sole possession of TurnKey's employees, representatives, and agents. Ganart, however, contends that TurnKey's misappropriation occurred sometime between March 8, 2013 and October 28, 2013.

Since discovery has only just begun, Ganart contends there may be other instances of misappropriation and wrongful conduct by TurnKey which Ganart has not yet learned of.

INTERROGATORY NO. 7:          Please state the complete factual basis for any allegation that Defendant allegedly shared any trade secret or proprietary information with any third-party, including all documents that support the allegation and any person with knowledge of such allegations.

**ANSWER:** On or about August 20, 2013 Ganart received alerts from TurnKey's demo kiosk. Ganart was informed by TurnKey that TurnKey had disconnected and/or removed several devices from the demo kiosk.

On or about September 5, 6 and 20, 2013 TurnKey requested Ganart enable the self-service registration at kiosk service on the demo kiosk in TurnKey's offices so that it could provide a demonstration to a prospective customer.

On or about October 23, 2013 TurnKey emailed Ganart that the ID scanner was not working. This indicates TurnKey disconnected and/or removed the ID scanner.

On or about October 28, 2013 Ganart learned from news report that Robocoin had deployed a TurnKey kiosk in Vancouver, Canada. The kiosk contained Ganart's proprietary palm vein scanner assembly. The software based customer registration process used by Robocoin is a replica of Ganart's patent-pending self-service Registration at kiosk.

When confronted over the phone later that day with this information by Art Holbrook, Gary Strachan admitted that TurnKey had used Ganart's design and installed The Assembly in the kiosk deployed in Vancouver, Canada.

Ganart refers TurnKey to Ganart's Amended Disclosures and its response to Interrogatory No. 6 for additional responsive information.

Since discovery has only just begun, Ganart contends there may be other instances of misappropriation and wrongful conduct by TurnKey which Ganart has not yet learned of.

INTERROGATORY NO. 8:        Please identify in detail any confidential or proprietary information belonging to Plaintiff that is not a trade secret and that you contend Defendant wrongfully utilized or misappropriated, each document pertaining or related to such utilization or misappropriation, and each person who has knowledge of such misappropriation or utilization.

**ANSWER:** Ganart contends that all confidential and proprietary information TurnKey wrongfully utilized or misappropriated was a trade secret. To the extent it was not, see Ganart's response to Interrogatory No. 6, above.

Since discovery has only just begun, Ganart contends there may be other instances of misappropriation and wrongful conduct by TurnKey which Ganart has not yet learned of.

INTERROGATORY NO. 9:    Please state the complete factual basis for any allegation that supports your claim that Defendant breached the non-disclosure agreement, including all documents that support the allegation and any person with knowledge of such allegations.

**ANSWER:** On or about August 20, 2013 Ganart received alerts from TurnKey's demo kiosk. Ganart was informed by TurnKey that TurnKey had disconnected and/or removed several devices from the demo kiosk.

On or about September 5, 6, and 20, 2013 TurnKey requested Ganart enable the self-service registration at kiosk service on the demo kiosk in TurnKey's offices so that it could provide a demonstration to a prospective customer.

On or about October 23, 2013 TurnKey emailed Ganart that the ID scanner was not working. This indicates TurnKey disconnected and/or removed the ID scanner.

On or about October 28, 2013 Ganart learned from news report that Robocoin had deployed a TurnKey kiosk in Vancouver, Canada. The kiosk contained Ganart's proprietary palm vein scanner assembly. The software based customer registration process used by Robocoin is a replica of Ganart's patent-pending self-service Registration at kiosk.

When confronted over the phone later that day with this information by Art Holbrook, Gary Strachan admitted that TurnKey had used Ganart's design and installed The Assembly in the kiosk deployed in Vancouver, Canada.

Ganart refers TurnKey to Ganart's Amended Disclosures and its response to Interrogatory No. 6 for additional responsive information.

Since discovery has only just begun, Ganart contends there may be other instances of misappropriation and wrongful conduct by TurnKey which Ganart has not yet learned of.

INTERROGATORY NO. 10:        Please state the complete factual basis for any allegation that supports your claim that Defendant breached the non-disclosure agreement, including all documents that support the allegation and any person with knowledge of such allegations.

**ANSWER:** This Interrogatory is identical to Interrogatory No. 9, above. Please see Plaintiff's response to Interrogatory No. 9.

INTERROGATORY NO. 11:        Please describe with particularity Plaintiff's "Self-Service Registration at Kiosk, including how the "Self-Service Registration at Kiosk" constitutes a "trade secret."

**ANSWER:** Self-service Registration at Kiosk is a service that allows fully compliant (Anti-money Laundering Act) registration of an individual at a self-service device, such as a kiosk, without teller assistance, for access to variety of services, such as regulated financial transactions like money transfer. This service allows a complete Anti Money Laundering Act (AML) compliant identification and registration of an individual at a self-service kiosk using Ganart's proprietary technology and processes. It includes biometric signature (including palm vein), capture and validation of a government issued identification card, and digital photographs of the registrant.

Ganart's Self-Service Registration at kiosk is the result of over two years of research and development by Ganart and the expenditure of approximately one million

dollars. Ganart licenses this process to third parties for a fee. This process derives independent economic value because it is not generally known to, and not readily ascertainable by proper means, by other persons who could obtain economic value from its disclosure or use.

This software-based process is kept confidential by Ganart and is not shared with third parties absent a Non-Disclosure Agreement. As part of the NDA, Ganart requires any subsequent disclosure by the party receiving such confidential information to obtain Ganart's specific written permission before doing so.

## VERIFICATION

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF DALLAS** | § |

**BEFORE ME,** the undersigned Notary Public, on this day personally appeared WAYNE McHUGH, who, being by me duly sworn on his oath, deposed and said that he is duly qualified and authorized in all respects to make this affidavit; that he is a duly authorized representative of Defendant Ganart Technologies, Inc.; and he has read the above and foregoing Objections and Answers to Plaintiff's Interrogatories, and that on behalf of Ganart Technologies, Inc., attests that based on the information known or reasonably available to Ganart Technologies, Inc., the factual statements contained herein are true and correct.

WAYNE McHUGH, Authorized Representative
of Ganart Technologies, Inc.

**SUBSCRIBED AND SWORN TO BEFORE ME** on this `11` day of `June`, 2014, which witness my hand and official seal.

JANIE WHITE
Notary Public, State of Texas
My Commission Expires
March 13, 2017

Notary Public, State of Texas

Printed Name: Janie White

My Commission Expires: March 13, 2017

PLAINTIFF'S FIRST SUPPLEMENTAL OBJECTIONS AND ANSWERS TO DEFENDANT'S
FIRST SET OF INTERROGATORIES/Page 11
Doc. #121025

# Davis Miles
# McGuire Gardner

**Davis Miles McGuire Gardner, PLLC**
Attorneys at Law
80 E. Rio Salado Parkway, Suite 401
Tempe, AZ 85281
Telephone: 480-733-6800
Facsimile: 480-733-3748
www.davismiles.com
www.mcguiregardner.com

**David W. Williams, Esq.**
Direct Dial: 480-344-4047
dwilliams@davismiles.com

October 13, 2014

<u>VIA E-MAIL, FACSIMILE AND U.S. MAIL:</u>

Jonathan C. LaMendola, Esq.
Cobb Martinez Woodward
1700 Pacific Avenue, Suite 3100
Dallas, TX 75201
Email: Jlamendola@cobbmartinez.com
Facsimile: 214-220-5254

  Re:  TurnKey Kiosks, LLC / Ganart

Dear Jonathan:

  Please allow this to follow-up on our discussion on Thursday, October 9, 2014 related to your request to depose Gary Strachan and Casey Strachan.

  As we discussed on Thursday, Ganart has still failed to identify its trade secrets with particularity, and has still given evasive answers in response to TurnKey's written discovery.  Until Ganart complies with its discovery obligations to identify its trade secrets with particularity, Ganart is not entitled to obtain discovery from TurnKey, including depositions of TurnKey's employees.  This point is very well established in federal law. *See Engelhard Corp. v. Savin Corp.*, 505 A.2d 30, 33 (Del. Ch. 1986) (A "plaintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets."); *StorageCraft Tech. Corp. v. Symantec*, No. 2:07-CV-856 CW, 2009 WL 112434, at *2 (D. Utah Jan. 16, 2009) ("There is no question that the magistrate's July 23 order correctly stated the correct legal standard. That is, Symantec is required to identify its claimed trade secret with reasonable particularity before being allowed discovery on that claim."); *Xerox Corp. v. International Business Machines Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974) ("At the very least, a defendant is entitled to know the bases for plaintiff's charges against it. The burden is upon the plaintiff to specify those charges, not upon the defendant to guess at what they are.")

  The primary point of concern is that Ganart has failed to adequately describe what its "Self-Service Registration at Kiosk" actually is.  While I appreciate that Ganart has attempted to provide information about its trade secrets, it is not TurnKey's job to try and interpret Ganart's responses that include "buzz words," and do not actually describe what exactly the "Self Service Registration at Kiosk" even is.

  For instance, in TurnKey's first set of interrogatories, Interrogatory No. 6 specifically asked to "identify with particularity. . . the complete, precise trade secret you contend was utilized."  In its supplemental response to Interrogatory No. 6, Ganart simply used buzz words and short phrases to identify its trade secrets, including the following:

0000024

Jonathan C. LaMendola, Esq.
Cobb Martinez Woodward
October 13, 2014
Page 2 of 3

- "Ganart's palm vein scanner assembly;
- Ganart's software based customer registration and authentication process;
- Ganart's patent pending anti-money laundering compliant self-service registration at kiosk; and
- Ganart's system and method for formless self-service registration for access to financial services."

Clearly, the description given in the supplemental discovery response is not described with particularity such to allow TurnKey to understand exactly what Ganart claims has allegedly misappropriated.

Similarly, Interrogatory No. 11 of the first set of interrogatories specifically asked Ganart to "describe with particularity" how the Self-Service Registration at Kiosk constitutes a trade secret. In its supplemental interrogatory response, Ganart stated in part:

Self-service Registration at Kiosk is a service that allows fully compliant (Anti-money Laundering Act) registration of an individual at a self-service device, such as a kiosk, without teller assistance, for access to variety of services, such as regulated financial transactions like money transfer. This service allows a complete Anti Money Laundering Act (AML) compliant identification and registration of an individual at a self-service kiosk using Ganart's proprietary technology and processes. It includes biometric signature (including palm vein), capture and validation of a government issued identification card and digital photographs of the registrant.

In its second set of interrogatories, Interrogatory No. 12 specifically asked Ganart to "state with particularity the complete factual basis for your contention that the 'Self-Service Registration' constitutes a 'trade secret' as defined by Tex. Civ. Prac. & Rem. Code § 134A.002(6)." Ganart's response to Interrogatory No. 12 was simply a cut and paste response from the earlier interrogatory response described above.

This description of the Self-Service Registration at Kiosk set forth in the interrogatory responses quoted above are equally vague because the responses fail to identify the actual process that is unique and novel to Ganart's Self-Service process. There are numerous self-service registration processes, and Ganart fails to provide a sufficient description of its registration process and software to allow TurnKey to understand what differentiates Ganart's alleged trade secret from every other self-service transaction in the marketplace. For instance, the response fails to identify what "proprietary technology" and "processes" are that are used in the "Self-Service Registration at Kiosk" process. At first, TurnKey believed that Ganart was referring to its actual software that was used on the demonstration kiosks, but it appears that Ganart's description is much more general and broader.

The purpose of for requiring Ganart to identify the trade secret in specific and particular terms is necessary allow TurnKey to defend itself in this litigation. *Big Vision Private, Ltd. v. E.I. Dupont De Nemours & Co.*, 2014 Dist. LEXIS 26991 at *88 (S.D.N.Y. Feb. 10, 2014) ("The requirement of particularity exists for the simple reason that the defendant must know what constitutes a plaintiff's trade secret, so that it does not infringe upon that trade secret and so that the defendant can defend itself at any trial."); *See also sit-up Ltd. v. IAC/Interactive Corp.*, 2008 U.S. Dist. LEXIS 12017 at *34 ("[S]pecificity is required before the court so that the defendant can defend himself adequately against claims of trade secret misappropriation, and can divine the line between secret and non-secret

**DavisMiles, PLLC**, 80 East Rio Salado Parkway, Suite 401, Tempe, Arizona 85281
PHONE 480.733.6800   FAX 480.733.3748   **www.mcguiregardner.com   www.davismiles.com**

0000025

Jonathan C. LaMendola, Esq.
Cobb Martinez Woodward
October 13, 2014
Page 3 of 3

information, and so that a jury can render a verdict based on a discriminating analysis of the evidence of disclosure and misappropriation."); *See BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 710 (7th Cir. 2006) ("One expects a trade secret to be rich in detail, because a process described in general terms [...] will usually be widely known and thus not worth incurring costs to try to conceal and so not a trade secret." (internal citations omitted)).

After I pointed out these issues during our conversation, you directed me to Ganart's document production for an explanation of how the Self-Service Registration at Kiosk constitutes a trade secret. However, TurnKey should not be required to review hundreds of pages of document production to attempt to decipher how the Self-Service Registration at Kiosk constitutes a trade secret. *Big Vision Private, Ltd. v. E.I. Dupont De Nemours & Co.*, 2014 Dist. LEXIS 26991 at *108 (S.D.N.Y. Feb. 10, 2014) ("Numerous district courts facing this situation, i.e., a plaintiff unwilling or unable to winnow its trade secret from dozens of pages of materials, have required the plaintiff to define its trade secret without referring to those materials.").

Thus, I request that Ganart simply comply with its obligations and provide a complete and detailed description of its Self-Service Registration at Kiosk process and how it constitutes a trade secret.

Even once that occurs, we still need to come to agreement about how to complete the depositions that Ganart is seeking.  Gary and Casey Strachan are not parties to these proceedings, and cannot be forced to appear for a deposition without a subpoena, and certainly cannot be forced to appear for deposition in Dallas, Texas.  Notwithstanding that issue, I suggest that you issue a Rule 30(b)(6) deposition notice, and TurnKey will produce a qualified witness in Phoenix, Arizona.  When I am ready to take a deposition of someone at Ganart, I will also follow the same process and travel to Dallas for the deposition of the Ganart's company representative.

I am willing to cooperate with Ganart to complete the discovery that it is seeking; however, a detailed description of how the Self-Service Registration at Kiosk works and how it is a trade secret should be provided before we begin taking depositions.

I will be out of the office from October 13 to October 16, but will be available to speak with you about this when I am back in the office on October 17.

Very truly yours,

DAVIS MILES MCGUIRE GARDNER, PLLC

David W. Williams

**DavisMiles, PLLC**, 80 East Rio Salado Parkway, Suite 401, Tempe, Arizona 85281
PHONE 480.733.6800  FAX 480.733.3748  **www.mcguiregardner.com   www.davismiles.com**

0000026

**David W. Williams**

| | |
|---|---|
| **From:** | David W. Williams |
| **Sent:** | Thursday, January 08, 2015 10:41 PM |
| **To:** | 'Jonathan LaMendola' |
| **Cc:** | efile dockets; Stephanie DeBuhr |
| **Subject:** | RE: Ganart v. TurnKey, et al. |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Jonathan:

I missed your call today.  I will have to call you on Monday.  Tomorrow, I will be tied up in meetings most of the day.  Before we start scheduling depositions, I thought you were going to send me the supplemental discovery responses that I previously requested.  Please let me know when I can expect to receive those.

Thanks,

David Williams
480-344-4047

# David W. Williams

Partner
dwilliams@davismiles.com

**Davis Miles**
**McGuire Gardner**
SOLUTIONS RELATIONSHIPS

80 E. Rio Salado Parkway,
Suite 401
Tempe, AZ 85281
Tel: (480)733-6800
Fax: (480)733-3748

This e-mail message (including attachments) is privileged and confidential, and is only for the use of the individual or entity named therein.  If you are not the intended recipient, any use, distribution or copying of this communication or attachments is prohibited.  If you are not the intended recipient, please forward this communication to us info@davismiles.com and delete it from your system.

**From:** Jonathan LaMendola [mailto:JLamendola@cobbmartinez.com]
**Sent:** Monday, December 01, 2014 11:55 AM
**To:** 'khine@perkinscoie.com'
**Cc:** David W. Williams
**Subject:** RE: Ganart v. TurnKey, et al.

Kelly:

Please confirm were still on for the depo on Friday.   Turnkey's counsel wants to know. Thanks.

**Jonathan LaMendola**

1

0000027

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **GANART TECHNOLOGIES, INC.** | § | |
| | § | **CIVIL ACTION NO.** |
| **VS.** | § | **3:14-CV-00616-BF** |
| | § | |
| **TURNKEY KIOSKS, LLC** | § | |

**PLAINTIFF'S SECOND SUPPLEMENTAL OBJECTIONS AND ANSWERS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES**

**TO:**   **Defendant, TurnKey Kiosks, LLC, by and through its attorney of record, David W.
Williams and Joshua W. Carden, Davis Miles McGuire Gardner, The Summit at
law Colinas, 545 E. John Carpenter Freeway, Suite 300, Irving, Texas 75062**

  **COMES NOW,** Ganart Technologies, Inc., Plaintiff in the above-entitled and numbered

cause and pursuant to the Federal Rules of Civil Procedure, files this its Second Supplemental

Objections and Answers to Defendant's First Set of Interrogatories.

           **Respectfully submitted,**

           **COBB MARTINEZ WOODWARD** P LLC
           1700 Pacific Avenue, Suite 3100
           Dallas, Texas  75201
           (214) 220-5204
           (214) 220-5254 (Fax)

           By: */s/ Jonathan C. LaMendola*
            **JONATHAN C. LaMENDOLA**
            Texas Bar No. 00792637
            email: jlamendola@cobbmartinez.com
            **DAVID R. WOODWARD**
            Texas Bar No. 21975650
            email: dwoodward@cobbmartinez.com

           **ATTORNEYS FOR PLAINTIFF GANART
           TECHNOLOGIES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to the following counsel of record either by hand-delivery, telefax, eservice, email, certified mail, return receipt requested and/or regular U.S. mail on this 30th day of January, 2015.

David W. Williams
Joshua W. Carden
Davis Miles McGuire Gardner
The Summit at law Colinas
545 E. John Carpenter Freeway, Suite 300
Irving, TX 75062

*/s/ Jonathan C. LaMendola*
**JONATHAN C. LaMENDOLA**

## INTERROGATORIES

<u>INTERROGATORY NO. 1:</u>      State the names, current addresses, and telephone numbers of each and every individual who you believe has knowledge of facts concerning this matter, including but not limited to any persons whom you have obtained written or recorded statements pertaining to this case from, and provide the substance of each individual's knowledge and give the date of any statements obtained, if applicable.

   **ANSWER:**   *See* Plaintiff's current Disclosures.

<u>INTERROGATORY NO. 2:</u>      Please separately state the amounts you are claiming for economic damages, non-economic damages, special damages, and explain how you arrived at those amounts.

   **ANSWER:**   *See* Plaintiff's current Disclosures.

<u>INTERROGATORY NO. 3:</u>      Please identify each and every exhibit you propose to use at the trial or any hearing of this case, including the title of each exhibit, a description of the contents of each exhibit, identify any limited purpose for which the exhibit will be offered, the names, addresses of and job titles of authenticating witnesses and current custodians. This interrogatory is directed both to exhibits you intend to use upon the trial and exhibits you may use.

   **ANSWER:**   Plaintiff objects to this Interrogatory as premature, but will supplement its response.  Plaintiff, however, may use any document or items produced in this case.

<u>INTERROGATORY NO. 4</u>:  Please identify every witness, including expert witnesses, who may testify at the trial of this matter including their names, addresses, job titles, relationship to any party, the subject matter and summary of the anticipated testimony.

      **ANSWER:**  *See* Plaintiff's current Disclosures and Expert Designation.

<u>INTERROGATORY NO. 5</u>:      Regarding each trade secret which you contend was misappropriated by Defendant, please describe with particularity how Defendant allegedly misappropriated the trade secret, each person with knowledge of any such misappropriation, and when you contend the each such trade secret was misappropriate.

      **ANSWER:**  Ganart directs Defendant to Plaintiff's current Disclosures and its live pleading. Ganart currently contends TurnKey misappropriated its trade secrets by:

a)    disassembling, reverse engineering, redesigning and/or duplicating Ganart's proprietary palm vein scanner assembly (The Assembly);

b)    copying, decoding and/or reproducing Ganart's proprietary software based customer registration and authentication process;

c)    copying, redesigning and/or reproducing Ganart's patent pending, anti-money laundering compliant Self-Service Registration at Kiosk; and

d)    disclosing, demonstrating, and/or providing Ganart's system and method for formless Self-Service Registration for access to financial services to Third-Parties without Ganart's specific written permission.

The identity of specific individuals with knowledge of such wrongful conduct would be within the sole possession of TurnKey employees, representatives, and agents who engaged in such wrongful activity as well as those individuals to whom Ganart's trade secrets were provided.

Ganart contends that at a minimum, Casey Strachan, Kelly Strachan, and Gary Strachan engaged in the misappropriation.

Both TurnKey and Robocoin have admitted that TurnKey demonstrated Ganart's proprietary system and method for formless self-service registration for access to financial services to Robocoin. This was done in violation of the NDA between Ganart and TurnKey.

TurnKey has likewise admitted that it misappropriated Ganart's assembly and installed it in a kiosk that was provided to Robocoin and deployed in Vancouver, Canada. Furthermore, the software-based customer registration process used by Robocoin in the kiosk deployed in Vancouver, Canada is a replica of Ganart's patent-pending system and method for formless self-service registration for access to financial services.

Ganart contends there may be other instances of misappropriation and wrongful conduct by TurnKey which Ganart has not yet learned of.

INTERROGATORY NO. 6:        Regarding each trade secret you contend was utilized by Defendant, identify with particularity the following:

- (a)    The complete, precise trade secret you contend was utilized;

- (b)    The Bates numbers of (or description enabling Defendant to identify) the documents produced by you which show or describe each trade secret or its utilization by Defendant;

- (c)    Each person with knowledge of any such utilization; and

- (d)    When the trade secret was allegedly utilized by Defendant.

**ANSWER:**   Ganart refers Defendant to Ganart's live pleadings and current disclosures.

Additionally:

a)   (1)   Ganart's palm vein scanner assembly (The Assembly);

(2)   Ganart's software based customer registration and authentication process;

(3)   Ganart's patent pending anti-money laundering compliant Self-Service Registration at kiosk; and

(4)   Ganart's system and method for formless Self-Service Registration for access to financial services.

b)   Please see the following documents:

Turnkey-Ganart 5-6, 19-24, 25-30, 32-33, 38-44, 45-47, 58-81, 90-92, 99-101, 103, 105-114, 118, 128-137, 143-151, 152-159, 166-167, 176-185, 212-222, 324-325, 374-375, 382-383, 407, 408, 409-411, 420, 421-425, 643-666, 668-687.

Turnkey 5-13, 14, 205-209, 233-235, 236-237, 241-242, 278-286, 287, 526-541, 554-559.

Affidavit of Wayne McHugh executed May 19, 2014.

Correspondence from Frank Grant to Jonathan LaMendola dated January 27, 2013 [sic].

TurnKey's Responses to Ganart's Request for Admissions.

Declaration of Jordan Kelley for Robocoin Technologies.

The deposition of Jordan Kelley.

c)   The specific identity of the individuals who utilized Ganart's trade secrets is within the sole possession of TurnKey employees, representatives, and agents as well as anyone to whom TurnKey wrongfully disclosed or provided Ganart's trade secrets. Ganart contends that at a minimum, Gary Strachan, Kelly Strachan, and Casey Strachan have such knowledge.

d)   The exact timing of when TurnKey engaged in the wrongful conduct is within the sole possession of TurnKey's employees, representatives, and agents. Ganart, however, contends that TurnKey's misappropriation occurred sometime between

March 8, 2013 and October 28, 2013.

Ganart contends there may be other instances of misappropriation and wrongful conduct by TurnKey which Ganart has not yet learned of.

INTERROGATORY NO. 7:        Please state the complete factual basis for any allegation that Defendant allegedly shared any trade secret or proprietary information with any third-party, including all documents that support the allegation and any person with knowledge of such allegations.

**ANSWER:**   On May 31, 2013 Gary Strachan disclosed to John Russell the use of palm vein scanning technology as a way to validate and control kiosk transactions in violation of the NDA.  At some point in the middle to late/middle of 2013, TurnKey invited Jordan Kelley and John Russell to TurnKey's offices and demonstrated the demo kiosk with Ganart's proprietary Self-Service Registration at Kiosk and money-earned solution to Robocoin in violation of the NDA.

On or about August 20, 2013 Ganart received alerts from TurnKey's demo kiosk. Ganart was informed by TurnKey that TurnKey had disconnected and/or removed several devices from the demo kiosk.

On or about September 5, 6 and 20, 2013 TurnKey requested Ganart enable the Self-Service Registration at Kiosk service on the demo kiosk in TurnKey's offices so that it could provide a demonstration to a prospective customer.

On or about October 23, 2013 TurnKey emailed Ganart that the ID scanner was not working. This indicates TurnKey disconnected and/or removed the ID scanner.

On or about October 28, 2013 Ganart learned from news report that Robocoin had deployed a TurnKey kiosk in Vancouver, Canada. The kiosk contained Ganart's proprietary

palm vein scanner assembly. The software based customer registration process used by Robocoin is a replica of Ganart's patent-pending Self-Service Registration at Kiosk.

When confronted over the phone later that day with this information by Art Holbrook, Gary Strachan admitted that TurnKey had used Ganart's design and installed The Assembly in the kiosk deployed in Vancouver, Canada.

Ganart refers TurnKey to Ganart's current Disclosures and its response to Interrogatory No. 6 for additional responsive information.

Ganart contends there may be other instances of misappropriation and wrongful conduct by TurnKey which Ganart has not yet learned of.

INTERROGATORY NO. 8:        Please identify in detail any confidential or proprietary information belonging to Plaintiff that is not a trade secret and that you contend Defendant wrongfully utilized or misappropriated, each document pertaining or related to such utilization or misappropriation, and each person who has knowledge of such misappropriation or utilization.

**ANSWER:**  Ganart contends that all confidential and proprietary information TurnKey wrongfully utilized or misappropriated was a trade secret. To the extent it was not, see Ganart's response to Interrogatory No. 6, above.

Since discovery is ongoing Ganart contends there may be other instances of misappropriation and wrongful conduct by TurnKey which Ganart has not yet learned of.

INTERROGATORY NO. 9:        Please state the complete factual basis for any allegation that supports your claim that Defendant breached the non-disclosure agreement, including all documents that support the allegation and any person with knowledge of such allegations.

**ANSWER:**   On May 31, 2013 Gary Strachan disclosed to John Russell the use of palm vein scanning technology as a way to validate and control kiosk transactions in violation of the NDA.  At some point in the middle to late/middle of 2013, TurnKey invited Jordan Kelley and John Russell to TurnKey's offices and demonstrated the demo kiosk with Ganart's proprietary Self-Service Registration at Kiosk and money-earned solution to Robocoin in violation of the NDA.

On or about August 20, 2013 Ganart received alerts from TurnKey's demo kiosk. Ganart was informed by TurnKey that TurnKey had disconnected and/or removed several devices from the demo kiosk.

On or about September 5, 6 and 20, 2013 TurnKey requested Ganart enable the Self-Service Registration at Kiosk service on the demo kiosk in TurnKey's offices so that it could provide a demonstration to a prospective customer.

On or about October 23, 2013 TurnKey emailed Ganart that the ID scanner was not working. This indicates TurnKey disconnected and/or removed the ID scanner.

On or about October 28, 2013 Ganart learned from news report that Robocoin had deployed a TurnKey kiosk in Vancouver, Canada. The kiosk contained Ganart's proprietary palm vein scanner assembly. The software based customer registration process used by Robocoin is a replica of Ganart's patent-pending Self-Service Registration at Kiosk.

When confronted over the phone later that day with this information by Art Holbrook, Gary Strachan admitted that TurnKey had used Ganart's design and installed The Assembly in the kiosk deployed in Vancouver, Canada.

Ganart refers TurnKey to Ganart's current Disclosures and its response to Interrogatory No. 6 for additional responsive information.

Ganart contends there may be other instances of misappropriation and wrongful conduct by TurnKey which Ganart has not yet learned of.

INTERROGATORY NO. 10:        Please state the complete factual basis for any allegation that supports your claim that Defendant breached the non-disclosure agreement, including all documents that support the allegation and any person with knowledge of such allegations.

**ANSWER:** This Interrogatory is identical to Interrogatory No. 9, above. Please see Plaintiff's response to Interrogatory No. 9.

INTERROGATORY NO. 11:        Please describe with particularity Plaintiff's "Self-Service Registration at Kiosk, including how the "Self-Service Registration at Kiosk" constitutes a "trade secret."

**ANSWER:** Self-Service Registration at Kiosk is a service that allows fully compliant (Anti-money Laundering Act) registration of an individual at a self-service device, such as a kiosk, without teller assistance, for access to variety of services, such as regulated financial transactions like money transfer. This service allows a complete Anti Money Laundering Act (AML) compliant identification and registration of an individual at a self-service kiosk using Ganart's proprietary technology and processes. It includes biometric signature (including palm vein), capture and validation of a government issued identification card, and digital photographs of the registrant.

Ganart's Self-Service Registration at Kiosk is the result of over two years of research and development by Ganart and the expenditure of approximately one million dollars. Ganart licenses this process to third parties for a fee. This process derives independent economic value because it is not generally known to, and not readily ascertainable by proper means, by other persons who could obtain economic value from its disclosure or use.

This software-based process is kept confidential by Ganart and is not shared with third parties absent a Non-Disclosure Agreement. As part of the NDA, Ganart requires any subsequent disclosure by the party receiving such confidential information to obtain Ganart's specific written permission before doing so.

At the time the Self-Service Registration at Kiosk was shared with TurnKey, no one else in the financial service industry was using palm vein scans, coordinated with capture and validation of a government issued identification card as part of an overall system to register users remotely at a kiosk thus allowing them to access multiple financial services (ATM, payday advances, bill pay, etc.) through a single device with a unified, verified registration process.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| GANART TECHNOLOGIES, INC. | § | |
| | § | CIVIL ACTION NO. |
| VS. | § | 3:14-CV-00616-BF |
| | § | |
| TURNKEY KIOSKS, LLC | § | |

**PLAINTIFF'S FIRST AMENDED INITIAL DISCLOSURES**

**COMES NOW,** Plaintiff, Ganart Technologies, Inc. ("Ganart"), and serve this its First

Amended Initial Disclosures pursuant to the FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1):

**Fed. R. Civ. P. 26(a)(1)(A)(i):** the name and, if known, the address and telephone number of
each individual likely to have discoverable information—along with the subjects of that
information—that the disclosing party may use to support its claims or defenses, unless the use
would be solely for impeachment.

**Response:**

    a.    The following current employees of Ganart may be contacted through Ganart's
counsel. They have knowledge regarding the NDA, the relationship between
Ganart and TurnKey, Ganart's proprietary software and hardware and processes,
Ganart's Workplace Solution, Ganart's Know Your Customer and Anti-Money
Laundering Compliant Self-Service Registration at Kiosk System:

        1.    Joel Gomez.

        2.    Robert Hasty.

        3.    Art Holbrook.

        4.    Wayne McHugh.

        5.    Safir Salihu.

        6.    Janie White.

    b.    The following employees and agents of TurnKey Kiosks, LLC ("TurnKey") may
be contacted through TurnKey's counsel:

        1.    Gary Strachan.

        2.    Kelly Strachan;

        3.    Margaret Strachan.

0000039

4.      Casey Strachan.

c.      Employees, officers, and unknown individuals from Robocoin Technologies, including but not limited to CEO Jordan Kelley, John Russell, Mark Russell and Mitchell Demeter. They have knowledge regarding Turnkey's use of Ganart's proprietary technology that forms the basis of Ganart's claims.

d.      Employees of Humanetics:  Manufacturer of Ganart hardware.

e.      Jonathan LaMendola:  Attorney's fees.

f.      Maria Speth:  Attorney's fees.

g.      Mark Bogard: Attorney's fees.

h.      Jim Kidd, CEO: Information regarding Ganart's damages.
         Paycenter1, Inc.
         800 Research Road
         Suite 100, Room 120
         Woodland Park, CO 80863

**Fed. R. Civ. P. 26(a)(1)(A)(ii):** a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

**Response:**

*See* the documents produced by Ganart that are Bates labeled Turnkey-Ganart 1-771 and the flash drive containing an electronic folder that is Bates labeled Turnkey-Ganart 772, which contains a number of videos and screen captures.

**Fed. R. Civ. P. 26(a)(1)(A)(iii):** a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered

**Response:**    Damages are still being assessed and because of the nature of TurnKey's actions, are difficult to place a pecuniary value on.    Ganart contends, however, that TurnKey's misappropriation has resulted in lost business revenue and opportunities.   When Robocoin initially deployed the kiosk in Vancouver, Canada, it contained Ganart's proprietary Palm Vein Scanning Assembly.

Ganart was alerted to this when one of its customers, PayCenter1 contacted Ganart about Ganart's connection with the kiosk.  PayCenter 1 informed Ganart that it would not go forward with its plans to purchase additional kiosks which used Ganart's Assembly and Self-Service Registration at Kiosk process because of its association with Bitcoins.

As a result, Ganart lost the income associated with approximately 1500 units.  Each of those units would have produced the following income for Ganart:

> Tiered one time licensing fee ranging from $2350-$1500
> $100.00 monthly operations fees
> $38.00 monthly network terminal management fee

In addition, each kiosk would generate incidental transaction fees between .08 to .25% per transaction, depending on the service accessed through the kiosk.  *See* Turnkey-Ganart 688-711 and Turnkey-Ganart 753-755.

Ganart has incurred attorney's fees to prosecute this claim and to defend itself against TurnKey's legal action in Arizona and claims those fees as damages. *See* Turnkey-Ganart 756-771.

**Fed. R. Civ. P. 26(a)(1)(A)(iv):** for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.


**Response:**    Not applicable.

Signed this 30th day of January, 2015.

Respectfully submitted,

**COBB MARTINEZ WOODWARD** PLLC
1700 Pacific Avenue, Suite 3100
Dallas, Texas 75201
(214) 220-5204
(214) 220-5254 (Fax)

By: */s/ Jonathan C. LaMendola*      
    **JONATHAN C. LaMENDOLA**
    Texas Bar No. 00792637
    email: jlamendola@cobbmartinez.com
    **DAVID R. WOODWARD**
    Texas Bar No. 21975650
    email: dwoodward@cobbmartinez.com

**ATTORNEYS FOR PLAINTIFF GANART
TECHNOLOGIES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to the following counsel of record either by hand-delivery, telefax, eservice, email, certified mail, return receipt requested and/or regular U.S. mail on this 30th day of January, 2015.

David W. Williams
Joshua W. Carden
Davis Miles McGuire Gardner
The Summit at law Colinas
545 E. John Carpenter Freeway, Suite 300
Irving, TX 75062

       */s/ Jonathan C. LaMendola*      
       **JONATHAN C. LaMENDOLA**