IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| GANART TECHNOLOGIES, INC. | § | |
| | § | CIVIL ACTION NO. |
| VS. | § | 3:14-CV-00616-BF |
| | § | |
| TURNKEY KIOSKS, LLC | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S CONFIDENTIAL APPENDIX AND CONFIDENTIAL RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Ganart Technologies, Inc. ("Ganart") submits this, its Response to Defendant's Motion to Strike Portions of Plaintiff's Confidential Appendix and Confidential Response to Defendant's Motion for Summary Judgment ("Motion to Strike").

**I.   INTRODUCTION**

While discovery was ongoing in this case, Defendant Turnkey Kiosks, LLC ("Turnkey") filed its motion for summary judgment. Ganart responded to Turnkey's Motion for Summary Judgment and Turnkey filed a Motion to Strike evidence included in Plaintiff's response.

In its Motion to Strike, Turnkey seeks to exclude (1) the entirety of Ganart's supplemental interrogatory responses and Paragraphs 40 through 42 of Ganart's response brief, regarding Ganart's trade secrets; and (2) Paragraphs 22 through 24 of the Affidavit of Wayne McHugh and Paragraphs 24 through 27 and 66 of Ganart's response brief, regarding Ganart's lost sales following Turnkey's misappropriation of Ganart's trade secrets and breach of the Non Disclosure Agreement.[1] Turnkey argues that Ganart's supplemental interrogatory responses were untimely and should be struck under Rule 37 and that McHugh's affidavit testimony is hearsay.

**II.   GANART TIMELY SUPPLEMENTED ITS DISCOVERY RESPONSES**

On August 23, 2013, Ganart and PayCenter1 entered into a contract whereby Ganart

---

[1] Defendant's Motion to Strike [Doc. 49], p. 1, Feb. 25, 2015.

licensed its proprietary software to be used on PayCenter1 kiosks.[2] PayCenter1 initially purchased 150 licenses from Ganart and committed to purchase additional licenses in 2013 and 2014.[3] Following the deployment of the Robocoin kiosk in Vancouver, PayCenter1 suspended its purchase of the additional licenses because its investors refused to fund the purchase.[4]

Following the suspension of the transaction, PayCenter1 tried to convince its investors to fund the purchase of some additional licenses.[5] During the suspension of the transaction, Ganart anticipated damages from lost revenue and business opportunities based on lost service fees during the suspension, a possibly smaller purchase than what PayCenter1 initially agreed to make, or the likely possibility that PayCenter1 would not purchase any additional licenses.[6]

Because damages could not yet be calculated, and because negotiations with PayCenter1 were ongoing, Ganart did not initially disclose the PayCenter1 contract.[7] Ganart remained cautiously optimistic that it could sell some number of licenses to PayCenter1.[8] By November 2014, Ganart determined that PayCenter1 could not persuade its investors and Ganart realized that additional attempts to sell the product to PayCenter1 would be fruitless.[9] After Ganart ceased its efforts to sell additional licenses to PayCenter1, it began to calculate its lost revenue and that analysis was completed on December 12, 2014.[10] Ganart disclosed the contract and damages to Turnkey on January 30, 2015.[11]

Ganart's supplementation was timely because it was made well before the deadline for

---

[2] Confidential Appendix Filed Under Seal in Support of Plaintiff's Response to Defendant's Motion to Strike ("Appx."), 1, Affidavit of Purnendu Mishra at ¶ 4.
[3] Appx. 1, Affidavit of Purnendu Mishra at ¶ 4.
[4] Appx. 1, Affidavit of Purnendu Mishra at ¶ 5.
[5] Appx. 2, Affidavit of Purnendu Mishra at ¶ 6.
[6] Appx. 2, Affidavit of Purnendu Mishra at ¶ 7.
[7] Appx. 2, Affidavit of Purnendu Mishra at ¶ 8.
[8] Appx. 2, Affidavit of Purnendu Mishra at ¶ 9.
[9] Appx. 2, Affidavit of Purnendu Mishra at ¶ 9
[10] Appx. 2, Affidavit of Purnendu Mishra at ¶ 10.
[11] Appx. 35, Plaintiff's First Amended Initial Disclosures, Jan. 30, 2015.

discovery and soon after Ganart determined its damages. Ganart supplemented its disclosures on January 30, 2015 and supplemented its interrogatory responses on January 30, 2015 and February 9, 2015.[12] Discovery is ongoing until April 30, 2015.[13]

Defendant filed its motion for summary judgment on January 19, 2015, with over three months remaining in the discovery period.[14] By seeking summary judgment while discovery is still open, Defendant is trying to short circuit the process to preclude this case from being tried on its merits. *See Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 354 (5th Cir. 1989) ("Summary judgment should not . . . ordinarily be granted before discovery has been completed.").

### III.   EVEN ASSUMING GANART'S SUPPLEMENTATION WAS UNTIMELY, THE EVIDENCE SHOULD NOT BE EXCLUDED BECAUSE SUCH FAILURE WAS HARMLESS

#### A.   *All of the factors to determine if a late disclosure is harmless weigh in Ganart's favor.*

If a party fails to comply with Rules 26 and 37 of the Federal Rule of Civil Procedure, the evidence cannot be excluded if the failure was harmless. FED. R. CIV. P. 37(c)(1); *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998). To determine whether the failure was harmless, the court should consider the following four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of allowing the evidence; (3) the possibility of curing prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose the evidence. *Id.*; *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

Regarding the first factor, Turnkey admits that the evidence regarding Ganart's damages and trade secrets are important.[15] Where evidence is required to prove critical elements of a claim, the importance of the evidence weighs in the favor of including the evidence. *United States v.*

---

[12] Appx. 59, Plaintiff's Confidential Third Supplemental Objections and Answers to Defendant's First Set of Interrogatories, Feb. 9, 2015.
[13] *First Amended Pretrial Scheduling Order*, [Doc. 35], Nov. 4, 2014.
[14] *Defendant Turnkey Kiosk, LLC's Motion for Summary Judgment*, [Doc. 37], Jan. 19, 2015.
[15] Defendant's Motion to Strike [Doc. 49], p. 6, 9, Feb. 25, 2015.

*Filson*, 347 Fed. Appx. 987, 990 (5th Cir. 2009).

The second factor, prejudice to the opposing party, is generally dispositive. *See, e.g. Tex. A&M Research Found.*, 338 F.3d at 402 (refusing to strike evidence because there was no prejudice, despite the producing party having no explanation); *Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 11 F. Supp. 3d 747, 758 (S.D. Tex. 2014) (Harmon, J.) (same); *Norton v. Assisted Living Concepts, Inc.*, 786 F. Supp. 2d 1173, 1189 (E.D. Tex. 2011) (Schell, J.) (same). When a party supplements discovery before the trial date or before a trial date is set, prejudice is negligible. *Norton*, 786 F. Supp. 2d at 1189 (refusing to strike disclosures made after the discovery deadline, holding "[t]he court finds that any such prejudice . . . was negligible because the document at issue was designated as an exhibit before a trial date had even been scheduled."); *Librado v. M.S. Carriers, Inc.*, No. 3:02-CV-2095-D, 2004 U.S. Dist. LEXIS 12203 *42 (N.D. Tex. June 30, 2004) (Fitzwater, J.) (denying summary judgment and refusing to strike an expert because expert disclosures were corrected five months before trial). If there is sufficient time to review and respond to evidence before trial, the prejudice is cured. *Tex. A&M Research Found.*, 338 F.3d at 402 (prejudice was cured because party had one month to examine the contested evidence).

In the present case, Ganart supplemented its discovery responses while discovery was ongoing and with ample time before the deadline for dispositive motions.[16] Thus, any prejudice is negligible at best because Turnkey had over three months to examine the contested evidence before the deadline for dispositive motions. *See id*. Additionally, the court has not yet set a trial date, so the evidence does not prejudice Turnkey's ability to prepare for trial. *See Librado*, 2004 U.S. Dist. LEXIS 12203 at *42.

The third factor, whether prejudice could be cured by a continuance, also weighs in favor

---

[16] *First Amended Pretrial Scheduling Order*, [Doc. 35], Nov. 4, 2014 (discovery deadline is April 30, 2015, dispositive motion deadline is May 30, 2015, and there is no trial date set).

of including the evidence. Any alleged prejudice to Turnkey could easily be cured by a continuance of any deadline set forth in the scheduling order. *See e.g. Viera v. Signature Contr. Servs., LLC*, No. 3:11-cv-100-BN, 2014 U.S. Dist. LEXIS 86733, **4-5 (N.D. Tex. June 26, 2014) (Horan, Mag. J.) (denying a motion to strike damages evidence and noting that "although any prejudice in this case could be cured by a continuance, Defendants do not seek a continuance but instead ask for automatic exclusion of damages evidence.").

Regarding the fourth factor, Ganart explained that the losses arising from the PayCenter1 contract were not determined until December 12, 2014, and were provided to Turnkey in January 2015.[17] Ganart did not disclose the damages before this time because it was still trying to salvage the contract with PayCenter1.[18]

### B. *Even assuming Ganart's supplementations were untimely, Turnkey is not prejudiced because McHugh was identified in Ganart's Initial Disclosures.*

If a party timely discloses a witness, any prejudice to an adverse party relating to facts to which the witness avers or evidence offered to support a witness's affidavit testimony is negligible. *See Tex. A&M Research Found.*, 338 F.3d at 402 ("the prejudice to the adverse parties was negligible, because the witness in support of whose testimony the invoices were offered had been designated properly as a witness before trial.").

Any allegedly new iterations of Ganart's trade secrets or explanation of damages in Ganart's interrogatory responses are supported by McHugh's affidavit.[19] Turnkey has not sought to strike McHugh's affidavit testimony regarding Ganart's trade secrets.[20] Even if Ganart's

---

[17] Appx. 2, Affidavit of Purnendu Mishra at ¶ 10; Appx. 33, 36 Plaintiff's First Amended Initial Disclosures.
[18] Appx. 2, Affidavit of Purnendu Mishra at ¶ 8.
[19] *See Confidential "Appendix" Filed Under Seal in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment* ("Plaintiff's Confidential Appendix"), [Doc. 46], Feb. 9, 2015 at ¶¶ 4-9 (trade secrets), ¶¶ 21-24 (PayCenter1 damages).
[20] *See* Defendant's Motion to Strike, [Doc. 49], p. 1, Feb. 25, 2015 (seeking to strike only "paragraphs 22 through 24 of the Affidavit of Wayne McHugh" which discuss the PayCenter1 damages)

interrogatory supplementation somehow prejudiced Turnkey, paragraphs forty through forty-two of Ganart's response brief are supported by McHugh's affidavit testimony.[21]

Turnkey has no basis to strike McHugh's affidavit under Rule 37. Ganart disclosed McHugh as an individual likely to have discoverable information in its initial disclosures on June 6, 2014, over seven months before Turnkey filed its motion for summary judgment.[22] Because the evidence Turnkey seeks to strike is supported by affidavit testimony of a disclosed witness, any prejudice to Turnkey is negligible at best and the evidence should not be struck. *See e.g. Tex. A&M Research Found*, 338 F.3d at 402; *Mendoza v. A&A Landscape & Irrigation, LP*, No 4:12-CV-562, 2014 U.S. Dist. LEXIS 163413, * 9 (E.D. Tex. Nov. 21, 2014) (refusing to strike affidavit from witness who was disclosed within discovery period).

### IV. FURTHER, TURNKEY IS NOT PREJUDICED BECAUSE GANART DISCLOSED ITS TRADE SECRETS, WAYNE MCHUGH, AND ITS DAMAGES THEORY IN PRIOR DISCLOSURES.

#### A. *Turnkey has known every aspect of Ganart's Trade Secrets since August 15, 2014*

Ganart identified its trade secrets in interrogatory responses, served to Turnkey on August 15, 2014.[23] The hardware trade secret, the Assembly, was designed to be ruggedized (industrial-grade) and to enhance the reliability of palm vein scans.[24] Ganart's software trade secret is a program that identifies and registers customers to ensure anti-money laundering (AML) compliance.[25] Additionally, Ganart identified that a combination of these technologies constituted a trade secret in its Objections and Answers to Defendant's Second Set of Interrogatories.[26]

Ganart has not added any novel or conflicting information about the trade secrets. The trade secrets have not wavered and consist of the same characteristics identified in Ganart's August 15,

---

[21] *See* Plaintiff's Confidential Appendix, [Doc. 46], Feb. 9, 2015 at ¶¶ 4-9 (trade secrets).
[22] See Appx. 30, Plaintiff's Initial Disclosures, June 6, 2014.
[23] *See* Appx. 53-54, Plaintiff's Objections & Answers to Defendant's Second Set of Interrogatories, Aug. 15, 2014
[24] *See* Appx. 37, Comparison of Trade Secrets from Interrogatory Responses and McHugh's Affidavit.
[25] *See* Appx. 38, Comparison of Trade Secrets from Interrogatory Responses and McHugh's Affidavit.
[26] *See* Appx. 39, Comparison of Trade Secrets from Interrogatory Responses and McHugh's Affidavit.

2014 discovery responses to Turnkey. Turnkey cannot be prejudiced by information it had over five months before it filed its motion for summary judgment.

### B. *Ganart designated McHugh as a potential witness in its initial disclosures*

Turnkey's Motion to Strike seeks to exclude evidence provided in the affidavit and verified interrogatory responses of Wayne McHugh. McHugh was disclosed as an individual likely to have discoverable information on June 6, 2014 in Ganart's initial Rule 26 disclosures.[27] Turnkey did not depose McHugh before filing their Motion for Summary Judgment and now seeks to limit his testimony. Turnkey has no basis to do this under Rule 37 or any authority to which Turnkey cited.

Rule 37 provides that the Court may order evidentiary sanctions regarding evidence obtained from a witness who was not disclosed in initial disclosures or supplements thereto. FED. R. CIV. P. 37(c)(1). If a party fails to disclose a witness as required by Rule 26, the court may exclude evidence obtained from that witness, unless the failure to disclose was substantially justified or harmless. *Id.*; *Mendoza*, 2014 U.S. Dist. LEXIS 163413 at *7. Because McHugh was disclosed, Rule 37 provides no limitation on his testimony.

The cases relied upon by Turnkey in its motion to strike are distinguishable because the cases involve information or witnesses disclosed **after** the close of discovery or witnesses that were never disclosed. *See e.g. Am. Realty Trust, Inc. v. Matisse Partners, LLC*, 2002 U.S. Dist. LEXIS 12560 at * 17 (N.D. Tex. July 2010, 2002) (striking damages theory that was disclosed **after** close of discovery); *Fleming v. Verizon N.Y. Inc.*, 2006 U.S. Dist. LEXIS 68632 at *24-26 (S.D.N.Y. Sept. 22, 2006) (striking witnesses who were never disclosed). Unlike Turnkey's cases, the source of the information relied on in Ganart's response is a witness who was disclosed in Ganart's initial disclosures. *See Tex. A&M Research Found.*, 338 F.3d at 402 (refusing to strike

---

[27] *See* Appx. 30, Plaintiff's Initial Disclosures, June 6, 2014.

exhibits that supported affidavit testimony of a properly designated witness). There is no authority supporting a limitation of McHugh's testimony.

### C. Ganart disclosed its damages for lost revenue and business opportunities in its initial disclosures

In its initial disclosures, Ganart disclosed that it was seeking damages for lost revenue and business opportunities.[28] Because Ganart identified its general damages theory in its initial disclosures and provided a contract and a damages model in its production to Turnkey on January 30, 2015, Ganart did not fail to disclose its damages theory and its supplementation of production and disclosures did not prejudice Turnkey. Although Ganart's initial response "was not perfect… it was not a failure to disclose." *See Henry's Marine Serv. v. Fireman's Fund Ins. Co.*, 193 Fed. Appx. 267, 278 (5th Cir. 2006).

## V.   MCHUGH'S DAMAGES TESTIMONY IS NOT HEARSAY

### A. PayCenter1's reduction of licenses under the agreement was a verbal act, not hearsay

Statements are not hearsay if they constitute "verbal acts" which affect the legal rights of the parties. FED. R. EVID. 801 advisory committee's note. If a statement has legal effect, it is a verbal act and is not hearsay. *Cloverland-Green Spring Dairies v. Pa. Milk Mktg. Bd.*, 298 F.3d 201, 218, n. 20 (3d Cir. 2002). The circumstances of a party's loss in business and conversations regarding a reduction or termination of a contract are non-verbal acts and are not hearsay. *Brewer v. Am. Power Source, Inc.*, 517 F. Supp. 2d 881, 888, n. 3 (N.D. Miss. 2007). For example, offers to sell a product at a particular price or conversations between parties relating to terms of an oral agreement are nonhearsay verbal acts. *Cloverland-Green Spring Dairies, Inc.*, 298 F.3d at 218 n. 20; *Axcess Mktg Group v. W. Creative, Inc.*, No. 3:09-CV-2107-B, 2011 U.S. Dist. LEXIS 15812,

---

[28] *See* Appx. 30, Plaintiff's Initial Disclosures, June 6, 2014.

*15-16 (N.D. Tex. Feb. 16, 201) (Boyle, J.).

On August 23, 2013, PayCenter1 entered into a contract with Ganart to license Ganart's software.[29] PayCenter1 purchased 150 licenses from Ganart and—before Robocoin deployed a bitcoin kiosk literally full of Ganart's technology—PayCenter1 had agreed to purchase an additional 1,500 licenses from Ganart through 2014.[30] Following Robocoin's debut of its kiosk, PayCenter1 canceled its agreement to purchase the additional licenses because of Ganart's perceived association with bitcoin.[31]

PayCenter1's communications with Ganart are not hearsay because they had the legal effect of terminating its commitment to purchase additional licenses, thus reducing PayCenter1's prior order and causing Ganart a considerable business loss. *See Brewer*, 517 F. Supp. 2d at 888. Thus, PayCenter1's communications were verbal acts and striking the evidence is improper. *See Axcess Mktg Group*, 2011 U.S. Dist. LEXIS 15812 at *16 ("Since Defendants' hearsay argument is the only basis for their contention that [Plaintiff] has failed to raise a fact question regarding the existence of a contract, the Court finds that summary judgment on that basis is improper.").

### B.   McHugh's affidavit is based on corporate knowledge and is not hearsay

A corporate representative is permitted to testify regarding issues that, although not within the representative's knowledge, are within the knowledge of the corporation. *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). A corporation may present the testimony of a representative who "presents the corporation's 'position' on the topic." *Id.* The corporate representative may testify to a fact that is within the collective knowledge or subjective belief of the corporation. *Id.* at 434. An affiant's status as a corporate representative can be inferred by the

---

[29] *See* Appx. 3 Software License and Transaction Processing Agreement.
[30] *Plaintiff's Confidential Appendix*, [Doc. 46] 4, ¶ 22; Appx. 59, Affidavit of Wayne McHugh ¶ 22.
[31] *Plaintiff's Confidential Appendix*, [Doc. 46] 4, ¶ 23; Appx. 59, Affidavit of Wayne McHugh ¶ 23.

affiant's position within the corporation. *DIRECTV Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. Tex. 2005); *J&J Sports Prods. v. Allen*, 2014 U.S. Dist. LEXIS 98805, *20 (E.D. Tex. June 27, 2014). A corporation's understanding regarding a business partner's noncompliance with an agreement is proper corporate knowledge testimony. *See Sara Lee Corp. v. Kraft Foods, Inc.*, 276 F.R.D. 500, 503 (N.D. Ill. 2011).

McHugh's affidavit statements regarding PayCenter1's decision to cancel its commitment to purchase additional licenses is not hearsay because the reason PayCenter1 reduced its order is within Ganart's corporate knowledge. McHugh's affidavit states that he is Ganart's President and COO.[32] In that role, it is within McHugh's "sphere of responsibility" to be familiar with Ganart's business contracts and any issues that harm Ganart's image, marketing, and revenue. *See DIRECTV Inc. v. Budden*, 420 F.3d 521, 530; *Stephenson v. Std. Ins. Co.*, 2013 U.S. Dist. LEXIS 85156, *14 (W.D. Tex. June 18, 2013). As such, McHugh is qualified to testify as to Ganart's knowledge and subjective beliefs regarding the loss of PayCenter1 as a customer and the negative publicity created by Turnkey's trade secret misappropriation and breach of the Non Disclosure Agreement.

## VI.   CONCLUSION

For the reasons set forth above, the Court should deny TurnKey Kiosk, LLC's Motion to Strike Portions of Plaintiff's Confidential Appendix and Portions of Plaintiff's Confidential Response to Defendant's Motion for Summary Judgment.

---

[32] *Plaintiff's Confidential Appendix*, [Doc. 46] 1, ¶ 1; Appx. 56, Affidavit of Wayne McHugh ¶ 1.

        **Respectfully submitted,**

        */s/ Jonathan LaMendola*
        **JONATHAN C. LaMENDOLA**
        Texas Bar No. 00792637
        email: jlamendola@cobbmartinez.com
        **DAVID R. WOODWARD**
        Texas Bar No. 21975650
        email: dwoodward@cobbmartinez.com
        **BRIAN SAWYER**
        Texas Bar No. 24081967
        email: bsawyer@cobbmartinez.com

        **COBB MARTINEZ WOODWARD PLLC**
        1700 Pacific Avenue, Suite 3100
        Dallas, Texas  75201
        (214) 220-5204
        (214) 220-5254 (Fax)

        **ATTORNEYS FOR PLAINTIFF GANART TECHNOLOGIES, INC.**

## CERTIFICATE OF SERVICE

     I hereby certify that on March 18, 2015, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this notice as service of this document by electronic means: David W. Williams and Joshua W. Carden.

        */s/ Jonathan C. LaMendola*
        **JONATHAN C. LaMENDOLA**