IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GANART TECHNOLOGIES, INC. <br> Plaintiffs, <br> <br> V. <br> <br> TURNKEY KIOSKS, LLC <br> Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. 3:14-cv-00616-BF |

**DEFENDANT TURNKEY KIOSK, LLC'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF PLAINTIFF'S CONFIDENITAL APPENDIX AND PORTIONS OF PLAINTIFF'S CONFIDENTIAL RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant TurnKey Kiosks, LLC ("TurnKey") hereby submits its reply in support of its motion to strike certain portions of Plaintiff Ganart Technologies, Inc. ("Ganart") confidential brief and appendix in support of its confidential brief opposing TurnKey's motion for summary judgment, including:

1. Ganart's Confidential Third Supplemental Objections and Answers to Defendants' First Set of Interrogatories (Appendix 2 to Ganart's Confidential Appendix, Docket 46) and Paragraphs 40, 41 and 42 of the Ganart's Confidential Brief (Docket 45) and

2. Paragraphs 22 through 24 of the Affidavit of Wayne McHugh (Appendix 1 to Ganart's Confidential Appendix, Docket 46) and Paragraphs 24 through 27 and 66 of Ganart's Confidential Brief (Docket 45).

## I. INTRODUCTION

The evidence related to Ganart's damages and supplemental discovery responses on its trade secrets should be stricken.

First, with respect to the damages argument involving the loss of PayCenter1 as a customer of Ganart, this evidence is based solely on the hearsay testimony of Wayne McHugh. In his affidavit, Mr. McHugh states that PayCenter1 contacted Ganart and informed Ganart that it would no longer do business with Ganart based upon Ganart's alleged connection with the sale of bitcoins. This statement is simple, traditional hearsay, and should be stricken by the Court.

Second, with respect to the discovery violations, in its response to the motion to strike, Ganart attempts to minimize and overlook its repeated discovery violations related to its failure to timely supplement is discovery responses on its trade secrets or its failure to timely disclose its damages related to the alleged loss of PayCenter1 as a client. Ganart's response essentially is best summarized as "discovery is ongoing and there is no prejudice to TurnKey." Ganart's excuses do not establish that the failure to timely supplement its discovery responses was harmless, and thus, warrant preclusion of the evidence.

## II. THE DAMAGES TESTIMONY FROM GANART IS HEARSAY AND SHOULD BE STRICKEN.

Ganart's only evidence of damages that have been disclosed (although untimely) in this litigation is related to the loss of PayCenter1 as a customer of Ganart. The **only** factual support for the loss of PayCenter1 as a customer of Ganart is based upon a hearsay statements set forth in Paragraphs 22 to 24 in the Affidavit of Wayne McHugh. *See* Ganart's Appendix, pp. 4-5, Doc.46. In his affidavit, Mr. McHugh states that PayCenter1 contacted an undisclosed individual at Ganart and informed the Ganart representative that PayCenter1 would no longer do business with Ganart based upon Ganart's alleged connection with the sale of bitcoins.

The allegations in Mr. McHugh's affidavit are nothing more than simple, traditional hearsay—an out of court statement by PayCenter1 to prove the truth of the matter asserted (i.e. that Ganart lost a customer and sustained damages). The hearsay rule "rests on the sound principle that the reliability of out-of-court declarations not made under oath and not subject to cross-examination and other checks of the trial process is inherently suspect." *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 875 (5th Cir. 1984). Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). This evidence should not be considered by the Court and should not be considered on summary judgment. *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) ("Neither the district court nor this court may properly consider hearsay evidence in affidavits and depositions."); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.")**.**

      A.      **PayCenter1's Reason for Terminating its Contract with Ganart is Based Upon Inadmissible Hearsay.**

Ganart argues that the statement from the undisclosed person at PayCenter1 to the undisclosed person at Ganart is not hearsay because the conversation is a "non-verbal act" being used to show that PayCenter1 was terminating its contract with Ganart. TurnKey acknowledges that "testimony concerning what the contracting parties said about the creation of terms of an oral agreement are nonhearsay verbal acts." *Axcess Mktg. Group v. W. Creative, Inc.*, 2011 U.S. Dist. LEXIS 15812, 16, 2011 WL 611630 (N.D. Tex. Feb. 16, 2011). However, Ganart is not simply using the conversation between the Ganart representative and the PayCenter1 representative to show that a contract was allegedly terminated.[1] Ganart is using the statement to show **why** the contract was allegedly terminated (i.e. Ganart's alleged association with bitcoin),

---

[1] The allegation regarding the "termination" of the contract is suspect at best. Ganart's own contract with PayCenter1 provides that it can only be terminated upon written notice of one party to the other. *See* Ganart's Confidential Appendix, Document 52, p. 11.

which goes beyond the legally operative effect of showing the termination of the contract. In order to avoid summary judgment and establish that Ganart has sustained some form of compensable damages, it must show that PayCenter1 terminated its contract with Ganart because of some actions by TurnKey. The **only** allegation to support that the causal connection between some alleged action by TurnKey and Ganart's damages is the hearsay conversation between Ganart and PayCenter1 wherein PayCenter1 told Ganart that the contract was being terminated because of the alleged affiliation with the bitcoins. **The reason why the contract was allegedly terminated is the hearsay evidence that is inadmissible for purposes of Ganart's damages theory**. Thus, at the very most, the Court could consider the statement for the sole purpose of showing a termination of a contract between Ganart and PayCenter1, but it cannot consider the statement to establish a causal connection for **why** the contract was terminated. Without that necessary causal connection, Ganart cannot establish its damages claim with any admissible evidence.

> B.  "Corporate Knowledge" Does Not Provide an Excuse to Admit Hearsay Evidence.

Ganart also argues that Mr. McHugh's affidavit is within the "corporate knowledge" of Ganart and is somehow outside of the hearsay rule. Frankly, Ganart's argument is confusing and fails to establish why the "corporate knowledge" of Ganart as to the conversation between the unidentified Ganart representative and PayCenter1 representative is somehow outside of the hearsay rule. This argument goes more to whether Mr. McHugh has personal knowledge of the conversation in order to be qualified as an affiant under Rule 56(c)(1), Fed. R. Civ. P.

Even so, "corporate knowledge" of a company witness should not be used to make an end run around the hearsay rule. The concept of corporate knowledge as an exception to the rule that testimony be based on personal knowledge is not applicable to Mr. McHugh's affidavit. As set forth in the case law referenced by Ganart—namely *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416 (5th Cir. 2006) and *Sara Lee Corp. v. Kraft Foods, Inc.*, 276 F.R.D. 500 (N.D. Ill.

2011)—"corporate knowledge" is a concept only applicable to deposition testimony elicited in a Rule 30(b)(6) deposition. Rule 30(b)(6), Fed. R. Civ.P., permits a corporate representative, in a deposition, to testify as to information "reasonably available to the organization." This is a specific, limited exception to the general requirement that a witness testify only to matters within her personal knowledge. *Sara Lee*, 276 F.R.D. at 503. Courts developed the concept of "corporate knowledge" to permit Rule 30(b)(6) testimony to be used at trial, because reinforcing the personal knowledge requirement at trial "would only recreate the problems that Rule 30(b)(6) was created to solve," namely corporate discovery abuses where successive corporate representatives claim not to have any personal knowledge regarding a particular topic. *Id.* It would turn this rule on its head to permit admission of untimely disclosed hearsay in summary judgment proceedings because the information is alleged to be "corporate knowledge." This unique Rule 30(b)(6) concept is not applicable here, and its application would be antithetical to the purpose of Rule 30(b)(6).

Moreover, even if the concept of corporate knowledge were applicable, it cannot be used as an end-around the hearsay rule to admit out-of-court statements. Courts that have considered this issue are reticent about "how far the concept of 'corporate knowledge' can be stretched." *Sara Lee*, 276 F.R.D. at 503; *See also Cooley v. Lincoln Elec. Co.*, 693 F.Supp.2d 767, 791 (N.D. Oh. 2010) ("the fact that a witness is a 30(b)(6) designee does not create a hearsay exception allowing him to simply repeat statements...if those statements are offered for their truth"). They uniformly agree, however, that at the very least, a corporate representative cannot repeat "rank hearsay" and have it admitted into evidence. *Deutsche Shell Tanker Gesellschaft mbH v. Placid Refining Co.*, 993 F.2d 466, 473 n. 29 (5th Cir. 1993).

The *Sara Lee* court illustrated this limitation as follows:

> ...a Rule 30(b)(6) witness should [not] be allowed to testify about the details of a car accident in lieu of the corporation's truck driver who actually witnessed the event. If he could, Rule 30(b)(6) would severely undercut the requirement, fundamental to our adversary system, that fact witnesses have personal

knowledge of the matters upon which they testify.

276 F.R.D. at 503. This concern is even greater here, where Ganart seeks to introduce an out of court statement by an unnamed representative of PayCenter1, of whom TurnKey has no knowledge, and whom TurnKey has had no opportunity to cross-examine. Ganart is asking TurnKey and the Court to simply take Mr. McHugh's word for what Ganart generally believes that PayCenter1 said about the reason it stopped doing business with Ganart, without any additional evidence. *See Cooley*, 693 F.Supp.2d at 792 ("...the rule that a 30(b)(6) designee cannot offer hearsay testimony holds especially true when there is no independent evidentiary basis that might otherwise prove the truth of the hearsay, such as corroborating testimony from the hearsay declarant").

### III.  GANART'S DISCOVERY VIOLATIONS WARRANT PRECLUSION OF ITS TRADE SECRET AND DAMAGES EVIDENCE.

Ganart seeks to minimize its failure to timely disclose the specific nature of its trade secrets and damages evidence on the grounds that there is no prejudice to TurnKey and discovery is still ongoing. However, those excuses simply validate Ganart's violation of the discovery rules. Ganart had a duty to seasonably supplement its discovery responses and its disclosures of damages. *See* Fed.R.Civ.P. 26(e)(2) ("A party is under a duty seasonably to amend a prior response to an interrogatory . . . if the party learns that the response is in some material respect incomplete or incorrect."). Ganart's supplemental discovery responses related to its trade secrets and its damages theory should be precluded unless Ganart can show that the failure to timely disclose was harmless. *See* Fed.R.Civ.P. 37(c)(1); *See Heidtman v. County of El Paso*, 171 F.3d 1038, 1040 (5th Cir. 1999). The parties agree that the relevant factors to determine if Ganart's failure to timely disclose the evidence at is harmless includes: (1) the importance of the evidence; (2) the prejudice to the opposing party of allowing the evidence to be presented; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to provide the evidence in discovery. *See Sierra Club,*

*Lone Star Chapter v. Cedar Point Oil Company Inc.*, 73 F.3d 546, 572 (5th Cir. 1996). The particular factors are discussed below.

### A. Ganart's Damages Evidence Was Never Timely Disclosed and Should Be Precluded.

Ganart's claim that it timely disclosed its damages theory stretches the bounds of credibility. Ganart was aware **before this litigation was even filed** that PayCenter1 allegedly would not do business with Ganart anymore. Ganart was served interrogatories asking it to set forth in detail all of its damages evidence and theories. *See* TurnKey's Appendix, Document 50, p. 6. Further, this information should have been disclosed with Ganart's initial disclosure, which it was not. There can be no dispute that a party also has a duty to timely supplement a prior discovery response or disclose evidence within a reasonable time of learning about such. Rule 26(e), Fed. R. Civ. P. It was only after TurnKey moved for summary judgment that the materials were even disclosed. Ganart's excuse that its damages were not yet calculated is simply without merit. It knew of the alleged loss of PayCenter1 as a customer and simply chose not to disclose it until the eleventh hour of this litigation.

The first factor supports preclusion of the evidence because evidence of damages is a prima facie element of Ganart's legal theories. It is for that reason that the evidence should have been timely produced, and is required to be produced when a party serves their initial disclosure.

The second factor of prejudice supports preclusion because TurnKey has demonstrated that it has been prejudiced by the failure to timely disclose the damages evidence. TurnKey moved for summary judgment, in part, on the assumption that Ganart had no damages because none had been disclosed. Only after TurnKey moved for summary judgment did Ganart disclose its damages evidence. Ganart argues that TurnKey has sustained no prejudice because the information was disclosed prior to the close of discovery. However, there are currently 30 days prior to the end of the discovery and now TurnKey has insufficient time to fully vet and rebut Ganart's newly disclosed damages theory. *See Sierra Club, Lone Star* Chapter, 73 F.3d at 573

(finding prejudice where materials were not disclosed with the initial disclosure because the defendant was deprived of additional time to rebut the information).  Further, prejudice is also present when a party moves for summary judgment based upon the materials disclosed and developed during discovery only to find that the party opposing summary judgment now seeks to change its theory of the case.  *See Fleming v. Verizon N.Y. Inc.*, 2006 U.S.Dist.LEXIS 68632, 24 (S.D.N.Y. Sept. 22, 2006) ("Verizon would be prejudiced by the admission of the declarations, because it made its motion for summary judgment based on what it thought to be all of the evidence accumulated in discovery.")

With respect to the third factor, no continuance is warranted because Ganart was aware of the damages theory before this lawsuit was even filed.  Ganart was required to disclose the damages theory with its initial disclosure and in response to TurnKey's interrogatories, and decided not to.  Ganart has had enough time to comply with its disclosure obligations.  A continuance would simply reward Ganart's bad behavior.  *See Sierra Club, Lone State Chapter*, 73 F3d at 573 ("While a continuance would have given Sierra Club more time to review the late disclosures, such a measure 'would neither punish [Cedar Point] for its conduct nor deter similar behavior in the future.'").

As to the fourth factor, Ganart's explanation as to its failure to timely disclose its damages theory lacks credibility.  Ganart cannot dispute that it was aware of the potential loss of PayCenter1 as a client before this lawsuit was even filed, and it failed to affirmatively disclose this evidence with its initial disclosure or in response to interrogatories served by TurnKey.  Instead of timely disclosing this evidence, Ganart simply sat on it until after TurnKey moved for summary judgment.  *See Am. Realty Trust, Inc. v. Matisse Partners, LLC*, 2002 U.S. Dist. LEXIS 12560 at *17 (N.D. Tex. July 10, 2002) (precluding the plaintiff from asserting an untimely damages theory where the materials were not disclosed with the initial disclosure).  Therefore, all of the factors, taken as a whole, warrant preclusion of the damages evidence.

___

DEFENDANT TURNKEY KIOSK, LLC'S REPLY IN SUPPORT MOTION TO STRIKE PORTIONS OF PLAINTIFF'S CONFIDENITAL APPENDIX AND PORTIONS OF PLAINTIFF'S CONFIDENTIAL RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT    PAGE 8

### B.   Ganart's Supplemental Information Regarding its Trade Secrets Should Be Precluded.

There can be no dispute that Ganart had an affirmative obligation to identify its alleged trade secrets with specificity, and despite that obligation, Ganart failed to fully disclose or identify its trade secrets until after TurnKey filed its motion for summary judgment.[2] Throughout this litigation, TurnKey has repeatedly attempted through informal discovery and formal interrogatories to get Ganart to specifically identify its trade secrets, which is set forth in detail on pages 3 and 4 of the motion to strike (Document 49).  The four factors discussed in the previous section also support preclusion of Ganart's supplemental discovery responses and the portions of its response to the motion for summary judgment that rely on the supplemental discovery responses.

As to the first factor, a detailed and specific description of how of Ganart's proprietary information qualifies as a trade secret is a prima facie element of Ganart's case.  While Ganart argues that this warrants not precluding the evidence, the opposite conclusion holds true because Ganart should have known to disclose with specificity the nature of its trade secrets at the beginning of this litigation.  *See Engelhard Corp.*, 505 A.2d at 33.

Second, TurnKey has been prejudiced because it has built part of its defense on the position that Ganart's trade secrets are vague and non-specific, and therefore, Ganart cannot establish that its proprietary information qualifies as a trade secret.  Now, after almost 10 months of TurnKey's repeated attempts to get Ganart to comply with its discovery obligations and after TurnKey moved for summary judgment, Ganart has attempted to finally describe its trade

---

[2] *See Engelhard Corp. v. Savin Corp.*, 505 A.2d 30, 33 (Del. Ch. 1986) (A "plaintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets."); *Big Vision Private, Ltd. v. E.I. Dupont De Nemours & Co.*, 2014 Dist. LEXIS 26991 at *88 (S.D.N.Y. Feb. 10, 2014) ("The requirement of particularity exists for the simple reason that a defendant must know what constitutes a plaintiff's trade secret, so that it does not infringe upon that trade secret and so that the defendant can defend itself at any trial.").

secrets. Ganart argues in its response that TurnKey has been aware of the Ganart's trade secrets since August 15, 2014. However, that is not accurate, as TurnKey has made repeated attempts, even as recently as January 8, 2015 to obtain a specific understanding for why Ganart claims its proprietary information is a trade secret. Ganart also claims that it has not added anything novel to its earlier discovery responses. However, if such were true, then Ganart would have fully disclosed and identified its trade secrets in response to the TurnKey's first set of interrogatories, which Ganart never did until after the motion for summary judgment was filed. Ultimately, TurnKey has been prejudiced because it has relied upon Ganart's earlier discovery responses to support its position that Ganart's description of its trade secrets was vague and insufficient to show that Ganart's proprietary information even qualified as a trade secret, and now, Ganart seeks to change its legal position.[3]

With respect to the third factor, a continuance will not cure the issues. The simple fact is that Ganart had more than adequate time to comply with its disclosure and discovery obligations, and simply elected not to do so.

Fourth, there is no reasonable excuse for Ganart's delay in supplementing its interrogatory responses. Ganart was aware of its obligations to fully describe its trade secrets, and was repeatedly asked by TurnKey to do so. Ganart simply ignored these requests until after TurnKey moved for summary judgment. Ganart's explanation fails to provide any justifiable basis for its discovery violations.

Ultimately, Ganart has played fast and loose with its disclosure and discovery obligations throughout this litigation. It should not be rewarded for its behavior and the materials in question should be stricken.

---

[3] Ganart also argues that there is prejudice because Wayne McHugh was disclosed as a witness in Ganart's initial disclosure. However, simply disclosing a witness without disclosing the substance of the witness' testimony, including a specific description of the trade secrets at issue cannot undo the prejudice to TurnKey when relying on information that was actually disclosed by Ganart about the vague nature of its trade secrets.

## IV. CONCLUSION

For the reasons set forth above, TurnKey requests that the Court preclude aforementioned supplemental discovery responses, portions of Mr. McHugh's affidavit and portions of Ganart's response that rely upon such information.

DAVIS MILES MCGUIRE GARDNER, PLLC

By: /s/ David W. Williams
David W. Williams, admitted Pro Hac Vice
Joshua W. Carden
Texas Bar No. 24050379
545 E. John Carpenter Freeway, Suite 300
Irving, Texas 75062
P. 972.674.3885
F. 972.674.2935
jcarden@davismiles.com
Attorney for Defendant, TurnKey Kiosks, LLC

## CERTIFICATE OF SERVICE

On March 31, 2015, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ David W. Williams
David W. Williams